UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF PENNSYLVANIA

ISAIAH HUMPHRIES,                         :
                                          :
                Plaintiff                 :
        v                                 :
                                          :       No. 4:20-CV-64.
THE PENNSYLVANIA STATE                    :
UNIVERSITY; JAMES FRANKLIN;               :       **JURY TRIAL DEMAND**
AND DAMION BARBER                         :       FILED
                                          :       HARRISBURG, PA
                Defendants                :
                                          :       JAN 13 2020
_____          :       PER_____
                                                  DEPUTY CLERK

## <u>COMPLAINT - CIVIL ACTION</u>

AND NOW comes the plaintiff Isaiah Humphries, by and through counsel, and

demands of the defendants, jointly and severally, damages for loss sustained, plus

interest, costs and damages for prejudgment delay upon the causes of action set forth in

the following:

## <u>JURISDICTION AND VENUE</u>

1.      Plaintiff incorporates by reference the previous paragraphs of the

Complaint as if set forth fully hereto.

2.      This Court maintains original jurisdiction over the instant claims

pursuant to 28 U.S.C.A. § 1332 as a result of the controversy between the parties

being between citizens of different States and the amount in controversy exceeding

mandatory diversity amounts exclusive of interest and costs.

3.      For the purpose of diversity pursuant to 28 U.S.C.A. § 1332, the plaintiff is a citizen of the State of Maryland, defendant The Pennsylvania State University is a citizen of the Commonwealth of Pennsylvania, defendant James Franklin is a citizen of the Commonwealth of Pennsylvania, and defendant Damion Barber is a citizen of the Commonwealth of Pennsylvania,

4.      Venue of this matter is properly laid in this judicial district pursuant to 28 U.S.C. §1391 upon a basis that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this judicial district.

## PARTIES AND RELATED ENTITIES

5.      The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

6.      Plaintiff Isaiah Humphries is an adult individual and at all relevant times material hereto was a college student attending The Pennsylvania State University.

7.      Plaintiff may be contacted by and through counsel, Steven F. Marino, Esquire or Joseph Auddino, Esquire of Marino Associates at 301 Wharton Street, Philadelphia, PA 19147.

2

8.      Defendant The Pennsylvania State University is a state related, land-grant institution  of higher education with campuses and facilities throughout Pennsylvania having a principal office located 201 Old Main, University Park, PA 16802.  At all relevant times material hereto, defendant The Pennsylvania State University was engaged in teaching, research, and public service.  At all relevant times material hereto, defendant The Pennsylvania State University acted by and through its duly authorized employees, agents, workers and/or representatives acting within the scope of their employment.

9.      Defendant James Franklin is an adult individual and at all relevant times material hereto, was the agent, servant, and employee of defendant The Pennsylvania State University, having an address for the service of process located at Bryce Jordan Center, Room 101, University Park, PA 16802.  At all relevant times material hereto, defendant James Franklin served as the Head Football Coach at The Pennsylvania State University.  At all relevant times material hereto, defendant James Franklin acted within the course and scope of his employment with defendant The Pennsylvania State University.

10.     Defendant Damion Barber is an adult individual and at all relevant times material hereto was a college student attending The Pennsylvania State University domiciled in Harrisburg, PA. At all relevant times material hereto defendant Damion

3

Barber was a member of the Penn State University varsity football team.

11.     Micah Parsons is an adult individual and at all relevant times material hereto was a college student attending The Pennsylvania State University and a member of the Penn State University varsity football team.

12.     Yetur Gross-Matos is an adult individual and at all relevant times material hereto was a college student attending The Pennsylvania State University and a member of the Penn State University varsity football team.

13.     Jesse Luketa is an adult individual and at all relevant times material hereto was a college student attending The Pennsylvania State University Jesse Luketa and a member of the Penn State University varsity football team.

## THE PENNSYLVANIA ANTI-HAZING STATUTES

14.     The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

15.     At all relevant times, the "Pennsylvania Antihazing Law", 24 P.S. §§5351-5354, prohibited hazing throughout the Commonwealth of Pennsylvania.[1]

---

1 On October 19, 2018, The Governor of the Commonwealth of Pennsylvania signed into law the "Timothy J. Piazza the Antihazing Law", 2017 Pa. SB 1090, 18 Pa.C.S.A. §§2801-2811, which became effective November 18, 2018, amending and superseding the prior "Pennsylvania Antihazing Law", 24 P.S. §§5351-5354.

16.     Pursuant to the "Pennsylvania Antihazing Law", 24 P.S. §§5351-5354, the term hazing is defined as any action or situation which recklessly or intentionally endangers the mental or physical health or safety of a person or  which willfully destroys or removes public or private property for the purpose of initiation or admission into or affiliation with, or as a condition for continued membership in, any organization.

17.     Pursuant to the "Pennsylvania Antihazing Law"  the term hazing included, but was not  limited to, any brutality of a physical nature, such as whipping, beating, branding, forced calisthenics, exposure to the elements, forced consumption of any food, liquor, drug or other substance, or any other forced physical activity which could adversely affect the physical health and safety of the individual, and shall include any activity which would subject the individual to extreme mental stress, such as sleep deprivation, forced exclusion from social contact, forced conduct which could result in extreme embarrassment, or any other forced activity which could adversely affect the mental health or dignity of the individual, or any willful destruction or removal of public or private property.

18.     At all relevant times the amendatory act referred to as the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2801, et seq., prohibited hazing throughout the Commonwealth of Pennsylvania.

