## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISAIAH HUMPHRIES,<br><br>     Plaintiff,<br><br>v.<br><br>THE PENNSYLVANIA STATE UNIVERSITY; JAMES FRANKLIN; and DAMION BARBER,<br><br>     Defendants. | Case No.: 4:20-CV-00064-MWB<br>(Judge Matthew W. Brann)<br><br>JURY TRIAL DEMANDED |

## BRIEF IN SUPPORT OF DEFENDANTS THE PENNSYLVANIA STATE UNIVERSITY AND JAMES FRANKLIN'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT <u>PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>

## TABLE OF CONTENTS

Table of Authorities ..................................................................iii

I.   Introduction .....................................................................1

II.  Background.......................................................................2

   A.   The University Defendants .........................................2

      1.   The Pennsylvania State University.........................2

      2.   Coach James Franklin ...........................................3

   B.   Humphries's Allegations of Harassment and Hazing ......................4

III. Argument..........................................................................7

   A.   Legal Standard....................................................7

   B.   The Court Should Dismiss Humphries's Negligence Claims
        Because He Cannot Demonstrate the Requisite Elements ...............8

      1.   As a Matter of Law, Neither the University nor
           Franklin Had a Duty to Protect Humphries from
           Actions of His Classmates ....................................8

      2.   Humphries Cannot Demonstrate That the University
           or Franklin Proximately Caused His Alleged Injuries ...........14

   C.   Humphries's Negligence Per Se Claims Fail Because the
        Amended Complaint's Allegations, Even if Proven, Would
        Not Constitute Violations of the Antihazing Law ..........................17

      1.   The Antihazing Law Alone Governs Humphries's
           Negligence Per Se Claims.....................................18

      2.   Humphries Cannot Demonstrate Hazing In Violation
           of the Antihazing Law .........................................19

3.    As a Matter of Law, Neither the University nor Franklin Could Have Violated the Antihazing Law ........................................21

4.    The Piazza Law Does not Apply, and, Even If It Did, Humphries's Negligence Per Se Claims Still Fail ..................24

D.    Humphries Cannot Establish the Elements of Negligent Infliction of Emotional Distress ........................................................26

IV.   Conclusion.................................................................................................31

Certificate of Compliance ..........................................................................33

# TABLE OF AUTHORITIES

CASES                                                                          PAGE

*Althaus ex rel. Althaus v. Cohen,*
    756 A.2d 1166 (Pa. 2000) ................................................................9

*Alumni Ass'n v. Sullivan,*
    572 A.2d 1209 (Pa. 1990) .............................................................10

*Armstrong v. Paoli Mem'l Hosp.,*
    633 A.2d 605 (Pa. Super. Ct. 1993) ...........................................29

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................7, 8, 12, 21

*Banyas v. Lower Bucks Hospital,*
    437 A.2d 1236 (Pa. Super. Ct. 1981)...........................................29

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).......................................................7, 8, 30

*Bradshaw v. Rawlings,*
    612 F.2d 135 (3d Cir. 1979).....................................................10, 11

*Brezenski v. World Truck Transfer, Inc.,*
    755 A.2d 36 (Pa. Super. Ct. 2000) ......................................9, 13, 26

*Cabiroy v. Scipione,*
    767 A.2d 1078 (Pa. Super. Ct. 2001)..........................................17

*Deitrick v. Costa,*
    No. 4:06-CV-01556, 2015 WL 1606714 (M.D. Pa. Apr. 9, 2015)....................17

*Eckroth v. Pennsylvania Elec., Inc.,*
    12 A.3d 422 (Pa. Super. Ct. 2010) ..........................................14, 15

*Emerich v. Philadelphia Ctr. for Human Dev., Inc.,*
    720 A.2d 1032 (Pa. 1998) ................................................................9

*Emery v. Talladega Coll.*,
    688 F. App'x 727 (11th Cir. 2017) .............................................................11, 12

*Estate of Rennick v. Universal Credit Servs., LLC*,
    No. CV 18-3881, 2019 WL 196539 (E.D. Pa. Jan. 15, 2019) .........................30

*Flickinger's Estate v. Ritsky*,
    305 A.2d 40 (Pa. 1973) ...................................................................................16

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)...............................................................................7

*Frazer v. Temple Univ.*,
    25 F. Supp. 3d 598 (E.D. Pa. 2014) ................................................................10

*Gabriel v. Giant Eagle, Inc.*,
    124 F. Supp. 3d 550 (W.D. Pa. 2015) .............................................................16

*Gefter v. Rosenthal*,
    119 A.2d 250 (Pa. 1956) ..................................................................................29

*George v. Averett Univ. of Danville, Virginia*,
    No. 4:19-CV-00008, 2019 WL 3310517
    (W.D. Va. July 23, 2019) ..........................................................................12, 13

*Guest v. Hansen*,
    603 F.3d 15 (2d Cir. 2010) ..............................................................................12

*Hall v. Millersville Univ.*,
    400 F. Supp. 3d 252 (E.D. Pa. 2019) ..............................................................15

*Harris v. Saint Joseph's Univ.*,
    No. CIV.A. 13-3937, 2014 WL 1910242
    (E.D. Pa. May 13, 2014) ..........................................................................10, 11

*Heeter v. Honeywell Int'l Inc.*,
    706 F. App'x 63 (3d Cir. 2017).   ....................................................................15

*Hershman v. Muhlenberg Coll.*,
    17 F. Supp. 3d 454 (E.D. Pa. 2014)......................................................27, 28, 29

*Hill v. Havens,*
No. 4:18-CV-00212, 2018 WL 4184316
(M.D. Pa. Aug. 31, 2018).....................................................................6

*Holmes v. Kimco Realty Corp.,*
598 F.3d 115 (3d Cir. 2010) ...............................................................8

*Hynoski v. Columbia Cty. Redevelopment Auth.,*
941 F. Supp. 2d 547 (M.D. Pa. 2013).............................................4, 6

*Kennedy v. Robert Morris Univ.,*
133 A.3d 38 (Pa. Super. Ct. 2016) ...................................................11

*Kleinknecht v. Gettysburg Coll.,*
989 F.2d 1360 (3d Cir. 1993) ...........................................................11

*Loughran v. The Phillies,*
888 A.2d 872 (Pa. Super. Ct. 2005) ...................................................8

*McCloud v. McLaughlin,*
837 A.2d 541 (Pa. Super. Ct. 2003) .....................................17, 18, 23

*MDB v. Punxsutawney Christian Sch.,*
386 F. Supp. 3d 565 (W.D. Pa. 2019) .........................................27, 28

*Merlini ex rel. Merlini v. Gallitzin Water Auth.,*
980 A.2d 502 (Pa. 2009) ....................................................................8

*Mifflinburg Tel., Inc. v. Criswell,*
80 F. Supp. 3d 566 (M.D. Pa. 2015) .............................................7, 21

