## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ISAIAH HUMPHRIES,

       Plaintiff,

    v.

THE PENNSYLVANIA STATE
UNIVERSITY; JAMES FRANKLIN;
and DAMION BARBER,

       Defendants.

No. 4:20-CV-00064

(Judge Brann)

## MEMORANDUM OPINION

### OCTOBER 2, 2020

## I.     BACKGROUND

On January 13, 2020, Plaintiff, Isaiah Humphries, (hereinafter "Plaintiff"), filed a 11-count complaint against The Pennsylvania State University ("Penn State"), James Franklin ("Franklin," and together with Penn State, the "University Defendants"), and Damion Barber ("Barber," and together with the University Defendants, the "Defendants").  Although this Court has not had the opportunity to issue a ruling on the merits of this case, it now considers Plaintiff's second amended complaint (the "SAC").

On July 7, 2020, all Defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The motion is now ripe for disposition; for the reasons that follow, is denied in part and granted in part. However, Plaintiff will be provided leave to amend the complaint.

## II.   DISCUSSION

### A.     Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.[8]   These

---

[1]   *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

[2]   *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[3]   *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[4]   *Neitzke*, 490 U.S. at 327.

[5]   Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-20 (2012).

[6]   550 U.S. 544 (2007).

[7]   556 U.S. 662, 678 (2009).

[8]   *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[9]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[12] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[9]   *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[10]   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[11]   *Iqbal*, 556 U.S. at 678.

[12]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[13]   *Twombly*, 550 U.S. at 556.

[14]   *Iqbal*, 556 U.S. at 679.

plausibility of entitlement to relief.'"[15]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[16] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[17] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[19]

### B.    Facts Alleged in the SAC

The facts alleged in the SAC, which I must accept as true for the purposes of this motion, are as follows.

---

[15]   *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[16]   *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[17]   *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[18]   *Iqbal*, 556 U.S. at 678.

[19]   *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

Plaintiff was a college student attending Penn State.[20]  He played football for Penn State and its head coach, James Franklin, after accepting an athletic scholarship.[21]  Once he arrived on campus, Plaintiff began participating in practices and other team activities.[22]  Unfortunately, Plaintiff alleges that his time at Penn State was marred by a campaign conducted by other team members (including Damion Barber) to harass and haze other players, including Plaintiff.[23]  Plaintiff alleges that this campaign "served as a form of initiation into the Penn State football program."[24]  Throughout his time at Penn State, Plaintiff alleges that he (and other teammates) were subjected to various forms of hazing and harassment.

For example, according to Plaintiff, Barber and other players would say to other teammates, such as Plaintiff: "I am going to Sandusky you."[25]  Barber and other players would wrestle other teammates, such as Plaintiff, to the ground and simulate a "humping action" while on top of the other teammates.[26]  According to Plaintiff, Barber and other players would wrestle other teammates, such as Plaintiff, to the ground, while one of them would "place his genitals on the face of

---

[20]  Doc. 40 at ¶ 7.
[21]  *Id.* at ¶¶ 63; 10; 72-76.
[22]  *Id.* at ¶ 78.
[23]  *Id.* at ¶ 82.
[24]  *Id.* at ¶ 83.
[25]  *Id.* at ¶ 86.
[26]  *Id.* at ¶ 90.

the other teammates."[27]  Plaintiff alleges that other acts of harassment and hazing in this vein were performed throughout his time at Penn State.[28]  Plaintiff claims that this hazing endangered his "mental and physical health" and therefore, he withdrew from Penn State in December 2018 and transferred to the University of California.[29]

Plaintiff alleges that before transferring, however, he reported the harassment and hazing to members of the Penn State football team coaching staff.[30]  He further alleges that members of the coaching staff personally observed harassment and hazing in the locker room.[31]  Despite these and other reports of ongoing misconduct, "no substantive action was taken by defendant James Franklin or other members of the coaching staff to prevent it."[32]

Instead, Plaintiff alleges, the coaching staff retaliated against Plaintiff for reporting the harassment and hazing by "overly and unfairly" scrutinizing his athletic performance.[33]  The coaches allegedly forced Plaintiff to participate in drills designed for him to fail, and then used his failure to justify not giving him playing time.[34]  The coaches also spoke poorly of Plaintiff to other college coaches