5

19.    Pursuant to the amendatory act referred to as the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2801, et seq., a person commits the offense of hazing if the person intentionally, knowingly or recklessly, for the purpose of initiating, admitting or affiliating a minor or student into or with an organization, or for the purpose of continuing or enhancing a minor or student's membership or status in an organization, causes, coerces or forces a minor or student to, among others, endure brutality of a physical nature, including whipping, beating, branding, calisthenics or exposure to the elements; endure brutality of a mental nature, including activity adversely affecting the mental health or dignity of the individual, sleep deprivation, exclusion from social contact or conduct that could result in extreme embarrassment; endure brutality of a sexual nature and endure any other activity that creates a reasonable likelihood of bodily injury to the minor or student.

## THE PENNSYLVANIA STATE UNIVERSITY ANTIHAZING POLICY

20.    The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

21.    Upon information and belief, at all relevant times material hereto, the Pennsylvania State University maintained a written antihazing policy pursuant to the "Pennsylvania Antihazing Law", 24 P.S. §§5351-5354,

22.     Upon information and belief, pursuant an antihazing policy, the Pennsylvania State University adopted rules prohibiting students or other persons associated with any organization operating under the sanction of or recognized as an organization by the University from engaging in any activity which can be described as hazing.

23.     At all relevant times material hereto a copy of the Pennsylvania State University's written antihazing policy, its rules, penalties and program of enforcement were published to or otherwise accessible by coaches of the Pennsylvania State University athletic football program.

## THE PENNSYLVANIA STATE UNIVERSITY'S CODE OF STUDENT CONDUCT

24.     The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

25.     At all relevant times material hereto defendant the Pennsylvania State University maintained a Student Code of Conduct which governed student behavior.

26.     The Pennsylvania State University Student Code of Conduct identifies and outlines unacceptable student and student organization behavior.

27.     At all relevant times material hereto a copy of the Pennsylvania State University Student Code of Conduct was published to or otherwise accessible by

7

defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa.

28.    At all relevant times material hereto a copy of the Pennsylvania State University Student Code of Conduct was published to or otherwise accessible by coaches of the Pennsylvania State University athletic football program.

29.    The Pennsylvania State University Student Code of Conduct provides that any student or student organization found to have committed, to have attempted to commit, or to have assisted in the prohibited behavior(s) listed in the Code, may be subject to sanction.

30.    The Pennsylvania State University Student Code of Conduct provides that a student or student organization engages in an attempt when, with intent to commit a specific violation of the Code, they perform any act that constitutes a substantial step toward the commission of that violation.

31.    The Pennsylvania State University Student Code of Conduct provides that student organizations may be found responsible for violations when the prohibited behavior is endorsed by the student organization or any of its officers including, but not limited to, active or passive consent or support, having prior knowledge that the conduct was likely to occur and not taking any substantive action to prevent it.

32.    The Pennsylvania State University Student Code of Conduct provides that student organizations may be found responsible for violations when the prohibited

8

behavior is committed during an activity paid for by the student organization.

33.    The Pennsylvania State University Student Code of Conduct provides that student organizations may be found responsible for violations when the prohibited behavior occurred on property owned, controlled, rented, leased, or used by the student organizations or any of its members for an organizational event.

34.    The Pennsylvania State University Student Code of Conduct provides that student organizations may be found responsible for violations when the purpose of the activity was related to initiation, admission into, affiliation with, or as a condition for continued membership in the student organizations.

35.    The Pennsylvania State University Student Code of Conduct provides that student organizations may be found responsible for violations if members of the student organizations attempted to conceal the activity of other members who were involved.

36.    The Pennsylvania State University Student Code of Conduct prohibits students from engaging in the physical harming or threatening to harm any person, intentionally or recklessly causing harm to any person or reasonable apprehension of such harm or creating a condition that endangers the health and safety of self or others.

37.    The Pennsylvania State University Student Code of Conduct prohibits students from engaging in sexual harassment.

38. The Pennsylvania State University Student Code of Conduct prohibits students from engaging in sexual misconduct.

39. The Pennsylvania State University Student Code of Conduct prohibits students from engaging in harassment by means of physical or verbal conduct that is sufficiently severe or pervasive such that it threatens or substantially interferes with an individual's employment, education, or access to the University programs, activities, or opportunities and such conduct would detrimentally affect a reasonable person under the same circumstance.

40. The Pennsylvania State University Student Code of Conduct prohibits students from engaging in disorderly, disruptive, lewd, or indecent conduct, including, but not limited to, creating unreasonable noise; pushing and shoving; creating a physically hazardous condition.

41. The Pennsylvania State University Student Code of Conduct prohibits students from engaging in retaliation by taking an adverse action against any individual on the basis of a good faith report made by such individual, or based on the individual's participation in an investigation, hearing, or inquiry by the University or an appropriate authority, or the individual's participation in a court proceeding relating to suspected wrongful conduct.

42. The Pennsylvania State University Student Code of Conduct prohibits

students from engaging in the hazing of another student.

43.    The Pennsylvania State University Student Code of Conduct prohibits students from engaging in the harassment of another student.

44.    The Pennsylvania State University Student Code of Conduct prohibits students from engaging in assaultive behavior towards another student.

45.    The Pennsylvania State University Student Code of Conduct prohibits students from engaging in the harmful contact of another student.

## THE PENNSYLVANIA STATE UNIVERSITY
## ADMINISTRATIVE POLICIES

46.    The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

47.    At all relevant times material hereto defendant the Pennsylvania State University maintained and implemented administrative policies.

48.    Pennsylvania State University's administrative policies were implemented, among others, to maintain an environment free of harassment and to advance the Universities commitment not to tolerate sexual misconduct and relationship violence which violates the dignity of individuals and impedes the realization of the University's educational mission.