*Millard v. Osborne,*
611 A.2d 715 (Pa. Super. Ct. 1992) .................................................10

*Montagazzi v. Crisci,*
994 A.2d 626 (Pa. Super. Ct. 2010) .................................................14

*N'Jai v. Bentz,*
No. CV 13-1212, 2016 WL 7404550
(W.D. Pa. Dec. 22, 2016) ..................................................................15

*Pearson v. Logan Univ.*,
   937 F.3d 1119 (8th Cir. 2019), *reh'g denied* (Oct. 10, 2019) ..........................11

*Perez v. Great Wolf Lodge of the Poconos LLC*,
   200 F. Supp. 3d 471 (M.D. Pa. 2016) ..............................................................8

*Perloff v. Transamerica Life Ins. Co.*,
   393 F. Supp. 3d 404 (E.D. Pa. 2019) ..............................................................28

*Piazza v. Young*,
   403 F. Supp. 3d 421 (M.D. Pa. 2019) ..............................................................18

*Powell v. Drumheller*,
   653 A.2d 619 (Pa. 1995) ................................................................................16

*Pressley v. Forrest*,
   No. 10-CV-3270, 2013 WL 5567569
   (E.D. Pa. Oct. 8, 2013) ............................................................................26, 27

*Reason v. Kathryn's Korner Thrift Shop*,
   169 A.3d 96 (Pa. Super. Ct. 2017) ..................................................................9

*Sabo v. UPMC Altoona*,
   386 F. Supp. 3d 530 (W.D. Pa. 2019) ............................................................23

*Shulick v. United Airlines*,
   No. CIV.A. 11-1350, 2012 WL 315483
   (E.D. Pa. Feb. 2, 2012) ............................................................................27, 28

*Smolsky v. Consol. Rail Corp.*,
   780 F. Supp. 283 (E.D. Pa. 1991) ..................................................................26

*Stafford v. George Washington Univ.*,
   No. 18-CV-2789, 2019 WL 2373332
   (D.D.C. June 5, 2019) ....................................................................................30

*Toney v. Chester Cty. Hosp.*,
   36 A.3d 83 (Pa. 2011) ..............................................................................27, 28

*Trinity Indus., Inc. v. Greenlease Holding Co.,*
   35 F. Supp. 3d 698 (W.D. Pa. 2014),
   *aff'd*, 903 F.3d 333 (3d Cir. 2018) .................................................................18

*Vargas v. Penn State Hershey Milton S. Hershey Med. Ctr.,*
   No. 1:16-CV-01657, 2018 WL 2287670
   (M.D. Pa. May 18, 2018) ................................................................................28

*Van Buskirk v. Carey Canadian Mines, Ltd.,*
   760 F.2d 481 (3d Cir. 1985) ..........................................................................21

*Yania v. Bigan*,
   155 A.2d 343 (Pa. 1959) ................................................................................14

**STATUTES & RULES**                                                          **PAGE**

Fed. R. Evid. 201(b)..........................................................................................4, 7

Pennsylvania Antihazing Law
   24 Pa. Stat. Ann. §§ 5351-5354 (repealed)...............................................*passim*

Statutory Construction Act of 1972
   1 Pa. C.S.A. § 1926 ......................................................................................18

Timothy J. Piazza Antihazing Law
   18 Pa. C.S.A. § 2801, *et seq*...................................................................*passim*

**OTHER SOURCES**                                                             **PAGE**

Restatement (Second) of Torts § 314A (1965) ..............................................10, 14

Restatement (Second) of Torts § 314 (1965) ......................................................15

Restatement (Second) of Torts § 320 (1965) ......................................................10

Restatement (Second) of Torts § 448 (1965).......................................................17

# I.   INTRODUCTION

The Pennsylvania State University (the "University") makes every effort to create an environment that affords its student-athletes the opportunity to achieve academic, athletic, and personal excellence.  In this lawsuit, Plaintiff Isaiah Humphries ("Humphries")—a former University student-athlete who transferred to another institution—questions the integrity of the University and its Head Football Coach James Franklin ("Franklin") and their commitment to creating a safe and productive campus environment for students.  Setting aside these baseless attacks, the Amended Complaint (like its predecessor) fails to state any cognizable legal claim against either the University or Franklin:

- **First**, Humphries fails to state a claim for negligence against the University or Franklin because courts in Pennsylvania and across the nation consistently have held that universities do not owe their adult students a duty of care absent exceptional circumstances not present here. Moreover, Humphries alleges that four classmates caused his injuries, not the University or Franklin.  The University and Franklin therefore are not the proximate cause of Humphries's purported injuries.

- **Second**, Humphries cannot salvage his claim using negligence per se as a fallback.  He bases this theory on alleged violations of two criminal statutes, the Pennsylvania Antihazing Law (the "Antihazing Law"), 24 Pa. Stat. Ann. §§ 5351-5354 (repealed), and its successor, the Timothy J. Piazza Antihazing Law (the "Piazza Law"), 18 Pa. C.S.A. § 2801, *et seq*. But Humphries cannot demonstrate that he was subjected to hazing as defined by either statute.  He contorts the facts to fit a false narrative that he and "other members" were hazed by upperclassmen as an initiation ritual to the football team.  This ignores that the four teammates he contends orchestrated the conduct were his freshman *classmates* who, along with Humphries, were the least senior members of the team.

1

- **Third**, even if the complained-of conduct were deemed to be statutorily prohibited hazing, there is no dispute that it was not perpetrated by the University or Franklin.  At most, Humphries alleges that the University and Franklin failed to intervene to stop the alleged harassment, but the Antihazing Law imposes no such duty.  Thus, neither could have violated the Antihazing Law.

- **Finally**, Humphries's inability to establish the essential elements of a negligence claim similarly dooms his cause of action for negligent infliction of emotional distress ("NIED").  Even if Humphries could establish these elements, the alleged facts do not meet one of the narrow circumstances where courts have permitted NIED claims.  Humphries fails to demonstrate that he had a "special relationship" with the University or Franklin, and the Amended Complaint's conclusory allegations that he suffered "emotional distress" must be disregarded.

For these reasons and others discussed more fully below, the Court should dismiss with prejudice Humphries's claims for negligence (Counts IV and V), negligence per se (Counts I and II), and negligent infliction of emotional distress (Count VIII).