---

[27]  *Id*. at ¶ 91.
[28]  *Id*. at ¶¶ 83-96.
[29]  *Id*. at ¶¶ 97-100.
[30]  *Id*. at ¶ 103.
[31]  *Id*. at ¶ 102.
[32]  *Id*. at ¶¶ 105-106.
[33]  *Id*. at ¶ 108.
[34]  *Id*. at ¶ 110.

once Plaintiff made his decision to leave Penn State and transfer to a different college.[35]

The SAC alleges 11 counts against the Defendants.  Plaintiff alleges that: Penn State violated Title IX of the Education Amendments of 1972 (Count 1); all three Defendants were *per se* negligent, in violation of Pennsylvania anti-hazing statutes (Counts 2-4); all three Defendants are liable for negligence under Pennsylvania law (Counts 5-7); Barber is liable for assault and battery under Pennsylvania law (Count 8); all three Defendants are liable for negligent infliction of emotional distress under Pennsylvania law (Count 9); Barber is liable for intentional infliction of emotional distress and civil conspiracy under Pennsylvania law (Counts 10-11).

C.   **Analysis**

1.   **Title IX Claim – Count 1**

a.   **Legal Standard**

Title IX states in part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[36]  The Supreme Court has recognized that Title IX

---

[35]   *Id*. at ¶¶ 112-14.
[36]   20 U.S.C. § 1681 (a).

permits claims of a hostile educational environment based on student-on-student

harassment.[37]  To succeed under this theory, a plaintiff must show that:

> (1) the defendant received federal funds; (2) sexual harassment
> occurred; (3) the harassment took place under circumstances wherein
> the funding recipient exercised substantial control over both the
> harasser and the context in which the harassment occurred; (4) the
> funding recipient had actual knowledge of the harassment; (5) the
> funding recipient was deliberately indifferent to the harassment; and
> (6) the harassment was so severe, pervasive, and objectively offensive
> that it could be said to have deprived the victims of access to the
> educational opportunities or benefits provided by the school.[38]

Penn State does not contest items (1) or (3) but argues that Plaintiff has not alleged

facts sufficient to survive a motion to dismiss as to the other prongs.[39]

### b.    Analysis

Plaintiff must first show that sexual harassment occurred – in other words,

that he was harassed *because* of his sex.  Penn State argues that Plaintiff does not

plead any recognized theory of sexual harassment.  Instead, Penn State claims that

Plaintiff explicitly and exclusively pleads that any harassment that occurred was

wholly unrelated to Plaintiff's sex.  This Court agrees.

Plaintiff alleges that the alleged "campaign to harass and haze other

members of the Penn State football team, such as the plaintiff . . . served as form of

initiation into the Penn State football program."[40]  At no point does Plaintiff ever

---

[37]  *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643; 650 (1999).
[38]  *Dawn L. v. Greater Johnstown School Dist.*, 586 F.Supp.2d 332 (citing *Davis*, 526 U.S. at
      650-52 (1999)).
[39]  Doc. 42 at 32-33.
[40]  Doc. 40 ¶ 83.

allege that he was harassed because of his sex.  Instead, he specifically notes that this initiation was conducted predominantly by teammates "whom the plaintiff viewed as upper classmen or in leadership positions."[41]  While the actions taken by those teammates, if true, are sexual in nature, Plaintiff has not alleged that he was subject to those actions because of sex.

The Court rejects Plaintiff's attempt to argue – for the first time – in opposition to the University Defendants' motion to dismiss, that he "was targeted . . . because his harassers sought to punish him for perceived weakness and his failing to live up to the expectations of stereotypical toughness and masculinity."[42]  This new argument is both improperly raised in briefing and lacking in support from the pleading.  Nowhere in the SAC does Plaintiff allege that he failed to conform to any male stereotypes, or that any of the alleged harassers even *thought* that Plaintiff failed to do so.  Again, Plaintiff instead alleges that the treatment he faced was a form of initiation conducted by some of the more senior leaders of the team.  Contrary to his assertion, Plaintiff is not entitled to an "inference" that he was targeted for any gender-based stereotyping, because his own pleading says otherwise.[43]  While gender-based stereotyping can establish discrimination under Title IX, Plaintiff never pled this theory.

---

[41]  *Id*. at ¶ 80.
[42]  Doc. 50-1 at 14.
[43]  *Id*.

Because Plaintiff does not allege that he was harassed because of sex, his claim under Title IX must fail.  Plaintiff's retaliation claim under Title IX is also dismissed.  The SAC does not plead facts sufficient for this Court to conclude that Penn State retaliated against him *because* he reported sex discrimination; indeed, the SAC is unclear on what exactly Plaintiff told Penn State about the harassment and hazing his was allegedly subject to.  Penn State's motion to dismiss Count 1 is granted.