49.    Pennsylvania State University Administrative Policy AD85 [relating to

Sexual And/Or Gender-Based Harassment And Misconduct] prohibits Sexual harassment.

50.   Pursuant to Pennsylvania State University Administrative Policy AD85 [relating to Sexual And/Or Gender-Based Harassment And Misconduct ] the University is to provide regular, mandatory training for all University employees related to issues covered under the Policy.

51.   Pursuant to Pennsylvania State University Administrative Policy AD85 [relating to Sexual And/Or Gender-Based Harassment And Misconduct] all University employees are required to complete an Annual Compliance Training on a yearly basis.

52.   Pennsylvania State University Administrative Policy AD91 [relating to Discrimination and Harassment and Related Inappropriate Conduct] prohibits harassment by means of behavior consisting of physical or verbal conduct that is sufficiently severe or pervasive such that it substantially interferes with an individual's employment, education or access to University programs, activities or opportunities and would detrimentally affect a reasonable person under the same circumstances.

53.   Pennsylvania State University Administrative Policy  AD67 [relating to Disclosure of Wrongful Conduct and Protection From Retaliation] prohibits retaliation by means of any adverse action taken by a member of the University faculty, staff, or

student body against any individual on the basis of a Good Faith Report made by such individual, or on the basis of such individual's participation in an investigation, hearing, or inquiry by the University or an Appropriate Authority, or participation in a court proceeding relating to suspected Wrongful Conduct at the University.

54.     Pursuant to Pennsylvania State University Administrative Policy AD67 [relating to Disclosure of Wrongful Conduct and Protection From Retaliation] retaliation included behavior consistent with, but not be limited to, harassment, discrimination, threats of physical harm, job termination, punitive work schedule or research assignments, decrease in pay or responsibilities, or negative impact on academic progress.

## THE PENNSYLVANIA STATE UNIVERSITY FOOTBALL PROGRAM

55.     The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

56.     At all relevant times material hereto defendant the Pennsylvania State University maintained a Division I football program.

57.     At all relevant times material hereto the football team maintained by defendant the Pennsylvania State University was comprised of some one hundred (100) players which included. among others, the plaintiff, defendant Damion Barber, Micah

Parsons, Yetur Gross-Matos, and Jesse Luketa.

58.    At all relevant times material hereto the responsibility to coach, administrate, and manage the Pennsylvania State University Division I football team was dedicated to a coaching staff which included  fifteen (15) or more coaches.

59.    At all relevant times material hereto the Pennsylvania State University football team coaching staff consisted, among others, of:  a Head Coach, Offensive Coordinator/Quarterback coach;  Defensive Coordinator/Linebacker coach;  Special Teams Coordinator/Defensive Assistant coach;  Co-Defensive Coordinator/Safeties coach;  Offensive  Recruiting Coordinator/Tight Ends coach;   Run  Game Coordinator/Offensive Line coach; Passing Game Coordinator/Wide Receivers coach; Running  Backs  coach;  Assistant  Head  Coach/Defensive  Recruiting Coordinator/Cornerbacks coach; Associate Head Coach/Run Game Coordinator /Defensive Line coach; Assistant AD, Chief of Staff; Director of Player Personnel; Director of Football Operations; Director of Player Development & Community Relations;  and a Performance Enhancement coach.

60.    At all relevant times material hereto the Pennsylvania State University football team coaching staff interacted with players on the football team on a daily basis.

61.    At all relevant times material hereto the Pennsylvania State University football team coaching staff interacted with players on the football team in and around the locker-room  located in the Lasch Building at Penn State University.

62.    At all relevant times material hereto upon becoming  aware that conduct prohibited by the Student Code of Conduct and the Pennsylvania State University Administrative Policies had occurred the members of the Pennsylvania State University football team coaching staff owed a duty to immediately report the prohibited conduct to the appropriate individuals or offices.

63.    At all relevant times material hereto upon having knowledge that conduct prohibited by the Student Code of Conduct and the Pennsylvania State University Administrative Policies was likely to occur the members of the Pennsylvania State University football team coaching staff owed  a duty to  immediately take substantive action to prevent it.

## PENN STATE UNIVERSITY AWARDS THE PLAINTIFF A FULL ATHLETIC FOOTBALL SCHOLARSHIP

64.    The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

65.    Plaintiff Isaiah Humphries was born in the calendar year of 1999.

66.    On or about December 20, 2017, defendant The Pennsylvania State

University awarded the plaintiff a full athletic football scholarship, including the grant of tuition, fees, room, board, books, and other expenses related to the attendance at Pennsylvania State University for the academic years of 2018-2019 through 2022-2023 [see Big Ten Tender of Financial Aid Signed For Enrollment for the Academic Years 2018-2019 through 2022-2023 attached hereto and marked Exhibit 1].

67.     Defendant James Franklin promised the plaintiff that if the plaintiff accepted the athletic scholarship award extended by defendant The Pennsylvania State University that defendant James Franklin would use his best effort to protect the safety and welfare of the plaintiff.

68.     Defendant James Franklin promised the plaintiff that if the plaintiff accepted the athletic scholarship award extended by defendant The Pennsylvania State University that defendant James Franklin would use his best effort to advance the academic and athletic careers of the plaintiff.

69.     The plaintiff accepted the athletic scholarship award extended by defendant The Pennsylvania State University.

70.     The plaintiff enrolled and attended the Pennsylvania State University in the academic year of 2018-2019.

## THE HARASSMENT AND HAZING SUFFERED BY THE
## PLAINTIFF ISAIAH HUMPHRIES

71.     The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

72.     Upon the plaintiff's enrollment at Pennsylvania State University, the plaintiff participated diligently in Penn State football team's practice and training regiment as directed by the members of the Penn State football team's coaching staff.