## II.   BACKGROUND

### A.   The University Defendants

#### 1.   The Pennsylvania State University

The University is a world class state-related institution of higher education that makes great efforts to create a safe and productive atmosphere for student growth and development.  Humphries agrees that, as part of these efforts, the University "maintain[s] an environment free of harassment" in order to "advance the Universit[y's] commitment not to tolerate sexual misconduct" and violence.  Am. Compl. ¶ 48.  The Complaint devotes eight pages to a discussion of the

comprehensive policies that the University has promulgated to prohibit unsafe student conduct.  *Id*. ¶¶ 20-54.  First, the University maintains and enforces a written antihazing policy that "prohibit[s]" students and campus organizations from "engaging in any activity which can be described as hazing."  *Id*. ¶¶ 20-23.[1] Second, the University maintains and enforces a Student Code of Conduct outlining expected and acceptable student and student organization behavior.  *Id*. ¶¶ 24-45.  That Code expressly prohibits hazing, sexual harassment, retaliation, and other acts that the University does not tolerate.  *Id.*  Third, the University adheres to several Administrative Policies prohibiting harassment and retaliation and setting forth comprehensive mechanisms for education about, compliance with, and enforcement of the University's Code of Conduct and written antiharassment policy.  *Id*. ¶ 48.

**2.    Coach James Franklin**

University Head Football Coach James Franklin and his coaching staff have created and pursued a mission at the University that involves far more than winning football games:  He forges strong relationships with his student-athletes, requires them to be academically engaged, and teaches them the value of being

---

[1] Humphries admits that the University maintained its antihazing policy specifically "pursuant to the 'Pennsylvania Antihazing Law,' 24 P.S. §§ 5351-5354."  Am. Compl. ¶ 21.

involved in and having a positive impact upon the community so they are poised

for success in a life outside of football.  As Humphries admits, his decision to

accept a full athletic scholarship and enroll as a student-athlete at the University

was based on Franklin's commitment to help advance his academic and athletic

career, as he does for every student-athlete.  *Id*. ¶¶ 67-68.

## B.    Humphries's Allegations of Harassment and Hazing

Humphries alleges that, immediately after arriving to campus "in or about

the calendar month of January 2018," four of his teammates orchestrated a

"campaign" to "harass and haze other members of the Penn State football team" as

"initiation into the Penn State football program."  *Id*. ¶¶ 76-77.  Though Humphries

claims he "viewed" those four teammates as being "upper classmen," not one of

them actually was. *Id*. ¶ 74.  Rather, two of the four teammates (Jesse Luketa and

Micah Parsons) skipped the second half of their senior year in high school and

enrolled early at Penn State *with Humphries* in January 2018.[2]  The other two

---

[2] In ruling on a motion to dismiss, "[t]he court may" take "judicial notice of certain facts, as well as indisputably authentic documents if the complainant's claims are based upon these documents." *Hynoski v. Columbia Cty. Redevelopment Auth*., 941 F. Supp. 2d 547, 555 (M.D. Pa. 2013) (Brann, J.).  A court appropriately takes judicial notice of a fact "at any stage of the proceeding" where the fact is "generally known within" the court's "territorial jurisdiction" or is "capable of accurate and ready determination by resort to source whose accuracy cannot reasonably be questioned." *Id*. (quoting Fed. R. Evid. 201(b)).  The four student-athletes' class years—which are known to Humphries—also are well known in central Pennsylvania and are readily confirmed through sources that

teammates (Yetur Gross-Matos and Damion Barber) were freshmen who had just completed their first semester when Humphries arrived on campus.

Those teammates, Humphries generally contends, harassed "other teammates" with threats of sexual assault; stole "clothes of other teammates"; pinned, restrained, and "simulat[ed] a humping action" on "other teammates"; and placed their penises on the face, body, or between the buttocks of "other teammates." *See id.* ¶¶ 86-90. Humphries does not state the dates on which these incidents allegedly occurred or the "other teammates" to whom they were directed. He also does not identify the date on which he allegedly reported this supposed "harassment and hazing" to unidentified members of the football coaching staff or the actual contents of that report. *Id.* ¶¶ 97-98.[3]

Humphries failed to earn "a game playing opportunity" during the 2018 season. *Id.* ¶ 104. Thereafter, Humphries withdrew from the University and

---

cannot be questioned. *See* Exhibit A to the University's and Franklin's Motion to Dismiss Amended Complaint (collecting local publications and other sources).

[3] Humphries's original complaint alleged that upperclassmen harassed and hazed "lower classmen." *See* Compl. [Dkt. No. 1] ¶ 77. He had to characterize it that way because, otherwise, it could not have been hazing in the form of a team-initiation ritual. The University and Franklin noted in their initial motion to dismiss [Dkt. Nos. 16 & 17] that, in fact, the alleged perpetrators were not even upperclassmen, dooming any attempt by Humphries to characterize their purported actions as being hazing. With no fix, Humphries simply replaced 32 instances of the phrase "lower classmen" with the phrase "other members." *See, e.g.*, Am. Compl. ¶ 77. This is a distinction without a difference; there is no dispute that the

transfer to another institution. *Id.* ¶ 94. Humphries publicly announced his

decision, which was finalized in December 2018, via his Twitter account on

November 28, 2018 in a message replete with appreciation of and well-wishes for

the University and devoid of any claim of mistreatment:

> November 28, 2018 at 3:28 PM
>
> After many months of prayer and thought, I will be leaving Penn State. I'm so thankful for the coaches and the staff for allowing me to come here all the way from Texas. I have made many friends here that I will dearly miss and it's going to be hard to leave them here. But in order to grow and not lose the passion that I have for football and for everything that I value. I unfortunate will be transferring from this place. I appreciate everything that has been given to me and the relationships that I have made along the way. Good luck to the Nittany Lions on their bowl game and I wish them the best.
> So now, I'll be figuring out where I will call home next.

*See* Exhibit B to Motion to Dismiss Amended Complaint.[4]

---

teammates Humphries accuses of orchestrating a hazing campaign were all
freshmen and, by definition, could not haze students of a lower class year.

[4] Just as this Court may take judicial notice of Humphries's teammates' class
years, it may also consider Humphries's public announcement of his withdrawal.
*See Hill v. Havens*, No. 4:18-CV-00212, 2018 WL 4184316 (M.D. Pa. Aug. 31,
2018) (Brann, J.); *see Hynoski*, *supra*.  Humphries's withdrawal is "integral to" his
Complaint because: (i) he alleges that his withdrawal is evidence that he was

## III.   ARGUMENT

### A.   Legal Standard

To survive dismissal, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  Thus, a plaintiff must come forth with more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Dismissal is appropriate where that inquiry reveals that a plaintiff has not pleaded "enough facts to state a claim that relief is plausible on its face." *Twombly*, 550 U.S. at 570.  This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  That is, the plausibility standard calls upon a court to "eliminate those claims that do not present 'enough' factual matter, assumed to be true, 'to raise a reasonable expectation that discovery will reveal evidence' in support of the claims." *Mifflinburg Tel., Inc. v. Criswell*, 80 F. Supp. 3d 566, 569 (M.D. Pa. 2015)

---

subjected to hazing, *see* Am. Compl. ¶ 94, and (ii) the timing of his withdrawal is relevant to the Court's determination of which version of the Pennsylvania antihazing law governs Humphries's negligence per se claims, *see* Pt. IV(C) *infra*. The announcement was published by Humphries himself; he cannot reasonably deny his authorship or the contents of his statement.  *See* Fed. R. Evid. 201(b).