### 2.    Negligence *Per Se* – Counts 2-4

#### a.    Legal Standard

Counts 2-4 allege that Penn State (Count 2), James Franklin (Count 3), and Damion Barber (Count 4) are each liable under a theory of negligence *per se*, applying two different Pennsylvania antihazing statutes.  In the first instance, the Court agrees with Defendants that Plaintiff has not helped matters by failing to clearly delineate a timeline of events.  The relevant statute in determining whether Defendants owed Plaintiff a duty is the one that was in effect when the alleged hazing took place.  However, because Plaintiff provides a blanket statement that he was harassed and hazed from January 2018 to December 2018, the Court is forced to examine his potential claim under both the former Pennsylvania antihazing law (24 P.S. § 5351-54) and the current Timothy J. Piazza Antihazing Law (the "Piazza Antihazing Law") (18 Pa.C.S.A. § 2801, et seq.).[44]  Accordingly, any alleged

---

[44]   The Timothy J. Piazza Antihazing Law became effective on November 18, 2018.

hazing that took place before November 18, 2018 is evaluated under the old antihazing statute, while any alleged hazing occurring after that date falls under the Piazza Antihazing Law.[45] Defendants suggest that because the SAC is silent regarding the exact dates on which the alleged incidents occurred, that the Court should presume that only the old antihazing statute applies.  Defendants are, in effect, asking the Court to read the complaint in the light most favorable to them. The Court declines to do so, and instead considers both statutes to determine whether Plaintiff has stated a claim upon which relief may be granted.

A plaintiff may satisfy the duty and breach elements of a negligence claim by proving that a defendant violated a statute "designed to prevent a public harm."[46]  In order to succeed on this claim, there are four requirements:

> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;
> (2) The statute or regulation must clearly apply to the conduct of the defendant;
> (3) The defendant must violate the statute or regulation;
> (4) The violation of the statute or regulation must be proximate cause of the plaintiff's injuries.[47]

---

[45]   The Court notes that although the former antihazing law was repealed and replaced by the Piazza Antihazing Law, violations of the former antihazing law are still enforceable under the Piazza Antihazing Law.

[46]   *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. Ct. 2014).

[47]   *Id.*

If Plaintiff can satisfy these four elements, he is entitled to an evidentiary

presumption that Defendants' violations of the pertinent statute(s) constitute

a breach of duty.[48]

### b.    Analysis

### 1.    The Pennsylvania Antihazing Law

Until November 19, 2018, Pennsylvania law defined hazing as:

> Any action or situation which recklessly or intentionally endangers
> the mental or physical health or safety of a person . . . for the purpose
> of initiation or admission into or affiliation with, or as a condition for
> continued membership in, any organization. The term shall include,
> but not be limited to, any brutality of a physical nature . . . any activity
> which would subject the individual to extreme mental stress . . .
> forced conduct which could result in extreme embarrassment, or any
> other forced activity which could adversely affect the mental health or
> dignity of the individual . . . For purposes of this definition, any
> activity as described in this definition upon which the initiation or
> admission into or affiliation with or continued membership in an
> organization is directly or indirectly conditioned shall be presumed to
> be "forced" activity, the willingness of an individual to participate in
> such activity notwithstanding.[49]

Furthermore, the law stated that "[a]ny person who causes or participates in hazing

commits a misdemeanor of the third degree."[50]

Plaintiff's claim under the old antihazing law fails as to Penn State and

Franklin because, simply put, he does not allege that Penn State caused or

participated in any hazing.  Instead, he specifically alleges that four of his

---

[48] *See Daniel Boone Area Sch. Dist. v. Lehman Bros.*, 187 F.Supp.2d 400, 407 (W.D. Pa. 2002).
[49] 24 P.S. § 5352.
[50] 24 P.S. § 5353.

teammates harassed and hazed him.  Plaintiff attempts to save this claim by arguing that the Penn State football team is an "'organization' as defined by both statutes," and that therefore, liability attaches.[51]  Plaintiff's assertion is demonstrably incorrect; the old antihazing statute does not define the term "organization."  Even if it did, Plaintiff offers no explanation or legal support for the notion that Penn State or Franklin are therefore liable under this statute – nor could Plaintiff, because again, he never alleges that Penn State or Franklin caused or participated in any hazing (or that either "authorized" such hazing, an argument Plaintiff raises for the first time in briefing).[52]  Accordingly, his claim under the old antihazing law falters.