73.     As a result of participating in the Penn State football team's practice and training regiment,  the plaintiff was caused to be in the company of other  players of the  Penn State football team such as defendant Damion Barber,  Micah Parsons, Yetur Gross-Matos, and Jesse Luketa.

74.     Defendant Damion Barber, Micah Parsons, and Jesse Luketa were players on the Penn State football team whom the plaintiff viewed as upper classmen or in leadership positions.

75.     Upon information and belief, at all relevant times material hereto, Micah Parsons was a member of the Penn State football team's leadership council.

76.     In or about the calendar month of January 2018, and continuing thereafter,  defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa collectively orchestrated, participated in, directed, and  or facilitated a

campaign to harass and haze lower classmen members of the Penn State football team, including the plaintiff.

77.     The campaign to harass and haze lower classmen members of the Penn State football team, such as the plaintiff, undertaken by defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa served as form of initiation into the Penn State football program.

78.     At all relevant times material hereto the harassment and hazing ritual undertaken by defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa  included the participants stating that they intended to make  lower classmen, such as the plaintiff,  *"their bitch because this is a prison"*.

79.     At all relevant times material hereto the harassment and hazing ritual undertaken by the defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the participants stating to make  lower classmen,  such as the plaintiff,  *"I am going to fuck you"*.

80.     At all relevant times material hereto the harassment and hazing ritual undertaken by defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the participants stating to lower classmen,  such as the plaintiff, *"I am going to Sandusky you"*.

81.     At all relevant times material hereto the harassment and hazing ritual undertaken by defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the participants stating to lower classmen, such as the plaintiff, *"This is Jerry"*.

82.     At all relevant times material hereto the harassment and hazing ritual undertaken by defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the participants intimidating, threatening and bullying the lower classmen, such as the plaintiff, when the lower classmen presented a resistance to the prohibited behavior.

83.     At all relevant times material hereto the harassment and hazing ritual undertaken by defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the  participants taking the clothes of lower classmen, such as the plaintiff, and not returning them.

84.     At all relevant times material hereto the harassment and hazing ritual undertaken by the defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the participants overpowering lower classmen, such as the plaintiff, wrestling the lower classmen to the ground, and while maintaining a restraint of the lower classmen, simulating a humping action while on top of the lower classmen.

85.     At all relevant times material hereto the harassment and hazing ritual undertaken by the defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the participants overpowering lower classmen, such as the plaintiff, wrestling the lower classmen to the ground and while maintaining a restraint of the lower classmen another participant would place his genitals on the face of the lower classmen.

86.     At all relevant times material hereto the harassment and hazing ritual undertaken by the defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the participants overpowering lower classmen,  wrestling the lower classmen to the ground,  and while maintaining a restraint of the lower classmen, another participant would present his penis close to the face of the lower classmen and stroke his genitalia simulating the action of ejaculation.

87.     At all relevant times material hereto the harassment and hazing ritual undertaken by defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the participants overpowering lower classmen,  wrestling the lower classmen to the ground, and while maintaining a restraint of the lower classmen, another participant would place his penis on the buttocks of the lower classmen and stroke his genitalia simulating the action of ejaculation.

88.    At all relevant times material hereto the harassment and hazing ritual undertaken by defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the participants placing their penises between the cheeks of the buttocks of lower classmen, such as the plaintiff, while naked in the locker-room shower.

89.    At all relevant times material hereto the harassment and hazing ritual undertaken by the defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the participants placing their penises on the body of lower classmen, such as the plaintiff, while naked in the locker-room shower.

90.    At all relevant times material hereto the harassment and hazing ritual undertaken by the defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa included the participants grabbing the genitalia of lower classmen, such as the plaintiff.

91.    The aforementioned prohibited conduct of harassment and hazing served to recklessly or intentionally endanger the mental and physical health of the lower classmen, such as the plaintiff.

92.    The aforementioned prohibited conduct of harassment and hazing served to violate the dignity of the lower classmen, such as the plaintiff.

93.     At all relevant times material hereto the aforementioned harassment and hazing ritual occurred in the Lasch Building at Penn State University, a dormitory at Penn State University, and other places in Centre County, Pennsylvania.

94.     As a direct and proximate cause of the aforementioned harassment and hazing, the plaintiff resigned his enrollment at the Penn State University in the calendar month of December 2018, and transferred his education to the University of California.

## REPORTING OF THE HARASSMENT AND HAZING TO COACH JAMES FRANKLIN AND OTHER MEMBERS OF THE PENNSYLVANIA STATE UNIVERSITY FOOTBALL TEAM COACHING STAFF

95.     The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

96.     On multiple occasions, members of the Pennsylvania State University football team coaching staff observed the harassment and hazing which the plaintiff and other lower classmen were being subjected to in the football locker-room.

97.     On multiple occasions, the plaintiff reported to members of the Pennsylvania State University football team coaching staff that he and other lower classmen were being subjected to harassment and hazing in the football locker-room.

98.     The plaintiff's father, Mr. Leonard Humphries, an ex-Penn State Football player and an ex-NFL Football player, reported to defendant coach James Franklin and other members of the Pennsylvania State University football team

coaching staff that the plaintiff was being subjected to harassment and hazing in the football locker-room.

99.     Despite the harassment and hazing which was occurring in the football locker-room having been reported to defendant coach James Franklin and other members of the Pennsylvania State University football team coaching staff no substantive action was taken by defendant James Franklin or other members the coaching staff to prevent it.