(quoting *Twombly*, 550 U.S. at 556) (Brann, J.).  The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## B.   The Court Should Dismiss Humphries's Negligence Claims Because He Cannot Demonstrate the Requisite Elements

"Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009).  "Under Pennsylvania law, a Plaintiff bringing a cause of action for negligence must allege 'the four basic elements of duty, breach, causation, and damages.'" *Perez v. Great Wolf Lodge of the Poconos LLC*, 200 F. Supp. 3d 471, 478 (M.D. Pa. 2016) (citing *Loughran v. The Phillies*, 888 A.2d 872, 874 (Pa. Super. Ct. 2005)).  Here, Humphries cannot establish that the University or Franklin owed him any duty at all.  And, even if Humphries could establish a legal duty, he admits that persons *other than* the University and Franklin caused his purposes injuries.

### 1.   As a Matter of Law, Neither the University nor Franklin Had a Duty to Protect Humphries from Actions of His Classmates

The "existence of a duty owed by a defendant is the threshold question in a negligence action, and this is generally a question of law." *Perez*, 200 F. Supp. 3d at 471 (citing *Holmes v. Kimco Realty Corp.*, 598 F.3d 115 (3d Cir. 2010)).  Under Pennsylvania "common law[,] there is no duty to control the conduct of a third

party to protect another from harm, except where a defendant stands in some special relationship . . . with the intended victim of the conduct, which gives the intended victim a right to protection." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40 (Pa. Super. Ct. 2000); *see also Emerich v. Philadelphia Ctr. for Human Dev., Inc.*, 720 A.2d 1032, 1036 (Pa. 1998); *Reason v. Kathryn's Korner Thrift Shop*, 169 A.3d 96, 102 (Pa. Super. Ct. 2017).

Humphries asserts in conclusory fashion that he had a "special relationship" with the University and Franklin. *See generally* Am. Compl. ¶¶ 159, 166. But Pennsylvania courts have only recognized a special relationship (and, thus, a duty to protect) in limited circumstances:  between carriers and passengers; innkeepers and guests; and where one person has "custody" over and "controls" the conduct of another. *See Brezenski*, *supra.* at n. 4 (citing Restatement (Second) of Torts §§ 314A, 320 (1965)); *see also Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1170 (Pa. 2000); *Reason*, *supra* (applying § 314A); Restatement (Second) of Torts § 314A (1965) (stating that a person who "voluntarily takes the custody of another" such as to "deprive the other of his normal opportunities for protection" has "a duty to protect" the other).  Pennsylvania courts have not extended this sort of "special relationship" to encompass relationships between a student and his university or an athlete and his coach.

9

Instead, Pennsylvania courts reject that a student has a "custodial relationship" with his university sufficient to impose a duty of care upon the latter. *Alumni Ass'n v. Sullivan*, 572 A.2d 1209, 1213 (Pa. 1990) (adopting *Bradshaw v. Rawlings*, 612 F.2d 135, (3d Cir. 1979), discussed *infra*). "Clearly, in modern times, it would be inappropriate to impose an *in loco parentis* duty upon a university." *Id.* A college or university does "not 'control' the behavior of its students as may have been possible in the past." *Millard v. Osborne*, 611 A.2d 715, 721 (Pa. Super. Ct. 1992). Without that control, Pennsylvania courts do not impose a duty upon a university to care for or protect its adult students from third parties. *See Sullivan*, *supra* (stating that imposing a duty upon universities to monitor activities of student organizations would be a "sweeping change of our existing law"); *see also Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 609 (E.D. Pa. 2014) (affirming "that publicly-funded schools do not have a special relationship with" its "adult students who voluntarily elect to enroll in the university"); *Harris v. Saint Joseph's Univ.*, No. CIV.A. 13-3937, 2014 WL 1910242, at *6 (E.D. Pa. May 13, 2014) (noting the absence of "any caselaw indicating that a private university owe[s]" duties to "its students under Pennsylvania negligence law").

Applying Pennsylvania law, the United States Court of Appeals for the Third Circuit has recognized that "the modern American college is not an insurer of the safety of its students." *Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3d Cir.

1979).  That is, in large part, because "the modern college student [is] an adult, not a child of tender years[,]" and therefore is "capable of protecting [his] own self-interests."  *Id.*[5]  The *Bradshaw* Court specifically considered *and rejected* the student-plaintiff's argument that his relationship with his college justified the imposition of a general duty of care.  After all, a college student is an adult, not a minor under the "control" of the college or otherwise involuntarily charged to the college's care and supervision.

Courts across the country are in accord, with many finding, as in *Bradshaw*, that the modern university-student relationship does not constitute a "special relationship" that imposes a general duty on universities to care for their autonomous, adult students.  *See, e.g.*, *Pearson v. Logan Univ.*, 937 F.3d 1119, 1127 (8th Cir. 2019), *reh'g denied* (Oct. 10, 2019) (concluding under Missouri law that "[a]s a general rule, a college does not owe a duty to protect its students"); *Emery v. Talladega Coll.*, 688 F. App'x 727, 735-738 (11th Cir. 2017) (concluding that Alabama law precluded the court from imposing a general duty of safety on

---

[5] The Third Circuit has identified a sole, "narrow" exception to Pennsylvania's rule that a university owes its students no duty of care sufficient to support a claim of negligence.  *See Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360 (3d Cir. 1993) (concluding that a college had a "duty to have adequate medical response personnel available during the school-sponsored lacrosse practice").  No court has extended *Kleinknecht* beyond its self-described "narrow" holding.  *See, e.g.*, *Kennedy v. Robert Morris Univ.*, 133 A.3d 38, 41 (Pa. Super. Ct. 2016) (specifically rejecting extension of *Kleinknecht* under Pennsylvania law).

universities and concluding that no "special relationship" existed where student was not "incapacitated, helpless, nor completely dependent upon [university's] intervention or protection to prevent the harm"); *Guest v. Hansen*, 603 F.3d 15, 21-22 (2d Cir. 2010) (concluding under New York law that "colleges have no legal duty to shield students" from harmful activity of other students and "do not act in loco parentis").

One federal district court recently considered the very question raised by Humphries's lawsuit:  whether a university has a special relationship with a student-athlete who claims he was the victim of harassment and hazing by teammates.  The court answered with a resounding "no."  *George v. Averett Univ. of Danville, Virginia*, No. 4:19-CV-00008, 2019 WL 3310517 (W.D. Va. July 23, 2019).  In *George*, a member of the university's baseball team alleged that "he was hazed and harassed by several of his teammates."  *Id*. at *1.  The plaintiff brought suit against the university alleging that its negligence and failure to supervise student behavior caused an altercation.  *Id*. at *4.  The Court rejected Plaintiff's theory, holding:

> Plaintiff has not alleged the existence of [a] special relationship . . .  that would give rise to a duty to protect Plaintiff from [his teammate's] criminal behavior. Courts have been loath to recognize a special duty outside of carefully delineated relationships . . . and I am not aware of any case in which a special relationship has been held to exist between a university and its students sufficient to make the university liable for the assaultive criminal behavior of one student against the other.