On the other hand, Plaintiff's claim as to Barber survives.  Plaintiff has sufficiently alleged that Barber, along with other team members, subjected Plaintiff to acts that fall under the statute's definition of hazing.[53]  Plaintiff additionally pleads sufficient facts for this Court to accept that those acts may have been done "for the purpose of initiation or admission into or affiliation with, or as a condition for continued membership"[54] (whether "directly or indirectly"[55]) on the football team.  Whether discovery will bear this theory out remains to be seen, but Plaintiff has pled enough to survive Barber's motion to dismiss.

---

[51]  Doc. 50-1 at 32.
[52]  Doc. 50-1 at 33.
[53]  *See* Doc. 40 ¶¶ 77-100.
[54]  24 P.S. § 5352.
[55]  *See Piazza v. Young*, 403 F.Supp.3d 421, 439 (M.D. Pa. 2019).

## 2.    The Timothy J. Piazza Antihazing Law

As of November 18, 2018, Pennsylvania law states (in pertinent part) that a

person commits the offense of hazing if that person:

> [I]ntentionally, knowingly, or recklessly, for the purpose of initiating,
> admitting or affiliating a minor or student into or with an organization,
> or for the purpose of continuing or enhancing a minor or student's
> membership or status in an organization, causes, coerces or forces a
> minor or student to do any of the following . . . Endure brutality of a
> physical nature . . . Endure brutality of a mental nature . . . [or]
> [e]ndure brutality of a sexual nature . . .[56]

Similarly, under the new antihazing statute, hazing is a third degree

misdemeanor.[57]  The Piazza Antihazing Law also allows for findings that an

organization or institution has violated the law if it "intentionally, knowingly, or

recklessly promotes or facilitates a violation of section 2802."[58]  Plaintiff again

alleges that Penn State, Franklin, and Barber all violated Piazza Antihazing Law.

Here, Plaintiff's claim against Penn State survives the motion to dismiss.

Plaintiff has pleaded sufficient facts about Penn State's knowledge of the alleged

incidents that, if proven, could support a theory that Penn State "facilitated" the

hazing in violation of 18 Pa. C.S. § 2805's prohibition regarding institutional

hazing.  The Court finds that at this stage, Plaintiff has done enough to withstand

the motion to dismiss as to Penn State.

---

[56]   18 Pa. C.S. § 2802.
[57]   *Id.*
[58]   18 Pa. C.S. § 2804; 2805.

Plaintiff fares worse with his claim as to Franklin.  James Franklin is an individual, and therefore cannot be held liable under the "organizational" or "institutional" hazing provisions of the Piazza Antihazing Law.  He can only be found liable if he violated § 2802, as defined above.  Plaintiff makes no allegations that Franklin "cause[d], coerce[d] or force[d]" Plaintiff to do anything.  While Plaintiff attempts, in briefing, to argue that Franklin "created a situation" that facilitated the alleged hazing, the law only prohibits facilitation by organizations and institutions, not individuals.  Plaintiff cannot assert a negligence *per se* claim against Franklin under the Piazza Antihazing Law.

Plaintiff's claim against Barber, however, survives for the same reasons as his claims under the old antihazing law.  Plaintiff has pleaded facts that, if true, could lead to a finding by a jury that Barber hazed Plaintiff, committing those acts "for the purpose of initiating, admitting, or affiliating . . . with an organization, or for the purpose of continuing or enhancing . . . membership or status in an organization."[59]

### c.      Summary of Findings

Because of the interplay between the various statutes, the Court believes it is helpful to provide a short summary of the holdings as to the various defendants. First, Plaintiff has stated a claim for negligence *per se* against Penn State under the

---

[59]   18 Pa. C.S. § 2802.

Piazza Antihazing Law, but not under the former antihazing statute. Second, Plaintiff fails to state a claim for negligence *per se* against Franklin under either statute. Third, Plaintiff has stated a claim for negligence *per se* against Barber under both statutes.

Therefore, Penn State's motion to dismiss Count 2 is denied, but the Court limits the scope of the claim. Plaintiff can pursue a claim that Penn State violated the Piazza Antihazing Law (which was enacted on November 18, 2018), but not that it violated the previous antihazing statute. Because the Piazza Antihazing Law does not apply retroactively, Plaintiff may only attempt to prove violations of that statute as of the day of enactment.