100.     Despite the harassment and hazing which was occurring in the football locker-room having been reported to defendant coach James Franklin and other members of the Pennsylvania State University football team coaching staff, defendant coach James Franklin nor any member of the Pennsylvania State University football team coaching staff reported the prohibited conduct to the appropriate individuals or offices.

## RETALIATION OF THE PLAINTIFF AS A RESULT OF THE REPORTING THE HARASSMENT AND HAZING

101.     The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

102.     In retaliation of reporting the aforementioned harassment and hazing, the plaintiff's athletic performance was overly and unfairly scrutinized by Penn State Football coaching staff.

103.    In retaliation of reporting the aforementioned harassment and hazing, the plaintiff was scorned and punished by the Penn State Football coaching staff.

104.    In retaliation of reporting the aforementioned harassment and hazing, the Penn State Football coaching staff required the plaintiff to participate in athletic drills designed to ensure the plaintiff's failure, and then used the plaintiff's losing performance in the football drills to justify an opinion that the plaintiff's performance was not sufficient to award him a game playing opportunity.

105.    In retaliation of reporting the aforementioned harassment and hazing the Penn State football team's academic advisor subjected the to plaintiff irrational and inappropriate censure.

106.    In retaliation of reporting the aforementioned harassment and hazing, the plaintiff was denied necessary medical accommodations to manage diagnosed conditions of anxiety and narcolepsy by the Penn State Football coaching staff.

107.    In retaliation of reporting the aforementioned harassment and hazing, the Penn State Football coaching staff sought to remove the plaintiff from his participation in the Penn State Football program with the excuse of a medical retirement option.

108.    In retaliation of reporting the aforementioned harassment and hazing, the Penn State Football coaching staff provided negative reviews of the plaintiff to prospective colleges whom the plaintiff showed interest upon his decision to leave

Penn State University.

109.    In retaliation of reporting the aforementioned harassment and hazing, the plaintiff was ostracized and shunned by other Penn State football team players.

110.    In retaliation of reporting the aforementioned harassment and hazing, the plaintiff was targeted by other Penn State football team players who conspired to create an existence for the plaintiff designed to encourage him to leave Penn State University and resign himself from its football program.

111.    In retaliation of reporting the aforementioned harassment and hazing, the plaintiff was targeted by other Penn State football team players who conspired to instill anxiety, fear, and panic in the plaintiff.

112.    In retaliation of reporting the aforementioned harassment and hazing, Jesse Luketa continuously and repeatedly threatened the plaintiff with physical harm.

113.    In retaliation of reporting the aforementioned harassment and hazing, Jesse Luketa threatened that if the plaintiff ever visited "*his city*" in the country of Canada that he would make certain that the plaintiff was gunned down upon the plaintiff's arrival in the city.

## THE PENNSYLVANIA STATE UNIVERSITY'S OFFICE OF SEXUAL MISCONDUCT PREVENTION AND RESPONSE INVESTIGATIVE REPORT

114.    The plaintiff incorporates by reference the paragraphs above as if set

forth herein in full.

115.    Upon information and belief, or about May 22, 2019, the Pennsylvania State University Office of Sexual Misconduct Prevention and Response received an anonymous complaint reporting that harassment and hazing related prohibited conduct had been occurring amongst players of the Penn State Football team.

116.    Upon information and belief, on or about May 24, 2019, the Pennsylvania State University Office of Sexual Misconduct Prevention And Response undertook a formal investigation in connection with the May 22, 2019, report of incidents of prohibited conduct.

117.    The plaintiff believes and therefore avers that members of the Penn State Football program attempted to or otherwise did conceal the prohibited conduct activity of other members of the Penn State Football program when requested to participate in the formal investigation undertaken by the Pennsylvania State University Office of Sexual Misconduct Prevention And Response.

118.    Upon information and belief, Yvette Wilson of the Pennsylvania State University Office of Sexual Misconduct Prevention And Response completed an investigative report relating to the May 22, 2019, complaint of incidents of prohibited conduct.

119.    Upon information and belief, Yvette Wilson of the Pennsylvania State

University Office of Sexual Misconduct Prevention And Response submitted the findings of her investigation relating to the May 22, 2019 complaint of incidents of prohibited conduct to the Pennsylvania State University Office of Student Conduct for review and processing as appropriate.

120.    Upon information and belief, the Pennsylvania State University Office of Student Conduct lodged charges against defendant Damion Barber alleging that he had  subjected the plaintiff and others to harassment and hazing related prohibited conduct.

121.    Upon information and belief, the Pennsylvania State University Office of Student Conduct prosecuted the charges lodged against defendant Damion Barber.

122.    Upon information and belief defendant Damion Barber was determined by the Pennsylvania State University Office of Student Conduct to have committed prohibited behavior  in violation of the Pennsylvania State University Student Code of Conduct and sanctioned.

## COUNT I
## NEGLIGENCE PER SE – VIOLATION OF ANTIHAZING STATUTES
### (Plaintiff v The Pennsylvania State University)

123.    The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

124.    At all relevant times material hereto the plaintiff was a person within the within the meaning of the "Pennsylvania Antihazing Law", 24 P.S. §§5351 et seq.

125.    At all relevant times material hereto the plaintiff was a student within the meaning of the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2801, et seq.

126.    At all relevant times material hereto defendant The Pennsylvania State University was an institution of higher education or institution within the meaning of the "Pennsylvania Antihazing Law", 24 P.S. §§5351 et seq.

127.    At all relevant times material hereto defendant The Pennsylvania State University was an institution of higher education or institution within the meaning of the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2801, et seq.