12

*Id*.

The rule of Virginia law considered and applied in *George* is virtually identical to the one imposed by Pennsylvania law:  a defendant owes a duty to protect the plaintiff from harm caused by a third party where "a special relationship exists" which "gives a right of protection to the plaintiff."  *Id*. (compare *Brezenski*, *supra*).  This Court should align with *George* and find that the University cannot be held "liable for" what Humphries contends to be the purported "assaultive criminal behavior" of his teammates.  *See* Am. Compl. ¶¶ 200-202.

Humphries likewise has no "special relationship" with Franklin.  As discussed above, the only way Humphries can assert that he and Franklin had a "special relationship" is to establish that Franklin somehow deprived Humphries of his autonomy and "his normal opportunities for protection."  *See* Restatement (Second) of Torts § 314A (1965).  But Humphries, an "adult," *see* Am. Compl. ¶ 6, admits that Franklin did no such thing.  To the contrary, Humphries admits that he freely "transferred his education to the University of California" in December 2018 when he decided that he no longer wished to play football for the University.  *See* Am. Compl. ¶ 94.

Humphries, at most, asserts that Franklin knew or should have known that Humphries was at risk and therefore incurred a duty to intervene.  *See* Am. Compl. at ¶ 99.  But the Pennsylvania Supreme Court has never accepted such a theory.

13

Instead, that Court recognizes a "limitation on the duty to act for another's aid or protection," agreeing that the "fact that an actor realizes or should realize that action on his part is necessary for another's aid or protection does not itself impose upon him a duty to take such action." *Montagazzi v. Crisci*, 994 A.2d 626, 632 (Pa. Super. Ct. 2010) (citing Restatement (Second) of Torts § 314 (1965)); *see Yania v. Bigan*, 155 A.2d 343, 346 (Pa. 1959).

Because Humphries fails to assert facts sufficient to establish that either the University or Franklin had a duty to protect him from third parties, he fails to state claims for negligence.

### 2.   Humphries Cannot Demonstrate That the University or Franklin Proximately Caused His Alleged Injuries

Humphries's negligence claims against the University and Franklin also should be dismissed because Humphries's admissions demonstrate he cannot, as a matter of law, establish the requisite element of causation.  "To prove causation, a demonstration that the breach of duty was both the proximate cause and actual cause of injury was required." *Eckroth v. Pennsylvania Elec., Inc.*, 12 A.3d 422, 427 (Pa. Super. Ct. 2010).  A plaintiff must establish more than that the purportedly negligent act is "one of the happenings in a series of events leading up

to an injury," as "[e]ven if the requirement of actual causation is satisfied, there remains the issue of proximate or legal cause." *Id*. (citation omitted).

An act is a proximate cause of an injury if it is "a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Id*. (concluding that a company's negligence was excused where individual's "extraordinary breach" of safety measures was "not reasonably foreseeable as a normal" consequence of negligence); *see also Hall v. Millersville Univ.*, 400 F. Supp. 3d 252, 273 (E.D. Pa. 2019). Where "a myriad" of "matters" *other than* the defendant's conduct have a "far greater effect" in bringing about an injury, even the conduct of a negligent defendant will not be a "substantial factor in producing the harm." *Heeter v. Honeywell Int'l Inc*, 706 F. App'x 63, 67 (3d Cir. 2017).

Humphries admits that any "physical harm" he suffered "was a direct result of actions attributable," if at all, to certain teammates—people *other* than the University or Franklin. *N'Jai v. Bentz*, No. CV 13-1212, 2016 WL 7404550, at *6 (W.D. Pa. Dec. 22, 2016) (citation omitted); *see, e.g.*, Am. Compl. ¶ 76 (alleging that four teammates "collectively orchestrated" the hazing campaign). With respect to the University and Franklin, Humphries contends only that they failed to intervene to stop the actions of independent third parties. Even if this inaction occurred (it did not), neither the University nor Franklin could have been the legal,

15

proximate cause of Humphries's injuries, which he attributes to the conduct of four other individuals.

Relatedly, this supposed teammate conduct constitutes a superseding cause that, as a matter of law, precludes liability on the part of the University or Franklin. "In determining whether an intervening force is a superseding cause, the test is whether the intervening conduct was so" extraordinary or outrageous that it could not have been reasonably foreseeable. *Powell v. Drumheller*, 653 A.2d 619, 623 (Pa. 1995); *see also Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 495 (3d Cir. 1985); *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 565 (W.D. Pa. 2015) ("The Pennsylvania Supreme Court held that the act of a third person in committing an intentional tort or crime is a superseding cause."); Restatement (Second) of Torts § 448.  Humphries repeatedly admits that the alleged harassment and hazing rituals performed by his teammates in the football locker room and off campus were "extreme," "outrageous," and "intentional."  *See* Am. Compl. ¶¶ 91, 179, 191, 192.  Such conduct is not "reasonably foreseeable" as a matter of law. *See Gabriel*, *supra*; *Flickinger's Estate v. Ritsky*, 305 A.2d 40, 43 (Pa. 1973).  Nor can Humphries plausibly argue it was "reasonably foreseeable" that four teammates—each a freshman—somehow would be empowered to "initiat[e]" and harass other freshman members of the football team.

*     *     *     *     *

In sum, Humphries cannot, as a matter of law, demonstrate that either the University or Franklin owed him any duty or that they were the legal cause of his injuries (to the extent he suffered any at all).  Counts IV and V of the Amended Complaint should be dismissed with prejudice.

**C.     Humphries's Negligence Per Se Claims Fail Because the Amended Complaint's Allegations, Even if Proven, Would Not Constitute Violations of the Antihazing Law**

Because Humphries knows that the University and Franklin do not owe him, an adult student, any common-law duty, he attempts to salvage his claims by alleging negligence per se based on supposed violations of the Antihazing Law. Negligence per se "is not a distinct cause of action but rather an evidentiary presumption that a defendant's violation of a legislative or regulatory enactment constitutes proof of a breach of duty." *Deitrick v. Costa*, No. 4:06-CV-01556, 2015 WL 1606714 (M.D. Pa. Apr. 9, 2015).  A negligence per se claim "establishes both duty and required breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm." *Cabiroy v. Scipione*, 767 A.2d 1078, 1079 (Pa. Super. Ct. 2001).  The elements of duty and breach of that duty are not "automatically proven" by asserting negligence per se; rather, a plaintiff must demonstrate that a duty existed and that a defendant breached that duty by first "referencing the violator's action (or inaction)

17

against the statute's words and policy." *McCloud v. McLaughlin*, 837 A.2d 541, 544 (Pa. Super. Ct. 2003).  In order to invoke the theory of negligence per se, then, a plaintiff must first establish that the defendant actually "violate[d a] statute or regulation." *Piazza v. Young*, 403 F. Supp. 3d 421, 438 (M.D. Pa. 2019).