James Franklin's motion to dismiss Count 3 is granted.

Damion Barber's motion to dismiss Count 4 is denied. Any alleged incidents of hazing that took place before November 18, 2018, will be evaluated under the former antihazing law. Any alleged incidents of hazing that took place on or after November 18, 2018, will be evaluated under the Piazza Antihazing Law.

### 3.    Common Law Negligence – Counts 5-7

#### a.    Legal Standard

Next, Plaintiff asserts three counts of negligence – one against each Defendant. The four elements of a negligence claim under Pennsylvania law are as follows: "a duty to conform to a certain standard for the protection of others

against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff."[60]

The "threshold question" for this Court is whether any of the Defendants owed Plaintiff a duty of care.[61]  That is a question of law that this Court can resolve at this stage.[62]  Plaintiff asserts a variety of theories under which, he argues, this Court can find that Defendants owed him a duty of care.

### b.    Analysis

### 1.    The University Defendants

First, Plaintiff contends that Penn State and Franklin owed him a statutory duty of care.[63]  This argument is effectively a reprise of his negligence *per se* claim, discussed above.  This Court has found that Plaintiff has asserted a viable negligence *per se* claim as to Penn State under the Piazza Antihazing Law. Because that ruling only establishes a duty for any alleged hazing that occurred after November 18, 2018 (the day the Piazza Antihazing Law was enacted), the Court considers whether there are other avenues by which Plaintiff can establish a duty of care for a broader claim.  The Court also notes that it has already determined that Plaintiff cannot sustain a negligence claim against Franklin based

---

[60]    *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348 (Pa. 2018).
[61]    *Perez v. Great Wolf Lodge of the Poconos LLC*, 200 F.Supp.3d 471, 478 (M.D. Pa. 2016).
[62]    *Id.*
[63]    Doc. 50-1 at 39.

on either antihazing law, and similarly considers other theories by the Plaintiff.
Likewise, the Court reiterates its previous ruling that Plaintiff has stated a claim
based on negligence *per se* as to Barber.  Therefore, Plaintiff has established, for
the purposes of this negligence claim, that he is entitled to a presumption of duty.

Plaintiff claims that Title IX imposes a statutory duty on Penn State and
Franklin.  The Court notes here that it has already told Plaintiff that he could not
add a negligence *per se* claim "premised on a defendant's Title IX violations."[64]
Plaintiff's attempt to perform an end-run around this Court's previous ruling is
poorly-received, and it is rejected.  As I told Plaintiff in June of this year, Title IX
is not the answer to his negligence claim.  Title IX is a "general nondiscrimination
mandate" and "does not establish any statutory standard that may substitute for the
general common law standard."[65]  Therefore, "[Plaintiff's] supposed premise – that
a violation of Title IX's standards constitutes a violation of a duty for negligence
purposes – is misplaced."[66]  Accordingly, with the exception of the limited window
for which Plaintiff has successfully stated a theory of negligence *per se* against
Penn State, his argument for a duty premised on statute is rejected.

Second, Plaintiff argues that Penn State and Franklin assumed a duty of care
as to Plaintiff.  He alleges that Penn State's antihazing policy, created pursuant to

---

[64]  Doc. 38 at 3-4.
[65]  *Williams v. Pennsylvania State University*, 2020 WL 5291985 (M.D. Pa. Sept. 4, 2020)
(quoting *Ross v. Univ. of Tulsa*, 2015 WL 4064754, at *3 (N.D. Okla. July 2, 2015)).
[66]  *Id.*

the old antihazing law, as well as the school's Code of Student Conduct and its Administrative Policies, impose an assumed duty of care on Penn State and Franklin.[67]  Plaintiff cites no authority for these propositions, and the Court is not persuaded.  Instead, previous courts have found that simply enacting policies does not create new duties for entities.[68]

Plaintiff's third theory for imposing a duty of care on Penn State and Franklin stems from his athletic scholarship.  Plaintiff asserts that this created a contractual relationship between Plaintiff, Penn State, and Franklin.  Again, Plaintiff offers no support for this argument, and the Court does not agree that this imposes a duty under tort law.