128.    At all relevant times material hereto the Pennsylvania Football Team was an organization operating under the sanction of or recognized as an organization by defendant The Pennsylvania State University.

129.    At all relevant times material hereto the Pennsylvania Football Team was an organization within the meaning of the "Pennsylvania Antihazing Law", 24 P.S. §§5351 et seq.

130.    At all relevant times material hereto the Pennsylvania State football team was an organization within the meaning of the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2801, et seq.

131.   At all relevant times material hereto a special relationship existed between defendant The Pennsylvania State University and the plaintiff in the form of a college athletic coach and a student-athlete.

132.   Defendant The Pennsylvania State University owed the plaintiff an assumed, contractual, statutory and/or common law heightened duty of care to:

(a)   exercise ordinary and reasonable care for the safety of student-athletes under its authority;

(b)   conduct sufficient supervision of athletes;

(c)   provide a safe sport environment;

(d)   prevent prohibited conduct of harassment and hazing by other athletes and coaching staff;

(e)   prevent prohibited conduct of retaliation by other athletes and coaching staff;

(f)   report to the proper authorities incidents of prohibited conduct of harassment and hazing by other athletes and coaching staff;

(g)   report to the proper authorities incidents of prohibited conduct of retaliation;

(h)   promote the health and welfare of the plaintiff student athlete.

133. Defendant The Pennsylvania State University, by and through its employees, agents, workers and/or representatives acted negligently, carelessly, intentionally, knowingly, or recklessly and breached the duty of care owed to the plaintiff in the following respects:

(a)    permitting the plaintiff to be subject to the prohibited conduct of harassment and hazing from members of the Penn State football team;

(b)    permitting the plaintiff to be subject to the prohibited conduct of harassment and hazing from members of the Penn State football team in a blatant disregard of the Pennsylvania State University's written antihazing policy implemented pursuant to the "Pennsylvania Antihazing Law", 24 P.S. §§5351-5354;

(c)    failing to take substantive action to protect the plaintiff from suffering the prohibited conduct of harassment and hazing;

(d)    promoting or facilitating hazing in violation of the "Pennsylvania Antihazing Law", 24 P.S. §§5351 et seq.;

(e)    promoting or facilitating hazing in violation of the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2804 [relating to Organizational Hazing];

(f)    promoting or facilitating hazing in violation of the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2805 [relating to Institutional Hazing];

(g)   retaliated against the plaintiff upon learning that the plaintiff reported that he was being subjected to the prohibited conduct of harassment and hazing from members of the Penn State football team.

(h)   failing to effectively enforce the Pennsylvania State University Student Code of Conduct for violations of prohibited conduct;

(i)   failing to effectively enforce the Pennsylvania State University Administrative Policy AD85 [relating to Sexual And/Or Gender-Based Harassment And Misconduct];

(j)   failing to effectively enforce the Pennsylvania State University Administrative Policy AD91 [relating to Discrimination and Harassment and Related Inappropriate Conduct];

(k)   failing to effectively enforce the Pennsylvania State University Administrative Policy Pennsylvania State University Administrative Policy AD67 [relating to Disclosure of Wrongful Conduct and Protection From Retaliation];

(l)   failing to report the incidents of prohibited conduct to appropriate authorities.

134.   Defendant The Pennsylvania State University is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section 219 of the Restatement 2nd of Agency.

31

135.   As a direct and proximate result of defendant the Pennsylvania State University's negligent, intentional, or recklessly acts, omissions or failures to act, the plaintiff was caused to transfer his college enrollment from The Pennsylvania State University to the University of California and rendered ineligible to participate as game player on the  University of California football team for a period of one (1) year pursuant to the governing  rule of the National Collegiate Athletic Association.

136.   As a direct and proximate result of defendant The Pennsylvania State University's negligent, intentional, or recklessly acts, omissions or failures to act, the plaintiff was caused to suffer physical pain, discomfort, trauma, humiliation, embarrassment, emotional distress, sleeplessness, anxiety, inability to perform simple activities of daily living, depression characterized by feelings of despair, hopelessness, and despondency, some or all of which may be permanent and which may continue indefinitely into the future.

137.   As a direct and proximate result of defendant The Pennsylvania State University's negligent, intentional, or recklessly acts, omissions or failures to act, the plaintiff has been required to undergo outpatient healthcare, and medical evaluations and may require other medical attention into the future.

138.   As a direct and proximate result of defendant The Pennsylvania State University's negligent, intentional, or recklessly acts, omissions or failures to act, the

plaintiff incurred medical expenses for diagnosis, treatment and care in an effort to cure himself of the injury resulting from the prohibited misconduct and may incur additional medical expenses continuing on into the future.

139.   As a direct and proximate result of defendant The Pennsylvania State University's negligent, intentional, or recklessly acts, omissions or failures to act, the plaintiff has been caused to expend various and diverse sums of money in an effort to cure himself of the injury resulting from the prohibited misconduct and may incur additional medical expenses continuing on into the future.

140.   As a direct and proximate result of defendant The Pennsylvania State University's negligent, careless and or reckless actions plaintiff was caused to suffer a loss of life's pleasures which may continue indefinitely into the future.

141.   The aforementioned actions or omission to act of defendant The Pennsylvania State University were reckless and exercised with a deliberate indifference to the welfare of the plaintiff.