### 1.   The Antihazing Law Alone Governs Humphries's Claims

As this Court previously held in the context of a negligence per se claim involving hazing, the applicable statute "to be used when determining the existence of a duty" is "the anti-hazing statute *in effect at the time of Defendants' conduct*." *Id.* (emphasis added); *see also Trinity Indus., Inc. v. Greenlease Holding Co.*, 35 F. Supp. 3d 698, 723 (W.D. Pa. 2014), *aff'd*, 903 F.3d 333 (3d Cir. 2018) (considering statute in effect at the time the conduct occurred for negligence per se claim).  That is, in part, because the Pennsylvania Statutory Construction Act explicitly states that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."  1 Pa. C.S.A. § 1926.

Humphries asserts that the hazing began "[i]n or about the calendar month of January 2018."  Am. Compl. ¶ 76.  The Antihazing Law remained in effect for the next approximately 320 days of Humphries's enrollment before it was repealed and replaced by the Piazza Law, effective November 19, 2018.  Nine days later, Humphries announced his transfer from the University.  Humphries does not contend to have been harassed or hazed at any point during those 9 days (as

18

opposed to the prior 320 days following his enrollment).  Given the Amended

Complaint remains silent on this point, the Court should accept the more plausible

interpretation of Humphries's allegations: that no hazing occurred after November

18, 2018.  Accordingly, only the Antihazing Law—not the Piazza Law, and not

both versions of the law—applies to his negligence per se claims.

### 2.   Humphries Cannot Demonstrate Hazing In Violation of the Antihazing Law

As discussed above, Humphries invokes the Antihazing Law as a last-ditch

effort to plead a negligence claim where no common law legal duty exists.  To do

that, however, he must shoehorn the facts involving his supposed mistreatment by

teammates (more precisely, *classmates*) into the scope of acts prohibited by the

Antihazing Law.  Accordingly, Humphries attempts to characterize his teammates'

acts as an initiation ritual performed by upperclassmen on the football team against

"other members of the Penn State football team" seeking membership into the

football program.  *See* 24 P.S. § 5352 (defining hazing as conduct "for the purpose

of admission to or affiliation with" an "organization").  This theory, however,

unravels for several reasons.

First, Humphries conspicuously omits that none of these individuals were in

fact upperclassmen.  That is because they were all freshmen.  They could not have

"initiated" or "admitted" anyone to anything at the University.  Two (Luketa and

Parsons) were January 2018 enrollees who chose to forego their last high school

semester and—like Humphries—arrived on campus early.  The other two (Gross-Matos and Barber) also were freshmen when Humphries arrived onto campus. Humphries fails to assert how he or "other members of the Penn State football team" could have been initiated or admitted to the program by the least senior members of the football team at the time.  Whatever, if anything, happened between Humphries and these four teammates happened among lower classmen on equal footing in the program, not part of some initiation ritual orchestrated by upper classmen potentially in violation of the Antihazing Law (or, for that matter, the Piazza Law).  *See* 24 P.S. § 5352.

Second, the revised allegations in the Amended Complaint only highlight the implausible nature of Humphries's legal theory.  Humphries now asserts that the purported hazing was directed to the amorphous "other members of the Penn State football team."  This is a change from his original Complaint, which asserted that Humphries's freshman teammates hazed "lower classmen" who, at least conceptually, could have been subjected to some initiation ritual.  But now, Humphries asserts that early enrollees Luketa and Parsons, who arrived at the *exact same time* as Humphries, commenced a "campaign to harass other members of the Penn State football team"—presumably including even senior student-athletes just weeks away from their commencement—"as a form of initiation into the Penn State football program."  *See* Am. Compl. ¶ 77.  His implausible theory is not

statutory "hazing" at all because *freshmen* cannot haze *upperclassmen* "for the purpose of admission to or affiliation with" the University's football team.  *See* 24 P.S. § 5352.

This Court should dismiss Humphries's negligence per se claims because he fails to "nudge" them across "the line from conceivable to possible."  *Mifflinberg Tel., Inc.*, *supra*.  Humphries's negligence per se theory is not plausible, defies "common sense," and should be rejected.  *Iqbal*, 556 U.S. at 679.

### 3.    As a Matter of Law, Neither the University nor Franklin Could Have Violated the Antihazing Law

Even if Humphries had been hazed by upperclassmen as part of a purported initiation rite, which is not the case, he cannot demonstrate that the University or Franklin's purported inaction violated state law.  The Antihazing Law prohibited and criminalized acts by individuals who engaged in hazing activities, providing that "[a]ny *person* who *causes or participates in hazing* commits a misdemeanor of the third degree."  24 P.S. § 5353 (emphasis added).[6]  It did not apply to either institutions like the University or individuals like Franklin, whom Humphries alleges, at most, failed to intervene after hazing allegedly was reported.

---

[6] The Antihazing Law defined hazing as an "action or situation which recklessly or intentionally endangers the mental or physical health or safety of a person . . . for the purpose of initiation or admission into or affiliation with, or as a condition for continued membership in, any organization."  *Id*.

21

Humphries possesses no facts that would demonstrate the University violated the Antihazing Law.  First, the plain text of the law itself only prohibited and criminalized acts by a "person" who engaged in hazing.  *See* 24 P.S. § 5353. The University is not a "person" and instead falls squarely within the statutory definition of "institution."  *See* 24 P.S. § 5352.  The Antihazing Law therefore does not contemplate criminal liability on the part of an *institution* for engaging in the act of hazing (nor does it provide the foundation for a negligence per se claim). Second, Humphries does not and cannot contend that the University "caus[ed] or participat[ed] in hazing," particularly given that he details the great lengths the University takes to protect *against* that very conduct.  *See* Am. Compl. ¶¶ 20-54. Humphries admits that the University "maintained a written antihazing policy" pursuant to the Antihazing Law and, borrowing from the statute itself, "adopted rules prohibiting students or other person associated with any organization" on campus from engaging in hazing.  *Compare* Am. Compl. ¶¶ 21-22 *with* 24 P.S. § 5354(a)(2).

Likewise, Humphries does not and cannot contend that Franklin "cause[d] or participate[d] in hazing" in violation of the Antihazing Law.  *See* 24 P.S. § 5353. Humphries identified four individuals (all lower classmen) who he contends caused or participated in harassment and hazing, and Franklin is not one of them.