Finally, Plaintiff argues that "a special relationship existed between [Penn State, Franklin,] and the plaintiff in the form of a college athletic coach and student-athlete, which imposed an implied duty of care upon [Penn State and Franklin] to take reasonable measures to protect the plaintiff from suffering student-on-student discrimination, harassment, and hazing," and to "protect the plaintiff's physical and emotional well-being."[69]  The parties appear to agree that generally, there is no special relationship between colleges and their students.[70]

[67] *See* Doc. 50-1 at 39-40.
[68] *See Fitzpatrick v. Universal Tech. Inst., Inc.*, 2009 WL 2476639 (E.D. Pa. Aug. 13, 2009); *see also Millard v. Osborne*, 611 A.2d 715 (Pa. Super. 1992).
[69] Doc. 40 ¶¶ 189-90; 197-98.
[70] *See, e.g., James v. Duquesne University*, 936 F.Supp.2d 618, 646 (W.D. Pa. 2013) (citing *Bradshaw v. Rawlings*, 612 F.2d 135 (3d Cir. 1979).

Plaintiff points to two cases, which both found that a college or university owed its student-athletes a duty of care, requiring the institution to have qualified medical personnel present at intercollegiate athletic events.[71]  Plaintiff would have this Court broaden the duty of care colleges owe to their student-athletes.  The Supreme Court of Pennsylvania's discussion in *Lackawanna College*, however – which was decided just last year – is instructive to this Court's holding that Pennsylvania law does not recognize a special relationship between colleges and student-athletes that would impose a duty of care.

As the Supreme Court of Pennsylvania said, courts "should not enter into the creation of new common law duties lightly because the adjudicatory process does not translate readily into the field of broad-scale policymaking."[72]  Instead, in that case, the Supreme Court of Pennsylvania imposed a duty based on the college's "affirmative conduct," which created a special relationship requiring medical personnel on hand at athletic events in case of injury.  That court considered whether to adopt a broader rule finding that colleges in Pennsylvania owe a blanket duty to have medical personnel available at athletic events but was not willing to expand a college's duty to such an extent.[73]  Plaintiff asks this Court to find that

---

[71] *Feleccia v. Lackawanna College*, 215 A.3d 3 (Pa. 2019); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360 (3d Cir. 1993).

[72] *Lackawanna College*, 215 A.3d at 13 (Pa. 2019) (quotation marks omitted).

[73] *See Lackawanna College*, 215 A.3d at 26 (Pa. 2019) (Wecht, J., concurring and dissenting). Justice Wecht's opinion was detailed and thoughtful. It appears, however, the majority of the Supreme Court of Pennsylvania did not believe that case justified a broad imposition of duty on colleges and universities as to their student-athletes.

colleges owe their student-athletes a general duty to protect them and ensure their well-being, even against the tortious or criminal acts of third parties.  This Court declines to do so.

Furthermore, to the extent Plaintiff asserts a duty based on the allegation that Franklin promised to "use his best effort to protect the safety and welfare of the plaintiff,"[74] Plaintiff has not provided enough detail for the Court to impose a duty. As Defendants note throughout their briefings, Plaintiff provides no real timeline. The sequence of events is crucial to determine whether Plaintiff has stated a claim for negligence, particularly under the theories he asserts.[75]  Furthermore, Plaintiff's failure to specify what alleged incidents of hazing he reported to coaches, or when, hinders his ability to state a claim, particularly with regards questions of breach and causation.

The University Defendants' motion to dismiss is granted.  Plaintiff will be granted leave to amend and replead Counts 5 and 6.  The Court notes that Plaintiff need not, and should not, raise the issue of whether either of the antihazing laws, or Title IX, provides a statutory basis for establishing duty.

### 2.      Barber

Barber's main argument in response to the negligence claim against him is that "Plaintiff's SAC contains zero claims directly against Defendant Barber."[76]

---

[74]   Doc. 40 ¶ 73.
[75]   *See, e.g.*, Restatement (Second) of Torts § 323.
[76]   Doc. 44 at 11.

This assertion finds zero support in the SAC.  Barber's effort to reinterpret the SAC in a light more favorable to him, and quibble over wordsmithing, does not entitle him to dismissal.

Plaintiff alleges that "<u>Barber</u> [and three other students] <u>collectively orchestrated [and] participated in</u> . . . a campaign to harass and haze other members of the Penn State football team, <u>including the plaintiff</u>."[77]  The fact that Barber was "always named as part of a group of four teammates"[78] who hazed and harassed others does not mean that there are no allegations naming Barber as a harasser. Barber's defenses as to the other elements of negligence are equally unconvincing. Plaintiff has adequately pleaded Barber's breach and causation, and sufficiently asserts the damages he suffered as a consequence thereof.  Barber's motion to dismiss Count 7 is denied.