WHEREFORE, the plaintiff prays for judgment in his favor and against defendant The Pennsylvania State University, jointly and severally, and the relief which follows:

I.     That plaintiff be awarded compensatory damages as proven at trial;

II.    That plaintiff be awarded exemplary damages as proven at trial;

III.   That plaintiff be awarded interest and damages for prejudgment delay;

IV.   That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT II
## NEGLIGENCE PER SE – VIOLATION OF ANTIHAZING STATUTES
### (Plaintiff v James Franklin)

142.   The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

143.   At all relevant times material hereto defendant James Franklin maintained the position as the Head Coach of the Penn State University Football team.

144.   At all relevant times material hereto defendant James Franklin was a person associated with the Penn State Football team, an organization operating under the sanction of or recognized as an organization by the institution from engaging in any activity which can be described as hazing, within the meaning of the "Pennsylvania Antihazing Law", 24 P.S. §§5351 et seq.

145.   At all relevant times material hereto defendant James Franklin was a person within the meaning of the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2801, et seq.

146.   At all relevant times material hereto a special relationship existed between defendant James Franklin and the plaintiff in the form of a college athletic coach and a student-athlete.

147.   Defendant James Franklin owed the plaintiff an assumed, contractual, statutory, and/or common law heightened duty of care to:

(a)   exercise ordinary and reasonable care for the safety of student-athletes under his authority;

(b)   conduct sufficient supervision of athletes;

(c)   provide a safe sport environment;

(d)   prevent prohibited conduct of harassment and hazing by other athletes and coaching staff;

(e)   prevent prohibited conduct of retaliation by other athletes and coaching staff;

(f)   report to the proper authorities incidents of prohibited conduct of harassment and hazing by other athletes and coaching staff;

(g)   report to the proper authorities incidents of prohibited conduct of retaliation;

(h)   promote the health and welfare of the plaintiff student athlete.

148.    Defendant James Franklin acted negligently, carelessly, intentionally, knowingly, or recklessly and breached the duty of care owed to the plaintiff in the following respects:

(a)    permitting the plaintiff to be subject to the prohibited conduct of harassment and hazing from members of the Penn State football team;

(b)    permitting the plaintiff to be subject to the prohibited conduct of harassment and hazing from members of the Penn State football team in a blatant disregard of the Pennsylvania State University's written antihazing policy implemented pursuant to the "Pennsylvania Antihazing Law", 24 P.S. §§5351-5354;

(c)    failing to take substantive action to protect the plaintiff from suffering the prohibited conduct of harassment and hazing;

(d)    promoting or facilitating hazing in violation of the "Pennsylvania Antihazing Law", 24 P.S. §§5351 et seq.;

(e)    promoting or facilitating hazing in violation of the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2804 [relating to Organizational Hazing];

(f)    promoting or facilitating hazing in violation of the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2805 [relating to Institutional Hazing];

(g)     retaliated against the plaintiff upon learning that the plaintiff reported that he was being subjected to the prohibited conduct of harassment and hazing from members of the Penn State football team;

(h)     failing to report the incidents of prohibited conduct to appropriate authorities.

149.    As a direct and proximate result of the defendant James Franklin's negligent, intentional, or recklessly acts, omissions or failures to act, the plaintiff was caused to suffer that damage and loss aforementioned.

WHEREFORE, the plaintiff prays for judgment in his favor and against defendant James Franklin, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     That plaintiff be awarded exemplary damages as proven at trial;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT III
## NEGLIGENCE PER SE – VIOLATION OF ANTIHAZING STATUTES
## (Plaintiff v Damion Barber)

150.    The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

37

151.     At all relevant times material hereto defendant Damion Barber was a person associated with the Penn State Football team, an organization operating under the sanction of or recognized as an organization by the institution from engaging in any activity which can be described as hazing, within the meaning of the "Pennsylvania Antihazing Law", 24 P.S. §§5351 et seq.

152.     At all relevant times material hereto defendant Damion Barber was a person within the meaning of the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2801, et seq.

153.     Defendant Damion Barber owed the plaintiff an assumed, contractual, common law, and/or statutory duty of care to restrain himself from subjecting the plaintiff to the prohibited conduct of harassment and hazing.

154.     Defendant Damion Barber acted negligently, carelessly, intentionally, knowingly, or recklessly and breached the duty of care owed to the plaintiff in the following respects:

(a)     subjected the plaintiff to the prohibited conduct of harassment and hazing;

(b)     violated the Pennsylvania State University's Student Code of Conduct;

(c)     violated the Pennsylvania State University's written antihazing policy implemented pursuant to the "Pennsylvania Antihazing Law", 24 P.S. §§5351-5354 by promoting or facilitating hazing;

(d)     promoting or facilitating hazing in violation of the "Pennsylvania Antihazing Law", 24 P.S. §§5351 et seq.;

(e)     promoting or facilitating hazing in violation of the "Timothy J. Piazza Antihazing Law", 18 Pa.C.S.A. § 2804 [relating to Organizational Hazing];

(f)     retaliated against the plaintiff upon learning that the plaintiff reported that he was being subjected to the prohibited conduct of harassment and hazing by members of the Penn State football team.

155.   As a direct and proximate result of the defendant Damion Barber's aforementioned negligent, intentional, or recklessly acts, omissions or failures to act, the plaintiff was caused to suffer that damage and loss aforementioned.

WHEREFORE, the plaintiff prays for judgment in his favor and against defendant Damion Barber, jointly and severally, and the relief which follows:

I.     That plaintiff be awarded compensatory damages as proven at trial;

II.    That plaintiff be awarded exemplary damages as proven at trial;

III.   That plaintiff be awarded interest and damages for prejudgment delay;

IV.   That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT V
## ASSAULT AND BATTERY
### (Plaintiff v Damion Barber )

156.   The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

157.   Defendant Damion Barber subjected the plaintiff to unwanted harmful physical contact.

158.   Defendant Damion Barber by means of physical menace placed the plaintiff in fear of imminent bodily harm.

159.   As a direct and proximate result of the defendant Damion Barber's negligent, intentional, or recklessly acts the plaintiff was caused to suffer that damage and loss aforementioned.