22

At most, Humphries contends that the University and Franklin failed to intervene on his behalf, but that purported failure does not and cannot establish negligence per se arising under the Antihazing Law.  Since Humphries proceeds on a theory of negligence per se, he must establish that the "duty" he contends to have been breached was created by the Antihazing Law itself.  *See McCloud*, *supra* (stating that where a plaintiff proceeds "under a negligence per se theory," the standard of care is "defined in accordance with the statute itself, not under the common law").  But the Antihazing Law does not impose a duty to intervene or assist another person who has been hazed by a third person.  To the extent Humphries asserts a failure to act as a basis for his negligence per se claims, he fails to assert a violation of the Antihazing Law altogether.[7]

Because Humphries possesses no facts demonstrating that the University or Franklin violated the Antihazing Law—the statute that was in effect at the time the alleged hazing occurred—Humphries cannot establish a claim for negligence per se against the University or Franklin.

---

[7] Separately, a plaintiff asserting a claim of negligence per se "still bears the burden of establishing causation."  *Sabo v. UPMC Altoona*, 386 F. Supp. 3d 530, 562 (W.D. Pa. 2019).  As set forth below, Humphries fails to establish that either the University or Franklin, rather than the alleged "intentional" and "extreme" conduct of Humphries's teammates, was the cause of his purported injuries.

### 4.     The Piazza Law Does Not Apply, and Even If It Did, Humphries's Negligence Per Se Claims Still Fail

The Amended Complaint relies, in part, on the Piazza Law, which replaced the repealed Antihazing Law, as a basis for negligence per se liability.  But Humphries does not allege any facts to establish that the Piazza Law was in effect during the period when he contends he was subjected to hazing.  Regardless, Humphries would still fail to make out a cognizable claim of negligence per se under the Piazza Law because neither the University nor Franklin engaged in "hazing" as defined by that statute.

In fact, nobody did.  Even with the benefit of an expanded definition of hazing under the Piazza Law, Humphries fails to assert that he was "hazed."  A person may be guilty of hazing under the Piazza Law when he "forces" a student to engage in prohibited conduct "for the purpose of initiating, admitting or affiliating" or "continuing or enhancing" a student's status in an organization.  *See* 18 Pa. C.S.A. § 2802(a).  As set forth above, Humphries's four classmates cannot have engaged in such conduct because they were lower classmen (the term from which Humphries retreated in his Amended Complaint), not "upper classmen."

Even if the Court were to accept Humphries's implausible theory of initiation by other lower classmen and conclude that hazing occurred on or after November 19, the Complaint would *still* fail to state a cognizable claim as to the University or Franklin.  First, not a single fact is pled that establishes the

24

University "cause[d], coerce[d] or force[d]" Humphries to endure physical, mental, emotional, or sexual abuse. *See* 18 Pa. C.S.A. § 2802(a). Rather, Humphries alleges that four of his teammates "collectively orchestrated" the supposed hazing campaign against him. Am. Compl. ¶ 76. Second, Humphries fails to establish that the University engaged in "institutional hazing" because he asserts no fact to support that the University "intentionally, knowingly or recklessly promot[ed] or facilitat[ed]" hazing prohibited by the Piazza Law. *See* 18 Pa. C.S.A. § 2805. To the contrary, he *admits* that the University went to great lengths to protect *against* that very conduct. *See* Am. Compl. ¶¶ 20-54.

Humphries fares no better with respect to Franklin. Franklin, as an individual (as opposed to an institution), is only liable under the Piazza Law if he "cause[d], coerce[d] or force[d]" Humphries to endure acts of hazing for the purpose of initiation into an organization. *See* 18 Pa. C.S.A. § 2802(a). Humphries does not and cannot contend that Franklin engaged in such conduct.

At most, Humphries contends that the University and Franklin failed to intervene. *See* Am. Compl. ¶ 99 (alleging that "no substantive action was taken" by Franklin to "prevent" alleged harassment and hazing). But the Piazza Law (like the Antihazing Law) imposes no obligation on any person to intervene on behalf of another person. Any purported failure to act, even if it were true, does not support

Humphries's negligence per se claims because those claims assert a breach of a duty that was never imposed by the statute.

Accordingly, even if the Piazza Law applied, Humphries's Counts I and II fail because he asserts no facts to establish that either the University or Franklin could have violated that statute.

### D.   Humphries Cannot Establish the Elements of Negligent Infliction of Emotional Distress

As a threshold manner, Humphries's Count VIII for NIED fails as to the University and Franklin for the same reasons as his general negligence claim:  he fails to establish the essential elements of negligence, which is a prerequisite for an NIED claim.  *See Brezenski*, *supra* ("[A]bsent a finding of negligence, the negligent infliction of emotional distress claim cannot survive."); *Smolsky v. Consol. Rail Corp.*, 780 F. Supp. 283, 290 (E.D. Pa. 1991) ("In order to recover for negligent infliction of emotional distress, the plaintiff must prove all of the regular elements of a negligence cause of action.").

Humphries's claim also fails for two independent reasons.  *First*, the Amended Complaint does not present a factual circumstance in which Pennsylvania courts permit a claim for NIED to proceed.  "[T]he Pennsylvania Supreme Court has limited liability" for negligent infliction of emotional distress claims "through several gatekeeping requirements" intended to prevent spurious and exaggerated NIED claims.  *See Pressley v. Forrest*, No. 10-CV-3270, 2013

26

WL 5567569, at *3 (E.D. Pa. Oct. 8, 2013).  Specifically, that Court has

recognized NIED only where a plaintiff pleads that he:  (1) "suffers a physical

injury which causes the emotional distress"; (2) did not suffer a personal impact

but was in the zone of danger; or (3) witnesses an accident causing serious injury

to a close family member.  *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454,

459 (E.D. Pa. 2014).  Humphries does not allege facts that fit under any one of

these three scenarios; instead, he contends that the University and Franklin

maintained a "special relationship" with Humphries such that they incurred duties

to care for his emotional well-being.  *See, e.g.*, Am. Compl. ¶¶ 131, 146.[8]

The Pennsylvania Supreme Court has never adopted Humphries's theory of

NIED.[9]  To the extent it has addressed the concept at all, the Court has cautioned

---

[8] The Amended Complaint tweaks Humphries's prior allegations concerning this special relationship.  He now alleges this relationship "involved an implied duty to care for the plaintiff's emotional well-being."  Am. Compl. ¶¶ 131, 146. This additional language is a legal conclusion and merits no consideration from the Court.  It parrots the exact language used by the Eastern District of Pennsylvania in a case the University and Franklin cited in their initial motion to dismiss.  *See Shulick v. United Airlines*, No. CIV.A. 11-1350, 2012 WL 315483, at *6 (E.D. Pa. Feb. 2, 2012).  Humphries cannot cure his defective NIED factual allegations by repeating phrases from an opinion describing the relevant legal standard.