### 4.    Assault and Battery – Count 8

#### a.    Legal Standard

Plaintiff alleges that Barber committed assault and battery under Pennsylvania law.  In Pennsylvania, an "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the

---

[77]   Doc. 40 ¶ 82.
[78]   Doc. 44 at 11.

violence menaced in an assault is actually done, though in ever so small a degree, upon the person."[79]

### b.   Analysis

Barber moves to dismiss the claim against him for assault and battery based on the argument that Plaintiff "does not allege that he was ever the recipient of offensive contact of any degree and the SAC is silent as to any alleged contact by Barber."  As discussed above, a fair reading of the SAC shows that Plaintiff has alleged that Barber (and other students) committed assault and battery against a group of students – and, indeed, that Plaintiff was one of those students.

Plaintiff describes a campaign to harass and haze by alleging a series of instances in which a group of players – which always included Barber[80] – did things to their teammates that, if proven true, could be described as "harmful" or "offensive."[81]  As Plaintiff has also alleged that Barber placed Plaintiff "in fear of imminent bodily harm," he has satisfied the pleading requirements for assault.  For the same reasons discussed above, Barber's argument as to battery also fails.  Plaintiff alleged that he was subject to "unwanted harmful physical conduct" by Barber, both in the body of the SAC and in summarizing the assault and battery claim.[82]  Barber's motion to dismiss Count 8 is denied.

---

[79]  *Betz v. Satteson*, 715 Fed.Appx. 213, 217 (3d Cir. 2017) (quoting *Renk v. City of Pittsburgh*, 537 Pa. 68 (1994)).
[80]  Doc. 40 ¶¶ 82-96.
[81]  Restatement (Second) of Torts § 21 (1965).
[82]  Doc. 40 ¶ 210.

### 5.    Negligent Infliction of Emotional Distress – Count 9

Plaintiff asserts a claim for negligent infliction of emotional distress against all Defendants.  Under Pennsylvania law, there are four theories of liability under which an action for negligent infliction of emotional distress will lie: (1) impact liability where emotional distress is accompanied by physical injury or impact; (2) zone of danger liability where emotional distress is inflicted on a plaintiff who was in close proximity of physical impact and thereby reasonably experienced a fear of physical injury; (3) bystander liability for emotional distress experienced by a plaintiff who personally witnessed an impact upon a close relative; and (4) special relationship liability premised on the breach of a preexisting contractual or fiduciary relationship that foreseeably resulted in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress.[83]

Because the Court has granted the motion to dismiss as to the negligence claims against the University Defendants, with leave to amend, the Court does the same as to the University Defendants here.  "In all cases [alleging negligent infliction of emotional distress], Plaintiff must establish a prima facie case of negligence."[84]  Plaintiff may replead this count in an amended complaint as to Penn State and Franklin.

---

[83]  *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. 2000).

[84]  *Deitrick v. Costa*, 2015 WL 1605700 (M.D. Pa. Apr. 9, 2015); *see also Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. 2000) ("[A]bsent a finding of negligence, the negligent infliction of emotional distress claim cannot survive.").

The Court does consider whether Plaintiff has stated a claim for negligent infliction of emotional distress as to Barber.  Plaintiff has not alleged facts that would allow this Court to consider a theory of zone of danger liability, bystander liability, or special relationship liability.  Instead, this claim appears to be premised on a theory of impact liability.  Plaintiff has sufficiently alleged that there was some impact – as discussed in Counts 7 and 8, *supra* – that led to emotional distress.  Therefore, his claim survives this stage of pleading.

      **6.**     **Intentional Infliction of Emotional Distress – Count 10**

      **a.**     **Legal Standard**

Under Pennsylvania tort law, a plaintiff alleging intentional infliction of emotional distress ("IIED") must show the following: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe.[85]  Plaintiff must show that the conduct at issue was "so outrageous in character and so extreme in degree as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[86]  Finally, Plaintiff must show that he suffered "some type of resulting physical harm due to the defendant's outrageous conduct."[87]

---

[85]  *Hoy v. Angelone*, 456 Pa.Super. 596, 610 (1997).

[86]  *Miller v. Comcast*, 724 Fed.Appx. 181, 182 (3d Cir. 2018) (quoting *Hoy v. Angelone*, 554 Pa. 134, 151 (1998)).