WHEREFORE, the plaintiff prays for judgment in his favor and against defendant Damion Barber, jointly and severally, and the relief which follows:

I.   That plaintiff be awarded compensatory damages as proven at trial;

II.   That plaintiff be awarded exemplary damages as proven at trial;

III.   That plaintiff be awarded interest and damages for prejudgment delay;

IV.   That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v All Defendants)

160.   The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

161.   At all relevant times material hereto defendants The Pennsylvania State University, James Franklin, and Damion Barber owed plaintiff a common law duty not to act in a manner which they should have realized would involve an unreasonable risk of causing the plaintiff to suffer emotional distress, illness, and/or bodily harm.

162.   The defendants knew or reasonably should have known that subjecting the plaintiff to the aforementioned prohibited conduct of harassment, hazing and retaliation involved an unreasonable risk that emotional distress would result.

163.   Defendant The Pennsylvania State University is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section 219 of the Restatement 2nd of Agency.

164.   The conduct of the defendants violated the provisions of the Section 313 of the Restatement 2nd of Torts.

165.   As a result of the defendants having subjected the plaintiff to the

41

aforementioned prohibited conduct harassment, hazing and retaliation, the plaintiff was caused to suffer fear, anxiety, panic and emotional trauma.

166.    The emotional distress suffered by the plaintiff as a direct and proximate result of the defendants has caused the plaintiff to experience illness and bodily harm.

167.    As a direct and proximate result of the defendants or their authorized agents, ostensible agents, servants, workman and/or employees' reckless and indifferent actions, omissions, or failures to act as set forth herein, plaintiff was caused to suffer emotional distress, grief, and fright to a degree that no reasonable person should be expected to endure.

WHEREFORE, the plaintiff prays for judgment against the defendants, jointly and severally, and the relief which follows:

I.     That plaintiff be awarded compensatory damages as proven at trial;

II.    That plaintiff be awarded interest and damages for prejudgment delay;

III.   That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v Damion Barber)

168.    The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

169.   Defendant Damion Barber's aforementioned behavior in subjecting the plaintiff to the prohibited conduct of harassment, hazing and retaliation was extreme and outrageous conduct.

170.   Defendant Damion Barber's aforementioned behavior in subjecting the plaintiff to the prohibited conduct of harassment, hazing and retaliation was intentional or reckless.

171.   Defendant Damion Barber's knew or reasonably should have known that subjecting the plaintiff to the aforementioned prohibited conduct of harassment, hazing and retaliation involved an unreasonable risk that emotional distress would result.

172.   Defendant Damion Barber's aforementioned behavior in subjecting the plaintiff to the prohibited conduct of harassment, hazing and retaliation caused the plaintiff to suffer severe emotional distress.

173.   The conduct of defendant Damion Barber violated the provisions of the Section 436 of the Restatement 2nd of Torts.

174.   As a direct and proximate result of defendant Damion Barber's intentional and wrongful actions plaintiff was caused to suffer emotional distress, grief, humiliation, anger and chagrin to a degree that no reasonable person should be expected to endure.

175.   As a direct and proximate result of defendant Damion Barber's

intentional and wrongful actions plaintiff was caused to suffer physical injury.

176.    Defendant Damion Barber's actions were outrageous, malicious, willful, effected with a recklessly indifference to the welfare of the plaintiff.

WHEREFORE, the plaintiff prays for judgment against the defendant Damion Barber, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     That plaintiff be awarded exemplary damages as proven at trial;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT VIII
## CIVIL CONSPIRACY
### (Plaintiff v Damion Barber)

177.    The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

178.    At all relevant times material hereto, defendant Damion Barber owed a duty to the plaintiff not to conspire with others for the purpose of subjecting the plaintiff to hazing, harassment, assault, battery and retaliation.

179.    Defendant Damion Barber engaged in a civil conspiracy with Micah Parsons, Yetur Gross-Matos, and Jesse Luketa to haze, harass, assault, batter and

retaliate against the plaintiff.

180.    With a common purpose to haze, harass, assault and batter and retaliate against the plaintiff, defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa engaged in the aforementioned overt acts.

181.    As a direct and proximate result of the conspiracy engaged by the defendant Damion Barber, the plaintiff was caused to suffer the aforementioned harms and loss.

182.    Defendant Damion Barber's actions were outrageous, malicious, willful, effected with a recklessly indifference to the welfare of the plaintiff.

183.    WHEREFORE, the plaintiff prays for judgment against the defendant Damion Barber, jointly and severally, and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven at trial;

II.    That plaintiff be awarded exemplary damages as proven at trial;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.    That plaintiff be awarded further relief as this Court may deem appropriate.

## **JURY TRIAL DEMAND**

184.    The plaintiff incorporates by reference the paragraphs above as if set forth herein in full.

185.   Trial by jury is demanded in the above entitled cause.

Respectfully submitted,

By:

Steven F. Marino, Esquire
PA Attorney I.D. No.  53034
Joseph Auddino, Esquire
PA Attorney I.D. No.  316752
MARINO ASSOCIATES
301 Wharton Street
Philadelphia, Pa  19147
Telephone:  (215) 462-3200
Telecopier:  (215) 462-4763
smarino@marinoassociates.net
jauddino@marinoassociates.net

*Attorney for Plaintiff*

Dated: January 13, 2020