[9] *See Toney v. Chester Cty. Hosp.*, 36 A.3d 83 (Pa. 2011); *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 593 (W.D. Pa. 2019) (explaining the non-precedential value of the split *Toney* decision stating NIED under a "special relationship" theory); *see also Hershman*, 17 F. Supp. 3d at 460 ("Pennsylvania Courts are split as to whether the Supreme Court will approve of NIED claims based on the breach of a special relationship.").

that not all fiduciary relationships would qualify as special relationships for the purposes of an NIED claim. *Shulick v. United Airlines*, No. CIV.A. 11-1350, 2012 WL 315483, at *6 (E.D. Pa. Feb. 2, 2012) (citing *Toney*, *supra*). Even courts generously accepting the "special relationship" theory decline "to extend liability" for NIED "any further" than certain relationships between doctors and patients or adoption agencies and adoptive parents. *MDB*, 386 F. Supp. 3d at 593. NIED claims are "limited to existing relationships that involve 'duties that obviously and objectively hold the potential of deep emotional harm in the event of breach.'" *Vargas v. Penn State Hershey Milton S. Hershey Med. Ctr.*, No. 1:16-CV-01657, 2018 WL 2287670, at *3 (M.D. Pa. May 18, 2018).[10]

There is no "special relationship" between Humphries and either the University or Franklin sufficient to support his already tenuous NIED claim. In fact, courts applying Pennsylvania law have held that a university and a student do *not* have any such relationship. *See Hershman*, *supra* ("[T]he relationship between a college and its students does not obviously hold the potential of deep emotional

---

[10] *See also Perloff v. Transamerica Life Ins. Co.*, 393 F. Supp. 3d 404, 410 (E.D. Pa. 2019) (describing the requisite relationship as one "where the plaintiff has put his emotional well-being in the defendant's hands"); *Shulick*, 2012 WL 315483, at *6 (stating that a plaintiff must "demonstrate" that a defendant had "an implied duty" to "care for the plaintiff[s'] emotional well-being" such as doctor-patient relationship, funeral director-widower relationship, and other life-and-death situations).

harm."). And no court applying Pennsylvania law has recognized this type of relationship between a coach and an athlete. This Court should not be the first, especially given that the Amended Complaint admits that (i) Humphries is an adult, *see* Am. Compl. ¶ 6; (ii) Franklin acted at all times within the scope of his University employment, *id*. ¶ 9, and was therefore an agent of the University; (iii) Humphries chose to attend the University and play for the football team, *id*. ¶ 69; and (iv) Humphries was free to (and, in fact, did choose to) separate himself from the University and Franklin by transferring to another institution, *id*. ¶ 94.

*Second*, Humphries fails to assert that he suffered any physical injury as a result of his purported emotional distress. "Physical injury must be averred to sustain a cause of action for [NIED]." *Armstrong v. Paoli Mem'l Hosp.*, 633 A.2d 605, 609 (Pa. Super. Ct. 1993) (collecting cases); *see also Banyas v. Lower Bucks Hospital*, 437 A.2d 1236 (Pa. Super. Ct. 1981) (plaintiff failed to aver physical harm and, thus, stated no cause of action for NIED). Pennsylvania courts have long held that "[t]here can be no recovery for humiliation, disappointment, anxiety, or mental suffering, or emotional distress when unconnected with physical injury or physical impact." *Gefter v. Rosenthal*, 119 A.2d 250, 251 (Pa. 1956); *see also Armstrong v. Paoli Mem'l Hosp.*, 633 A.2d 605, 609 (Pa. Super. Ct. 1993).

Yet Humphries asserts that he was "caused to suffer fear, anxiety, panic, and emotional trauma." *See* Am. Compl. ¶ 187. He alleges that this "emotional

distress" has caused him "illness and bodily harm," but does not assert what or how.  *Id*. ¶¶ 188-189.  These conclusory allegations of harm are not sufficient.  *See Estate of Rennick v. Universal Credit Servs., LLC*, No. CV 18-3881, 2019 WL 196539, at *6 (E.D. Pa. Jan. 15, 2019) (holding that "conclusory allegation that [plaintiff] experienced 'physical manifestations of distress' is not sufficient" to support NIED claim); *Twombly*, 550 U.S. at 554.

Humphries's allegations are similar to those recently rejected by another federal district court in a collegiate athletics setting.  *See Stafford v. George Washington Univ.*, No. 18-CV-2789 (CRC), 2019 WL 2373332 (D.D.C. June 5, 2019).  In *Stafford*, a men's tennis student-athlete brought an NIED claim alleging that he was the victim of repeated harassment by teammates and that the university and its coaches failed to intervene after the plaintiff and his father reported the misconduct.  *Id*. at * 1-2.  The Court first concluded that the plaintiff did not have a "special relationship" with the university giving rise to a duty to protect his emotional well-being.  *Id*. at *19-20.  Next, the Court held that the plaintiff's "vague and conclusory allegations" as to "physical and mental ailments" were inadequate.  *Id*. at *21.  This Court should reach the same result here.  Humphries's conclusory allegations of "emotional trauma" and "emotional distress," Am. Compl. ¶¶ 187-189, are not sufficient to state an NIED claim.

At bottom, Humphries fails to assert a cognizable claim for NIED because he cannot demonstrate the requisite elements of a negligence claim, contort the alleged facts into one of the limited scenarios in which a plaintiff may assert an NIED claim, or explain how he suffered any more than general emotional distress unrelated to physical injury.  Count VIII should be dismissed with prejudice.

## IV.   CONCLUSION

For the reasons set forth above, Humphries fails to assert viable causes of action against the University or Franklin.  This Court should therefore dismiss Counts I, II, IV, V, and VIII of the Amended Complaint with prejudice.

Date: April 7, 2020

**JONES DAY**

*/s/ Matthew A. Kairis*
Matthew A. Kairis
Admitted *Pro Hac Vice*
2727 North Harwood Street, Suite 600
Dallas, TX 75201-1515
(214) 220-3939
makairis@jonesday.com

James S. Urban (Pa. I.D. 82019)
Katherine McLay (Pa. I.D. 320191)
Admitted *Pro Hac Vice*
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Telephone: (412) 391-3939
jsurban@jonesday.com
kmclay@jonesday.com

**McNEES WALLACE & NURICK LLC**

James P. DeAngelo (Pa. ID No. 62377)
Carol Steinour Young (Pa. ID No. 55969)
Sarah Hyser-Staub (Pa. ID No. 315989)
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000
jdeangelo@mcneeslaw.com
csteinour@mcneeslaw.com
sstaub@mcneeslaw.com

*Attorneys for Defendants The Pennsylvania*
*State University and James Franklin*

## CERTIFICATION OF COMPLIANCE

The undersigned counsel certifies that the foregoing brief complies with the word-count limitation stated in L.R. 7.8(b)(2), as amended by the Court's Order dated March 30, 2020 granting Defendants The Pennsylvania State University and James Franklin's Unopposed Motion to Exceed Page Limitation [Dkt. No. 25]. Omitting the case caption, tables, and counsel's signature block but including all footnotes, this brief contains 7,495 words as determined by counsel's word processor.

*/s/ Matthew A. Kairis*
Matthew A. Kairis