[87]  *Reedy v. Evanson*, 615 F.3d 197, 232 (3d Cir. 2010) (quotation marks omitted).

### b.      Analysis

Plaintiff's claim sufficiently pleads a cause of action for IIED.  He has alleged enough that the conduct could be described as extreme and outrageous.  It is clear from the complaint that the acts Barber engaged in, if true, must have been intentional.  Finally, Plaintiff has alleged that Barber's actions resulted in severe emotional distress, and that he suffered some physical manifestation as a result of the harassment and hazing he endured.[88]  Barber's argument Plaintiff must present competent medical evidence to support his claim is premature.  Plaintiff's "allegations are sufficient in this case to withstand a motion to dismiss. However, to survive a motion for summary judgment, the plaintiff must still present competent medical evidence of causation and severity of his emotional distress."[89] At this stage of the litigation, Plaintiff has done enough to advance his claim for IIED.  Barber's motion to dismiss Count 10 is denied.

### 7.      Civil Conspiracy – Count 11

### a.      Legal Standard

Plaintiff's final claim is against Barber for civil conspiracy.  In order to state a claim for civil conspiracy, Plaintiff must show: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a

---

[88]   Doc. 40 ¶¶ 227-230.
[89]   *Silver v. Mendel*, 894 F.2d 598, 607 n. 19 (3d Cir. 1990); *see also McCracken v. R.J. Reynolds Tobacco*, 2020 WL 4364181 (3d Cir. 2020) (affirming decision that defendants were entitled to *summary judgment* on plaintiff's IIED claim, because the record contained no competent medical evidence).

lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage."

### b.    Analysis

Plaintiff alleges that Barber engaged in a conspiracy with three other Penn State football players (Micah Parsons, Yetur Gross-Matos, and Jess Luketa) with the common purpose to haze him.  Plaintiff further alleges that those individuals did just that, establishing an underlying tort upon which a conspiracy allegation may rest (*see* Count 8).  Finally, Plaintiff claims he suffered harm as a result of the "outrageous, malicious, willful" actions of Barber and his alleged coconspirators. Barber asserts that Plaintiff cannot maintain a conspiracy claim because "only Barber is before the court."  The only case Barber cites for this proposition is inapposite, however, because: (1) that proceeding was resolved at summary judgment, rather than the motion to dismiss stage; (2) that court found that the remaining defendants (an entity and its sole stockholder) could not conspire as a matter of law; (3) all alleged conspirators had been joined in the suit, so the failure of the plaintiff to prove the conspiracy as to one defendant lent itself to the same result as to the other defendants.  There does not appear to be a requirement that all conspirators be sued in the first instance to state a claim for civil conspiracy, and in the absence of such authority, the Court declines to impose this requirement. Barber's motion to dismiss Count 11 is denied, without prejudice to his ability to raise the issue again at the summary judgment stage.

## III.   CONCLUSION

Defendants' Motions to Dismiss pursuant to Rule 12(b)(6) is granted in part and denied in part.  Dismissal is granted as to the following Counts: 1, 3, 5, 6, and 9 (as to the University Defendants).  Dismissal is denied as to the following Counts: 2 (subject to the Court's narrowing of the claim as discussed above), 4, 7, 8, 9 (as to Barber), 10, and 11.

Plaintiff is granted leave to amend Counts 1, 5, 6, and 9 (as to the University Defendants).  "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[90]  "Circuit case law, however, holds that leave to amend must be given in this situation as well."[91]  It is well settled in this circuit that leave to amend should be "freely granted."

Leave to amend is denied as to Count 3.  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[92]  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.[93] Although there is a "liberal pleading philosophy of the federal rules" a court will dismiss counts from

---

[90]   *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997) ("*Burlington*");
[91]   *Id.*
[92]   *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir.1993).
[93]   *Burlington*, at 1434. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id.*; 3 Moore's Federal Practice, supra § 15.15[3], at 15–47 to –48 (3d ed.2000).

the amended complaint with prejudice because another opportunity for amendment would be futile.[94]  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.[95]  "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."[96]  The Court finds that Count 3 could not be cured by amendment because Franklin owes no duty under either antihazing statute.

As such, Plaintiff will be given fourteen days from today's date to file an amended complaint.  If no amended complaint is filed, the action will be summarily dismissed pursuant as to the aforementioned Counts, pursuant to Federal Rule of Civil Procedure 41(b).

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[94]  *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).
[95]  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).
[96]  *Id.*