IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISAIAH HUMPHRIES, | : | |
| | : | |
| Plaintiff | : | No.   4:20-cv-00064-MWB |
| v | : | |
| | : | (The Honorable Matthew W. |
| THE PENNSYLVANIA STATE | : |  Brann) |
| UNIVERSITY; JAMES FRANKLIN; | : | |
| and DAMION BARBER | : | |
| | : | |
| Defendants | : | |

**PLAINTIFF'S BRIEF IN SUPPORT OF OPPOSITION TO DEFENDANTS
THE PENNSYLVANIA STATE UNIVERSITY AND JAMES FRANKLIN'S
MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT
PURSUANT TO RULE 12(b)(6), FEDERAL RULES OF
<u>CIVIL PROCEDURE</u>**

By:   */s/ Steven F. Marino*
      Steven F. Marino, Esquire
      PA Attorney I.D. No.  53034
      Joseph Auddino, Esquire
      PA Attorney I.D. No.  316752
      MARINO ASSOCIATES
      301 Wharton Street
      Philadelphia, PA 19147
      Telephone:  (215) 462-3200
      Telecopier:  (215) 462-4763
      smarino@marinoassociates.net
      jauddino@marinoassociates.net

Dated: December 4, 2020      *Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

*Table of Contents* ........................................................................ i

*Table of Citations* .................................................................. ii-v

I.     STATEMENT OF PROCEDURAL HISTORY ................................. 1

II.    STATEMENT OF RELEVANT FACTS ........................................... 2

III.   ARGUMENT PRESENTED ...................................................... 12-42

      A.     The Plaintiff's Pleading Gives Rise to A Plausible Title IX Violation Claim Against the University ................ 2-15

      B.     The Plaintiff's Pleading Gives Rise to A Plausible Negligence Per Se Theory of Liability Against the University ............. 16-20

      C.     The Plaintiff's Pleading Gives Rise to A Plausible Negligence Theory of Liability Against the Penn State Defendants ..... 21-37

      D.     The Plaintiff's Pleading Gives Rise to A Plausible Negligent Infliction of Emotional Distress Theory of Liability Against the Penn State Defendants ........................................................ 37-42

IV.    CONCLUSION .................................................................. 42

*Certification of Compliance*

*Certificate of Service*

*Proposed Order*

# TABLE OF CITATIONS

**Cases**                                                    **Page**

*Althaus v. Cohen*,
    562 Pa. 547, 756 A.2d 1166 (2000) ................................... 26

*Bernard v. E. Stroudsburg Univ.*,
    No. 3:09-CV-00525, 2014 U.S. Dist. LEXIS 115042
    (M.D. Pa. Aug. 18, 2014) ................................................. 11

*Bibby v. Coca-Cola Bottling Co.*,
    260 F.3d 257, 264 (3d Cir. 2001)................................... 2, 3

*Bonson v. Hanover Foods Corp.*,
    451 F. Supp. 3d 345 (M.D. Pa. 2020) ............................... 14

*Bostic v. Smyrna Sch., Dist.*,
    418 F.3d 355 (3d Cir. 2005) ............................................. 9

*Castleberry v. STI Grp.*,
    863 F.3d 259 (3d Cir. 2017) ........................................... 14

*Cragle v. Werner Enters., Inc.*,
    No. 3:07cv2132, 2010 U.S. Dist. LEXIS 23101, at *17 (M.D. Pa.
    Mar. 11, 2010) ...................................................................... 2

*Davis v. Monroe County Board of Education*,
    526 U.S. 629, 119 S. Ct. 1661, 143 L.Ed.2d 839 (1999) ............ 11, 14

*Doe v. Brimfield Grade School*,
    552 F. Supp. 2d 816, 824 (C.D. Ill. 2008) .................................. 4, 6, 7

*Doe by Doe v. City of Belleville*,
    119 F.3d 563 (7th Cir. 1997)............................................. 7

*Doe v. Southeastern Greene School District*,
    Civil Action No. 03-717, 2006 U.S. Dist. LEXIS 12790,
    (W.D. Pa. Mar. 24, 2006)........................................... 2, 3, 4

*Dittman v. UPMC,*
    196 A.3d 1036 (Pa. 2018)................................................................ 26

*Feeny v. Disston Manor Personal Care Home, Inc.,*
    2004 PA Super 114, 849 A.2d 590, 594-595 (Pa. Super. 2004)........ 28

*Feleccia v Lackawanna College,*
    215 A.3d 3 (Pa 2019)...................................................... 22, 26, 29, 39

*Fitzpatrick v. Universal Tech. Inst., Inc.,*
    Civil Action No. 08-1137, 2009 U.S. Dist. LEXIS 71426
    (E.D. Pa. Aug. 13, 2009) ................................................................ 24

*Forrester Lincoln Mercury, Inc. v. Ford Motor Co.,*
    No. 1:11-CV-1136, 2012 U.S. Dist. LEXIS 65737, at *17 (M.D. Pa.
    May 10, 2012 ................................................................................. 20

*Franklin v. Gwinnett Cty. Pub. Sch.,.*
    503 U.S. 60, 112 S. Ct. 1028, 117 L.Ed.2d 208 (1992) ...................... 4

*Gradel v. Inouye.,*
    491 Pa. 534, 421 A.2d 674 (1980) .................................................... 22

*Hamil v. Bashline,*
    481 Pa. 256, 392 A.2d 1280 (1978) ............................................ 34, 35

*Harris v. Forklift Sys.,*
    510 U.S. 17, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993) ...................... 14

*Jackson v. Birmingham Board of Education,*
    544 U.S. 167, 178, 125 S. Ct. 1497, 1507, 161 L.Ed.2d 361, 374
    (2005)............................................................................................... 12

*James v. Duquesne University,*
    936 F. Supp. 2d 618 (W.D. Pa. 2013) .......................................... 30, 31

*Kleinknecht v. Gettysburg College,*
    989 F.2d 1360 (3d Cir. 1993).......................................... 25, 26, 38, 39

*M.S. v. Susquehanna Twp. Sch. Dist.,*
    No. 1:13-cv-02718, 2017 U.S. Dist. LEXIS 47916
    (M.D. Pa. Mar. 29, 2017) ............................................................ 10, 11

*Montagazzi v. Crisci,,*
    2010 PA Super 78, 994 A.2d 626 ....................................................... 30

*Olmstead v. L. C. by Zimring,*
    527 U.S. 581, 119 S. Ct. 2176, 144 L.Ed.2d 540 (1999) ..................... 4

*Oncale v. Sundowner Offshore Servs., Inc.,*
    523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) .......... 2, 3, 5, 9

*Powell v. Drumheller,*
    539 Pa. 484, 653 A.2d 619 (1995) ..................................................... 35

*Price Waterhouse v. Hopkins,*
    490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989) .............. 3, 4

*R.W. v. Manzek,*
    585 Pa. 335, 888 A.2d 740 (2005) ..................................................... 24

*Shepherd v. Slater Steels Corp.,*
    168 F.3d 998 (7th Cir. 1999) ............................................................... 3

*Spence v. ESAB Grp., Inc.,*
    623 F.3d 212 (3d Cir. 2010) .............................................................. 22

*Straw v. Fair,*
    2018 Pa. Super. 125, 187 A. 3d 966, 9995 (Pa.Super. 2018*)*............. 36

*T.A. v. Allen (Appeal of Allen),*
    447 Pa. Super. 302, 669 A.2d 360 (1995) ......................................... 30

*Toney v. Chester County Hospital,*
    614 Pa. 98, 36 A.3d 83 (Pa. 2011) ............................................... 39, 40

*Universal Underwriters Ins. Co. v. J. Murray Co.,*
    No. 4:11-CV-1851, 2013 U.S. Dist. LEXIS 184474, at *16
    (M.D. Pa. Oct. 28, 2013) ................................................................... 20

*Walters v. UPMC Presbyterian Shadyside,*
    646 Pa. 746, 187 A.3d 214 (2018) ...................................................... 24

*Weston v. Pennsylvania Dep't. of Corrections,*
    Civil Action No. 98-3899, 2001 U.S. Dist. LEXIS 19185
    (E.D. Pa. Nov. 20, 2001) ...................................................................... 3

## Statutes

Title IX of the Education Amendments of 1972*,*
    20 USCA §1681, et seq. .................... 2, 4, 9, 11, 12, 14, 20, 21, 23, 32

*The Timothy J. Piazza the Antihazing Law,*
    18 Pa.C.SA. § 2802 ....................................................................... 17, 19

*The Timothy J. Piazza the Antihazing Law,*
    18 Pa.C.SA. § 2804 .......................................................................... 20

*The Timothy J. Piazza the Antihazing Law,*
    18 Pa.C.SA. § 2805 .......................................................................... 20

## Federal Rules of Civil Procedure

Fed. R.Civ. P. 8(d) ................................................................................ 20
Fed. R.Civ. P. 12(b)(6) ....................................................................... 1, 45

## Restatements

Restatement (Second) of Torts, § 314A ............................... 29, 30, 31 32, 34
Restatement (Second) of Torts, § 317 ....................................................... *24*
Restatement (Second) of Torts, § 323 ........................................... 22, 25, 35

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISAIAH HUMPHRIES, | : | |
| | : | |
| Plaintiff | : | No.   4:20-cv-00064-MWB |
| v | : | |
| | : | (The Honorable Matthew W. |
| THE PENNSYLVANIA STATE | : |  Brann) |
| UNIVERSITY; JAMES FRANKLIN; | : | |
| and DAMION BARBER | : | |
| | : | |
| Defendants | : | |
| | : | |

**PLAINTIFF'S BRIEF IN SUPPORT OF OPPOSITION TO
DEFENDANTS THE PENNSYLVANIA STATE UNIVERSITY AND
JAMES FRANKLIN'S MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6), FEDERAL
RULES OF CIVIL PROCEDURE**

## I.    STATEMENT OF PROCEDURAL HISTORY

On January 13, 2020, the plaintiff initiated an action against defendants by the

filing of a Complaint.  Upon leave of Court, on October 16, 2020, the plaintiff filed a

Third Amended Complaint [hereinafter "TAC"].  On November 13, 2020, the plaintiff

was electronically served a copy of the defendants The Pennsylvania State University

and James Franklin's Motion to Dismiss Plaintiff's pleading pursuant to Rule

12(b)(6), Federal Rules of Civil Procedure.  Plaintiff's instant response follows.

## II.   STATEMENT OF RELEVANT FACTS

The instant action is brought to recover damages and losses suffered by the plaintiff Isaiah Humphries as a result of having been sexually harassed, hazed, and assaulted by teammates on the Penn State football team while members of the Penn State football program coaching staff stood idle taking no effective action to protect him from the prohibited conduct and then retaliated against him upon receiving his complaints of the misconduct.

## III.   ARGUMENT PRESENTED

### A.   THE PLAINTIFF'S PLEADING GIVES RISE TO A PLAUSIBLE TITLE IX VIOLATION CLAIM AGAINST THE UNIVERSITY

#### 1.   Student-on-Student Same-Sex Harassment – Gender Based Stereotyping

It is well established that Title IX protects against same-sex discrimination.[1] It is equally well established that the Third Circuit has recognized claims of same-sex gender based harassment predicated upon behavior that the harasser acted to punish the victim because the victim did not conform to a gender

---

1 Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998);  Doe v Southeastern Greene School District, 2006 U.S. Dist. LEXIS 12790 (USDCWDPA 2006); Bibby v. Coca-Cola Bottling Co., 260 F.3d 257, 264 (3d Cir. 2001); Cragle v. Werner Enters., Inc., No. 3:07cv2132, 2010 U.S. Dist. LEXIS 23101, at *17 (M.D. Pa. Mar. 11, 2010)

stereotype.[2]  There exists no singular means of establishing the discriminatory aspect of sexual harassment.[3]   The Oncale court instructed that same-sex harassment is actionable if it is established that:  (1) the harasser was motivated by sexual desire; (2) the harasser was motivated by hostility toward the presence of a specific gender; or (3) the conduct demonstrates differential treatment of males and females.[4]   The Third Circuit Court in Bibby instructed that same-sex harassment is actionable if it is established that:  (1) the harasser was motivated by sexual desire; (2)  the harasser was expressing a general hostility to the presence of one sex in the workplace, or (3) the harasser was acting to punish the victim's non-compliance with gender stereotypes.[5] Evaluating the existence of same-sex harassment courts have held that so long as the plaintiff demonstrates in some manner that he would not have been treated in the same way had he been a woman, he has proven sex discrimination.[6]  Harassment predicated upon stereotypical notions about how men and women should appear and behave

---

2 Bibby v. Coca-Cola Bottling Co., 260 F.3d 257, 264 (3d Cir. 2001); Weston v. Pa. Dep't. of Corr., CIVIL ACTION NO. 98-3899, 2001 U.S. Dist. LEXIS 19185, at *18 n.7 (E.D. Pa. Nov. 20, 2001);  Price Waterhouse v. Hopkins, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989)
3 Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) [the Oncale Court
4 Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80-81, 118 S. Ct. 998, 1002, 140 L.Ed.2d 201, 207-08 (1998)
5 Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 264 (3d Cir. 2001); Doe v. Se. Greene Sch. Dist., Civil Action No. 03-717, 2006 U.S. Dist. LEXIS 12790, at *18 (W.D. Pa. Mar. 24, 2006)
6 Shepherd v. Slater Steels Corp., 168 F.3d 998, 1009 (7th Cir. 1999); Doe v. Brimfield Grade Sch., 552 F. Supp. 2d 816, 823 (C.D. Ill. 2008)

reasonably suggests that it can be attributed to sex and establishes the link which Title IX requires.[7]

### 2. The Plaintiff Was Discriminated Against Because of His Gender

#### (i) The Plaintiff Was Targeted for Perceived Weakness and Lack of Stereotypical Toughness

Paragraphs 117 – 138 of the TAC define the distinction of the physical characteristics and persona portrayed by the plaintiff and his aggressors. The TAC permits the reasonable inference the plaintiff presented as elegant, dignified, and perceived of high social class. Paragraphs 140 – 160 of the TAC describe the manner in which the plaintiff was victimized, when read in conjunction permit the reasonable inference the plaintiff's aggressors embraced a crude, vulgar, angry, gangster, thug-like persona and massively oversized the plaintiff. The paragraphs describe misconduct, inclusive of:

- "*I going to make you my bitch*";

- "*I am going to fuck you*";

- "*I am going to Sandusky you*";

---

7 Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989); [Courts, including the United States Supreme Court, have looked at Title VII interpretations of discrimination when considering Title IX See Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999); Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 75, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992); Doe v. Se. Greene Sch. Dist., Civil Action No. 03-717, 2006 U.S. Dist. LEXIS 12790, at *12 (W.D. Pa. Mar. 24, 2006)

- *"This is Jerry";*

- While restraining the plaintiff:

    o    simulating a humping action;

    o    placing genitals near or on his face;

    o    stroking their genitalia simulating the action of ejaculation;

    o    placing their penis on and between the buttocks of the plaintiff;

    o    grabbing the plaintiff's genitalia;

    o    taking the clothes of plaintiff;

    o    intimidating and threaten the plaintiff with bodily harm

Exercising common sense and the appropriate sensitivity to social context, as the United State Supreme Court in <u>Oncale</u> instructs,[8] this Court may distinguish between teasing or roughhousing among members of the same-sex and conduct designed to punish for perceived weakness for failing to conform to gender-based stereotype which a reasonable person would find abusive.  Other courts, considering similar factual settings, demonstrating substantially less offensive abuse, have determined claims actionable upon a gender-stereotyping theory.

In <u>Doe v Southeastern Green School District</u>,[9] the court determined a gender-

---

8 Oncale, 523 U.S. at 82
9 Doe v Southeastern Green School District, Civil Action No. 03-717, 2006 U.S. Dist. LEXIS 12790, at *21-22 (W.D. Pa March 24, 2006)

stereotyping claim actionable upon facts that the plaintiff was mistreated by same sex

classmates with behavior which included:

- Calling the plaintiff a faggot;

- Teasing the plaintiff by something called the "gay dance";

- Asking the plaintiff for "blow jobs";

- Pretending to masturbate in front of the plaintiff;

- Masturbating in front of the plaintiff;

- Exposing themselves to the plaintiff;

- Sexually touching the plaintiff;

- Jabbing the plaintiff in the buttocks with a pencil;

- An offender putting a hand down his own pants and rubbing his hand in the plaintiff's face;

- Confronting the plaintiff for "wanting ass instead of pussy";

- Upon report one teacher stating that if the plaintiff would be more manly and stand up to his aggressors then maybe they would not pick on him.

In <u>Doe v Brimfield Grade School</u>,[10] the court determined a gender-stereotyping

claim actionable upon of an ongoing practice of male student-athletes grabbing,

twisting, and hitting each other in the testicles in the locker-room, known as "sac

stabbing, of which the plaintiff was targeted.

---

10 Doe v. Brimfield Grade Sch., 552 F. Supp. 2d 816, 823 (C.D. Ill. 2008)

In <u>Doe v City of Belleville</u> [11] the court determined a gender-stereotyping claim actionable upon facts that the plaintiff was mistreated by a same sex coworker, a former marine and imposing figure, with behavior which included:

- Referring to the plaintiff as the fag or queer because he wore an earring;

- Urging the plaintiff to go back to San Francisco with the rest of the queers;

- Repeatedly asking the plaintiff if he was a girl or a boy;

- Calling the plaintiff his bitch;

- Threatening to take the plaintiff out to the woods and get him up the ass;

- Grabbing the plaintiff by the testicles and, having done so, announced to the assemblage of coworkers present, "Well, I guess he's a guy".

It is plausible the abuse suffered by the plaintiff falls within the third example provided by the Third Circuit Court of Appeals in <u>Bibby</u>, that is, the plaintiff was targeted and punished by abusers because of the perception that he was weak and he did not conform to a dominant male gender stereotype.

---

11 Doe by Doe v. City of Belleville, 119 F.3d 563, 566 (7th Cir. 1997) [vacated and remanded on other grounds]

### (ii) Stereotypical Perception the Plaintiff Was Not Masculine Enough to Either Accept the Abuse Without Complaint or Stop the Abuse Himself

Paragraph 172 of the TAC pleads that upon notice of the abuse Coach Timothy Banks stated to plaintiff *"just to be ready in the classroom and in the field tomorrow and with no more drama"*. Paragraph 180 of the TAC pleads that upon notice of the abuse Coach Dwight Gault stated to plaintiff *"that boys will be boys"* and *"man up"*. Paragraphs 85, 86, 87 and 197-203 (misnumbered 185 – 191) of the TAC permits the reasonable inference defendant Franklin's expectation that the plaintiff display machismo and qualities of traditional masculinity, respond to physical aggression by fist-fighting. Paragraph 204 (misnumbered 192) of the TAC permits the reasonable inference defendant Franklin retaliated against the plaintiff for defending himself by brandishing a knife and not fist-fighting Micah Parsons man-to-man. The allegations of the TAC detail the University expected the plaintiff to toughen up, stop acting like a "girl", stand up and fist-fight to defend himself, and not run to authority. The TAC details the harassment was allowed to continue upon the stereotypical perception that the plaintiff was not masculine enough presumably to either accept the abuse without complaint or stop the abuse by himself. The University does not even attempt to address, let alone explain adequately, how the abuse suffered by the plaintiff does not fall within the third example provided by the

Oncale Court, that is the conduct of the University demonstrated differential treatment of males and females.  It is reasonably certain to infer that the University would not expect female members of its student-body who are being victimized by sexual harassment to man up, protect themselves against the massively strong harassing predators, not report the sexual harassment to authorities, or worse, accept the abuse without complaint.  It is plausible the abuse suffered by the plaintiff falls within the third example provided by the United States Supreme Court in Oncale, defining actionable harassment as differential treatment between males and females.

### 3.   The Plaintiff Placed the University on Actual Notice

The University contends the pleading fails upon a basis that it does not assert facts about the exact context of the information relayed by the plaintiff to Coach Franklin and other coaches when improper behavior was reported.  An educational institution has "actual notice," sometimes called "actual knowledge" of discrimination within the meaning of Title IX if an appropriate person at the institution has knowledge of facts sufficiently indicating substantial danger to a student so that the institution can reasonably be said to be aware of the danger.[12]  An appropriate person has been defined as an official who, at a minimum, had authority to address the

---

12 Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 360 (3d Cir. 2005)

alleged harassment and to institute corrective measures on the school's behalf, had actual knowledge of the alleged sexual harassment, but failed to adequately respond.[13]

Paragraphs 171-181 (paragraph 181 misnumbered as 176) of the TAC defines the dates and times which the plaintiff and his father reported that the plaintiff was being victimized, their attempt to impress upon the University the seriousness of the abuse, and the witnessing and acknowledging of the abuse by staff members of the Penn State Football program. The TAC details that the plaintiff and his father reported the improper abusive behavior on the following days:

- April 8, 2018
- April 10, 2018
- May 23, 2018
- June 14, 2018
- June 16, 2018
- June 18, 2018

The TAC details that on June 14, 2018, coaching staff witnessed the plaintiff being subjected to harassment by teammates. The TAC details that August 2018, coach Terry Smith acknowledged to the plaintiff's father that he was aware the plaintiff was being targeted and harassed by teammates and was concerned the plaintiff was having suicidal ideation. The TAC permits the reasonable inference that members of the coaching staff each were appropriate persons within the meaning of

---

13 M.S. v. Susquehanna Twp. Sch. Dist., No. 1:13-cv-02718, 2017 U.S. Dist. LEXIS 47916, at *20-21 (M.D. Pa. Mar. 29, 2017)

Title IX.  The TAC permits the determination the University had knowledge of facts sufficient to reasonably state if was aware of the existence of the danger.

### 4.   The University Defendant Was Deliberately Indifferent to The Discrimination

To be "deliberately indifferent" within the meaning of Title IX, the funding recipients' response to the harassment, or lack of response, must have been clearly unreasonable in light of the known circumstances.[14]  This standard requires that the official disregard a known or obvious consequence of his action or inaction.  Appropriate remedial action necessarily depends on the particular facts of the case — the severity and persistence of the harassment, and the effectiveness of any initial remedial steps.[15]

Paragraphs 171-180; 184-189 (misnumbered 182-187); 197, 203, and 204 (misnumbered 185, 191 and 192) of the TAC plead, despite the University having been sufficiently placed on notice of severe and persistence abuse, and the likelihood that the harassment would continue, not only did the University fail to take effective corrective action to protect the plaintiff, the University retaliated against the plaintiff

14 M.S. v. Susquehanna Twp. Sch. Dist., No. 1:13-cv-02718, 2017 U.S. Dist. LEXIS 47916, at *21 (M.D. Pa. Mar. 29, 2017); Bernard v. E. Stroudsburg Univ., No. 3:09-CV-00525, 2014 U.S. Dist. LEXIS 115042, at *9 (M.D. Pa. Aug. 18, 2014) [citing Davis Next Friend LaShona D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648-649, 119 S.Ct. 1661, 143 L. Ed. 2d 839 (1999)]
15 Bernard v. E. Stroudsburg Univ., No. 3:09-CV-00525, 2014 U.S. Dist. LEXIS 115042, at *9 (M.D. Pa. Aug. 18, 2014)

for complaining about and reporting the abusive improper conduct.[16]  Paragraph 205 (misnumbered 193) of the TAC pleads the University placed Micah Parsons on conduct probation for harassing the plaintiff.  The TAC permits the reasonable inference that the placing of Micah Parsons on probation proved useless, and completely ineffective to protect the plaintiff against the ongoing abusive behavior of Micah Parsons and other teammates.  The TAC permits the reasonable inference the University took no corrective action against other abusive teammates.[17]  Demonstrating deliberate indifference to the plaintiff's reporting of the abusive behavior, the TAC pleads facts representing a response from the University which includes:

- "*Just to be ready in the classroom and in the field tomorrow and with no more drama*";

- "*Boys will be boys*";

- "*Man up*";

- "*You should have just gotten your ass beat and not pulled a knife*";

16 Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 178, 125 S. Ct. 1497, 1507, 161 L.Ed.2d 361, 374 (2005) [A private right of action under Title IX encompasses suits grounded on the retaliatory behavior of a University, reasoning that retaliation falls within the statute's prohibition of intentional discrimination on the basis of sex] 17 Paragraphs 216-218 (misnumbered 204 – 206) of the Complaint assert that defendant Damion Barber was prosecuted as a result of having subjected the plaintiff and others to gender-based harassment and hazing prohibited misconduct and determined to have violated the University's Student Code of Conduct but the action took place long after the plaintiff surrendered his scholarship and separated himself from Penn State and was not a corrective measure taken to protect the plaintiff.

- Retaliated against the plaintiff by:

  o Requiring the plaintiff to participate in practice drills designed to ensure the plaintiff's failure;

  o Requiring the plaintiff to participate additional work-outs dubbed "dawn patrol";

  o Penn State football team's academic advisor subjected the plaintiff to irrational and inappropriate censure;

  o Denied the plaintiff necessary medical accommodations to manage diagnosed conditions of anxiety and narcolepsy;

  o Threatened to remove the plaintiff from the football program with a medical retirement excuse;

  o Acquiesced to teammates instilling anxiety, fear, and panic in the plaintiff;

  o Provided negative reviews of the plaintiff to prospective colleges

The TAC permits the reasonable inference the University's response to the harassment is clearly unreasonable in light of the known circumstances.

### 5.   The Discrimination Was Severe and Pervasive

The Third Circuit Court of Appeals applies a Title VII analysis to a determination of whether the harassment was severe and pervasive for Title IX purposes.[18]  Courts look to the totality of the circumstances in deciding

---

18 Young v. Smith, No. 3:07-cv-00854, 2016 U.S. Dist. LEXIS 83361, at *13-14 (M.D. Pa. June 28, 2016)

whether alleged discriminatory conduct is severe or pervasive.[19]  In doing so, courts consider the discriminatory conduct's: (i) frequency; (ii) severity; (iii) whether it is physically threatening or humiliating, or a mere offensive utterance; and (iv) whether it unreasonably denies its victims the equal access to education that Title IX is designed to protect.[20]  Damages are not available for simple acts of teasing and name-calling among school children, even where these comments target differences in gender.  Rather, in the context of student-on-student harassment damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.[21]

Paragraphs 140 – 160 of the TAC describe the manner and frequency in which the plaintiff was victimized.  The paragraphs provide that the harassment occurred on average of two (2) – three (3) times per week spanning the prolonger period of time from the beginning February 18, 2018 and continuing until November 28, 2018.  The paragraphs provide that the harassment was vulgar, abusive, physically threatening, humiliating, and instilled anxiety, fear, and panic in the plaintiff.  Paragraph 181

---

19 Bonson v. Hanover Foods Corp., 451 F. Supp. 3d 345, 355 (M.D. Pa. 2020); Castleberry v. STI Group, 863 F.3d 259, 264 (3d Cir. 2017);  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295, (1993)
20 Bonson v. Hanover Foods Corp., 451 F. Supp. 3d 345, 355 (M.D. Pa. 2020); Castleberry v. STI Group, 863 F.3d 259, 264 (3d Cir. 2017);  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295, (1993)
21 Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 652, 119 S. Ct. 1661, 1675, 143 L.Ed.2d 839, 859 (1999)

(misnumbered 176) of the TAC details that in August 2018, Coach Smith had concern that the plaintiff had suicidal ideation as a result of being abuse by teammates. Paragraphs (182, 236, 237, and 238 (misnumbered 177, 224, 225 and 226) of the TAC state that as result of the University's deliberate indifference to the abuse the plaintiff surrendered his athletic scholarship and transferred to the University of California. Paragraph 239 (misnumbered 227) of the TAC details that as result of University's indifference the plaintiff suffered: physical pain; hair loss; discomfort; trauma; humiliation; embarrassment; emotional distress; sleeplessness; anxiety; inability to perform simple activities of daily living, and depression. Paragraph 240 (misnumbered 228) of the TAC asserts that as a result of University's indifference the plaintiff underwent medical treatment.  Paragraph 243 (misnumbered 231) of the TAC asserts that as a result of University's indifference the plaintiff suffered a loss of life's pleasures.  Paragraphs 339 – 342 (misnumbered 327 - 330) of the TAC assert that as a result of the University's indifference the plaintiff suffered fear, anxiety, panic emotional trauma, emotional distress, grief, and fright, illness and bodily harm.  The TAC permits the reasonable inference the harassment was so severe, pervasive, and objectively offensive that it can be said to have deprive the plaintiff of access to the educational opportunities or benefits provided by the University.

**B.      THE PLAINTIFF'S PLEADING GIVES RISE TO A PLAUSIBLE NEGLIGENCE *PER SE* THEORY OF LIABILITY AGAINST THE UNIVERSITY**

> **1.      On October 2, 2020, This Court Ruled That the Timothy J. Piazza Antihazing Law Imposed A Statutory Duty Upon University**

The University contends that the Timothy J. Piazza Antihazing Law does not impose a statutory duty upon the University.  On October 2, 2020, this Court entered a twenty-nine (29) page Memorandum Opinion.[22]  On page fifteen (15) of its October 2, 2020, Memorandum Opinion this Court instructed *"Plaintiff has sated a claim for negligence per se against Penn State under the Piazza Antihazing Law"*.[23] The October 2, 2020, ruling of this Court belies any contention of the University that the Timothy J. Piazza Antihazing Law does not impose a statutory duty upon it.

> **2.      Plaintiff's Negligence *Per Se* Theory of Liability Is not Limited in Its Scope to Include Only The *"Initiating"* Portion of The Definition of Hazing as Defined by The Piazza Antihazing Law**

The University contends that the TAC fails to  plead sufficient facts to establish that University owed a duty and breached such a duty arising from *"initiating"* hazing misconduct behavior, arguing, essentially, that the scope of the plaintiff's negligence *per se* theory of liability is limited in its breath and excludes

---

22 Doc. 56
23 Doc 56 p. 15-16

hazing misconduct defined by the Piazza Antihazing Law which includes improper behavior continuing after the student's initiation, admission and affiliation into or with the organization.   The term "hazing" *is* defined by Section 2802 of the Piazza Antihazing Law, 18 Pa.C.S.A. §2802.

The prohibited misconduct of "hazing" as defined by the Piazza Antihazing Law is not limited, as the University suggests, to *initiation*, nor does the TAC plead a claim of negligence per se limiting it to such.  The Piazza Antihazing Law defines the term "hazing" broadly to contemplate behavior encompassing not only initiating, admitting or affiliating a student into or with an organization, but also behavior which continues after the student's initiation, admission and affiliation into or with the organization.  The TAC places the University squarely on notice of the plaintiff's claim that the University violated the duty of care imposed upon it  pursuant to the Piazza Antihazing Law to restrain itself from: (1) creating a situation and environment which tolerated the prohibited misconduct of hazing; (2) operating under a custom and practice which acquiesced to the prohibited misconduct of hazing; (3) promoting the prohibited misconduct of hazing; and (4) retaliating against the plaintiff upon learning that the plaintiff reported that he was being subjected to the prohibited misconduct of hazing.  No facts plead in the TAC would suggest in anyway that Count II of the pleading is to be afforded the limited breath of scope as suggested by University.

**3.     Plaintiff Pleads Facts Sufficient to Demonstrate Prohibited Conduct Occurred During the Relevant Period Between November 18, 2018, and November 28, 2019**

Paragraph 141 of the TAC asserts the plaintiff participated in the Penn State football team's training regiment as directed by the coaching staff. Paragraph 142 of the TAC asserts the plaintiff's participation in the training regiment placed him in direct contact with abusive teammates. Paragraphs 143 – 161 of the TAC describe that the misconduct took place in the Lasch Building and other locations on the college campus, occurring on average of two (2) – three (3) times per week beginning February 18, 2018 and continuing until November 28, 2018. Paragraphs 162- 165 of the TAC describing specific instances of abuse occurring February 18, 2018; March 26, 2018; March 29, 2018; and June 14, 2018 are not exclusive of the balance of the pleading as the argument of the University seems to suggest. The specific dates of the instances of abuse plead in those paragraphs simply describe occurrences which the plaintiff has evidence which confirms his recollection of the dates, times, and locations of those episodes. Drawing upon common sense and human experience, the TAC affords the inference that recruited scholarship Penn State Division I athletes, such as the plaintiff and abusive teammates, are required to participate in a daily training regiment which demands appearance in the training facility, physical therapy room, weight room, training table, football field, locker room, and showers, all which result in the plaintiff remaining in the presence of the abusive teammates for extend

periods of time.  The pleading affords the reasonable inference that between the dates of November 18, 2018, and November 28, 2018, the plaintiff remained on campus and fully participated in all football practices and related events, appeared in training facility, physical therapy room, weight room, training table, football field, football locker room, and showers, was in direct contact with his aggressors, and the University had taken no effective corrective action to prevent or to protect him against the abusive harassment.

### 4.    Plaintiff Need Not Plead Facts Describing Whether or How the Hazing Was A Requirement to Be on The Team

To prevail on negligence per se claim asserted against an organization or University predicated upon the Piazza Antihazing Law the plaintiff need not isolate the claim to "initiation" improper hazing misconduct.[24]  The Piazza Antihazing Law protects against a course of improper hazing misconduct relating the *continuing or enhancing a student's membership or status in an organization*.  The statute does not limit improper hazing misconduct to behavior isolated to "initiation" as the University seems to contend.[25]  It is plausible that the improper hazing conduct was part of a discipline which established a hierarchy of status among the team members and the University tolerated and acquiesced to the prohibited misconduct of hazing.

---

24 Timothy J. Piazza Antihazing Law, 18 Pa.C.S.A. § 2802 [relating to the definition of Hazing]

**5.      The Plaintiff's Advancement of An Alternative Theory Is Not Fatal to The Plaintiff's Negligence Per Se Claim**

The University seems to contend that plaintiff's pleading of the alternate theory of recovery pursuant to the provisions of Title IX set forth in Count I of the TAC, is fatal to the plaintiff's negligence per se claim set forth in Count II of the TAC.   Pursuant to Rule 8(d), Federal Civil Procedure, a plaintiff is permitted, and in fact encouraged, to plead relief under alternative theories.[26]  Pleadings under alternative theories may be plausible, and thus sufficient to withstand a motion to dismiss, even if one or both theories of recovery both ultimately fail, either because the ultimate fact-finder is unconvinced that either theory has been proven or because the proof of one theory necessarily excludes recovery under the alternative theory.[27]  Such alternative pleadings are common, encouraged, and employed as a matter of general practice in modern civil litigation.[28]  The argument of the University that the plaintiff's Title IX claim set forth in Count I of the TAC is fatal to the plaintiff's negligence per se claim presented in Count II of the TAC is inappropriate and should properly be disregarded by this Court.

---

25 Timothy J. Piazza Antihazing Law, 18 Pa.C.S.A. § 2804 [relating to Organizational hazing]; 18 Pa.C.S.A. § 2805  [relating to Institutional hazing]
26 Universal Underwriters Ins. Co. v. J. Murray Co., No. 4:11-CV-1851, 2013 U.S. Dist. LEXIS 184474, at *16 (M.D. Pa. Oct. 28, 2013)
27 Forrester Lincoln Mercury, Inc. v. Ford Motor Co., No. 1:11-CV-1136, 2012 U.S. Dist. LEXIS 65737, at *17 (M.D. Pa. May 10, 2012)
28 Id.

### C.   THE PLAINTIFF'S PLEADING GIVES RISE TO A PLAUSIBLE NEGLIGENCE THEORY OF LIABILITY AGAINST THE PENN STATE DEFENDANTS

#### 1.   The University's Statutory Duty of Care

The Penn State defendants argue that the provisions of the Piazza Antihazing Law do not impose a duty upon the University and  on October 2, 2020, this Court instructed that the plaintiff need not and should not raise the issue of whether the provisions of the Piazza Antihazing Law imposes a duty upon the University.[29]  The Penn State defendants misstate the October 2, 2020, ruling of this Court and the plaintiff defers to the same.[30]

#### 2.   The Penn State Defendants' Contractual Duty of Care

Paragraphs 89 – 109 of the TAC and attached exhibits detail the pre-enrollment promises made to the plaintiff by the Penn State defendants that they would protect him if he selected Penn State as his college destination [see recruiting posters portraying the plaintiff's image attached hereto and marked Exhibit 1]. Paragraphs 111 – 113 of the TAC assert that relying upon those promises the accepted the athletic scholarship offered to him by the University.  Paragraphs 115 and 116 of the TAC detail post-enrollment promises made to the plaintiff by the Penn State defendants to protect him which the plaintiff relied upon to his detriment.   The

---

29 Doc. 63 p. 10
30 Doc. 56 p. 15-16

pleading affords the reasonable inference the Penn State defendants promised the plaintiff to take reasonable measures to protect him from abusive misconduct and the plaintiff relied upon those promises to his detriment.

### 3.      The Penn State Defendants' Assumed Duty of Care

Pennsylvania courts have adopted the Restatement (Second) of Torts §323 (1965), as the law of Pennsylvania.[31]  Paragraphs 191-205 (misnumbered 179 – 193) of the TAC demonstrate the University undertook to place Micah Parsons on conduct probation to protect the plaintiff from his abusive misconduct.   Paragraphs 272-273 (misnumbered 260 – 261) of the TAC demonstrate the Penn State defendants undertook a duty to control football players Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa to conform their behavior to the Student Code of Conduct and Administrative Policies which prohibited victimizing the plaintiff with abusive misconduct.  Paragraphs 274 – 289 (misnumbered 262 – 277) of the TAC demonstrate the Penn State defendants undertook a duty to ensure that its employees conformed their behavior to the University Administrative Policies which protect

---

31 Feleccia v. Lackawanna Coll., 215 A.3d 3, 14 (Pa. 2019) [citing Gradel v. Inouye, 491 Pa. 534, 421 A.2d 674, 677-78 (Pa. 1980) ("Section 323(a) of the Restatement of Torts has been part of the law of Pennsylvania for many years.")]; Spence v. ESAB Grp. Inc., 623 F.3d 212, 217 (3d Cir. 2010) [(citing Gradel v. Inouye, 491 Pa. 534, 421 A.2d 674, 677 (1980)]

against abusive misconduct.  The various administrative policies enacted by the University implicate the terms and conditions of employment which lie at the core of the University's management of its employees.  The TAC permits the reasonable inference that a vital part of the University's core mission is to provide instruction and education which is consistent with the provisions of  Title IX which bears a rational relationship to University employee's duties.[32]  The concept of University controlling the behavior of employees by imposing terms and conditions of employment codified within administrative policies, is a very different concept than the University assuming a duty of care to control the behavior of college students by virtue of enacting a Student Code of Conduct.[33]  The difference is predicated upon the nature of the relationship existing between the University and its employees and the relationship existing between the University and an ordinary member of the student-body and the corresponding distinctive levels of supervisory authority maintained by the University over them.  This Court and other Pennsylvania courts have ruled that the University maintains  a minor level of supervisory authority over the student-body and as a result no special relationship, absent some additional evidence or other

---

[32] The plaintiff advances the position regarding the Penn State defendants' assumption of duty argument without intention of treading upon this prior instruction that the plaintiff may not bring negligence *per se* claim premised on a defendant's Title IX violations.

[33] The plaintiff advances the position regarding the Penn State defendants' assumption of duty argument without intention of treading upon this prior holding that simply enacting polices does not create new duties for entities.

measure of institutional culpability, exists to support an assumption of duty to protect by the University simple enactment of a code of expected conduct.[34] The same is not true of Pennsylvania courts when analyzing the context of the employer-employee, master-servant relationship.  It well recognized in Pennsylvania that the master-servant relationship gives rise to a substantial of level of authority, control and supervision of an employer over the employee, and in some cases creates a *special relationship* requiring that the employer control his servant even when the servant is acting outside the scope of his employment so as to prevent the servant from conducting himself as to create an unreasonable risk of bodily harm to others.[35] The TAC permits the reasonable inference the Penn State Defendants' affirmative conduct gave rise to an assumed  duty of care, within the framework of Restatement (Second) of Torts §323 (1965), to protect the plaintiff from abusive behavior.

---

34 Doc 56 p. 18-19; Fitzpatrick v. Universal Tech. Inst., Inc., Civil Action No. 08-1137, 2009 U.S. Dist. LEXIS 71426, at *9 (E.D. Pa. Aug. 13, 2009) [holding the supervisory authority existing between a University and its student-body is insufficient to give rise to an assumption of duty on the part of the University by virtue of the University enacting a code of expected behavior]

35 Walters v. UPMC Presbyterian Shadyside, 646 Pa. 746, 776, 187 A.3d 214, 233 (2018); R.W. v. Manzek, 585 Pa. 335, 347, 888 A.2d 740, 747 (2005;  Restatement (Second) of Torts § 317

4.   **The Penn State Defendants' "Special Relationship" Duty of Care**

(i)   **"Special Relationship" Arising by Virtue of The Student-Athlete's Status as A Member of The School's Intercollegiate Athletic Team**

In <u>Kleinknecht v. Gettysburg Coll.</u>, 989 F.2d 1360, 1367 (3d Cir. 1993), the Third Circuit Court of Appeals squarely addressed the issue of whether schools owe student-athletes a duty of care by virtue of a "special relationship" arising as a result of the student-athlete's status as a member of the school's intercollegiate athletic team.   The Third Circuit Court of Appeals in <u>Kleinknecht</u> predicted that the Supreme Court of Pennsylvania would hold that a "special relationship" existed between  Colleges and the student-athletes sufficient to impose a duty of reasonable care upon  the College.[36]   This Court expressed in it's October 2, 2020, Memorandum opinion that the Supreme Court of Pennsylvania recently held in *Lackawanna College* that Pennsylvania law does not recognize a "special relationship" existing between colleges and student-athletes that would impose a duty of care upon the school.[37]   A close reading of the Supreme Court of Pennsylvania's discussion in *Lackawanna College* reveals that the Supreme Court of Pennsylvania chose not to address the specific issue of whether a "special relationship" arises between a College and a student-athlete as a result of the athlete's status as a member of the school's

---

36 Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1367
37  Doc 56 filed 10/02/20 p. 20

intercollegiate athletic team.   In *Lackawanna College* the Supreme Court of Pennsylvania declined to undertake an analysis required to announce a new common law duty, and instead ruled that Lackawanna College's duty of care to the student-athlete arose in that case from the application of existing statutory and common law duties relating to assumption of duty.[38]   The Supreme Court of Pennsylvania expressed in *Lackawanna College:* [39]

> *Importantly, however, an Althaus analysis was not necessary here because our review reveals the present circumstances involve application of existing statutory and common law duties of care. See, e.g., Dittman v. UPMC, 196 A.3d 1036, 1038 (Pa. 2018) (analysis of Althaus factors not required where case is one involving "application of an existing duty to a novel factual scenario").*

Notwithstanding the contentions of the Penn State defendants the holding of the Third Circuit Court in <u>Kleinknecht v. Gettysburg Coll.</u>, 989 F.2d 1360, 1367 (3d Cir. 1993) that a "special relationship" between a student-athlete and a College arises as a result of student-athlete's status as a member of school's intercollegiate athletic team exists and that relationship imposes a duty upon the school to act with reasonable care

---

38 Feleccia v. Lackawanna Coll., 215 A.3d 3, 15 (Pa. 2019) [Application of these legal principles to the present factual scenario supports a determination that "affirmative conduct" by appellants created a "special relationship" with and increased risk of harm to its student athletes such that appellants had a duty to "exercise reasonable care to protect them against an unreasonable risk of harm arising" from that affirmative conduct.]
39 Feleccia v. Lackawanna Coll., 215 A.3d 3, 13-14 (Pa. 2019)

to protect against foreseeable harm remains the controlling law of this Circuit. The plaintiff encourages this Court to follow Third Circuit Court's precedent and find that by virtue of the plaintiff's status as a scholarship-recruited student-athlete fully participating in Penn State's intercollegiate Division I football program that a *special relationship* existed between the Penn State defendants and the plaintiff which imposed a duty upon the Penn State defendants to act with reasonable care to protect the plaintiff from the foreseeable wrongful behavior of abusive teammates.

      (ii)    **"Special Relationship" Created by Virtue of The Affirmative Acts of The Penn State Defendants**

The TAC permits the reasonable inference the Penn State defendants undertook to operate under a policy unique to the Penn State Football program which rules that the members of the Penn State Football team and the Penn State defendants are to function with a special family-like-bond relationship [Exhibit 2 see video tape of a news conferenced capturing the statement of defendant Coach Franklin  https://www.youtube.com/watch?v=7tAGrW5A4Tg&feature=youtube] ; [Exhibit 3 see Article: *"Howard Eskin: Franklin 'One Of The Worst Coaches' In PSU History"* by Nick Kosko dated November 22, 2020, https://247sports.com/Article/James-Franklin-Howard-Eskin-one-of-the-worst-coaches-PSU-history-Penn-State-Iowa-155240110/ ]; [Exhibit 4 see Article: "Penn State Coach James Franklin Says He Has Not Lost his players, tries to keep them

positive" by: Joe Juliano, posted November 24, 2020, https://www.inquirer.com/college-sports/penn-state/penn-state-nittany-lions-college-football-james-franklin-frustration-disappointment-staying-positive-michigan-20201124.html].  A special family-like-bond relationship pursuant to which defendant Franklin will defend the member players of the Penn State Football team as though they were his "*sons*".  Paragraphs 69 - 80 of the TAC and attached exhibits plead and demonstrate facts from which a reasonable inference may be drawn that the Penn State defendants operate the Penn State Football program upon the affirmative foundational premise that a family-like-bond relationship, characterized by deep affection, closeness, and the expectation of protection, is demanded to exist between the member players of the Penn State Football team and the Penn State defendants.  A relationship very different from the ordinary association which the offering and acceptance of an athletic scholarship would create between a student and a university.  A relationship very different from the commonplace association and expectations existing between an ordinary member of the student-body and a university.  Surely, common sense and human experience would suggest that defendant Franklin certainly would not take it upon himself to defend the interest of the common-everyday member of the Penn State student-body as though they were his son or daughter.

Pennsylvania courts embrace longstanding jurisprudence holding that in scenarios involving an actor's affirmative conduct, he is generally under a duty to

others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act.[40] In *Lackawanna College* the Pennsylvania Supreme Court made a clear announcement that a University through its affirmative conduct may create a "special relationship" with regard to football player athletes participating in the University sanctioned football program such that the University has a duty to exercise reasonable care to protect the athletes against an unreasonable risk of harm arising from that affirmative conduct.[41]  Applying these legal principles, the TAC permits the reasonable inference that the "affirmative conduct" of the Penn State defendants created a "special relationship" with the plaintiff such that they owed a duty to exercise reasonable care to protect the plaintiff against the unreasonable risk of harm arising from the plaintiff being subjected to prolonged abusive sexualized harassment and humiliating misconduct of offending teammates and miserably failed to do so.

### 5.    The University's Duty of Care as A Possessor of Land

The University does not challenge the contention it is a possessor of land, the Penn State Lasch Building.   Nor does it challenge that the actions of defendant Franklin and members of the coaching staff may be imputed to the University, or that the Restatement (Second) of Torts, § 314A is an accurate statement of Pennsylvania

---

40 Feleccia v. Lackawanna Coll., 215 A.3d 3, 14 (Pa. 2019)
41 Feleccia v. Lackawanna Coll., 215 A.3d 3, 15 (Pa. 2019)

law.  Pennsylvania courts have adopted the main text of the Restatement (Second) of Torts §314A as the law of Pennsylvania.[42]  Section  314A identifies certain special relationships that give rise to a duty to act affirmatively to aid or protect another, including duties on common carriers, innkeepers and possessors of land.

In support of the argument that the Restatement (Second) of Torts §314A imposes no duty upon the University, the University cites James v Duquesne Univ., 936 F. Supp 2d 618 (W.D. Pa. 2013).  The holding in the James represents that Duquesne University owed no duty to protect the plaintiff, a member of the Duquesne University student-body, who, while walking on a roadway that leads to campus dormitories, was a victim of a gun shot wound arising from the spontaneous and unforeseeable criminal acts of non-student third parties.  The James court ruled, and properly so, no duty attaches pursuant to Restatement (Second) of Torts §314A(3) until the possessor of land has constructive or actual notice that created a reasonable expectation that the type of harm that befell the plaintiff would occur from the use to which the property has been put.[43]   The James court reasoned the Restatement (Second) of Torts §314A(3) imposed no duty upon Duquesne University as a result of

---

42 James v. Duquesne Univ., 936 F. Supp. 2d 618, 645 (W.D. Pa. 2013)T.A. v. Allen (Appeal of Allen), 447 Pa. Super. 302, 308, 669 A.2d 360, 362-63 (1995); Montagazzi v. Crisci, 2010 PA Super 78, ¶ 11, 994 A.2d 626, 632 (Pa.Super. 2010) [Restatement (Second) of Torts, § 314A was adopted by the courts of Pennsylvania]

43 James v. Duquesne Univ., 936 F. Supp. 2d 618, 646 (W.D. Pa. 2013)

the plaintiff having not established Duquesne University knew or had reason to know that plaintiff was at risk of physical harm at any time prior to when the shooters decided to pull handguns and shoot plaintiff as he was walking away.[44]   The same may not be said applying the principles of §314A(3) to the facts of the instant case. Here, TAC permits the reasonable inference the University was placed on actual notice of and had reason to know that plaintiff was at risk of harm while in the locker room in the Lasch Building and in close proximity to the abusing teammates.  The University required the plaintiff to be present in the Lasch Building with his abusers, at times, dates, and for the periods it commanded.  The application of the Restatement (Second) of Torts §314A to the facts here would in no way, as suggested by the University, transform the University into the insurer of the safety and welfare of the whole of the Penn State student-body by virtue of it owning land. To the very contrary, the duty to protect imposed by virtue of the Restatement (Second) of Torts §314A is select, arising only in those limited circumstances when the University knows or has reason to know that the plaintiff is foreseeably endangered, and then only is required to take action which is reasonable under the circumstances.[45]

---

44 James v. Duquesne Univ., 936 F. Supp. 2d 618, 646 (W.D. Pa. 2013)
45 Restatement (Second) of Torts, § 314A comment f.

### 6.     The Penn State Defendants' Breach of Duties of Care

### (i)     The University's Breach

Paragraph 255 (a)-(p) (misnumbered 243 (a)–(p)) of the TAC read in conjunction with the entirety of the pleading asserts the University breached a statutory duty care owed to the plaintiff pursuant to the Piazza Antihazing Law.  The TAC permits the plausible determination that prior to November 18, 2018, the University had actual notice that the plaintiff was being victimized with sexualized hazing and harassment by abusive teammates, the plaintiff was victimized by abusive teammates during the period of November 18, 2018, and  November 28, 2018, and the University breached its duty to take reasonable corrective measures to protect the plaintiff from the harassment and sexualized hazing.   Paragraph 295 (a)–(ff) (misnumbered 283 (a)–(ff)) of the TAC read in conjunction with the entirety of the pleading asserts the University breached: (1) a contractual of care to protect the plaintiff arising from promises made by defendant Franklin and other member of the Penn State Football program coaching staff to the plaintiff; (2) an assumed  a duty of care to protect the plaintiff arising as a result of the affirmative action taken by the University to protect the plaintiff by placing Micah Parsons on conduct probation and ensure that the members of the football program conform their behavior to Student Code of Conduct and the Administrative Policies of the University; (3) an assumed duty of care to protect the plaintiff arising as a result of the affirmative action taken by

the University to ensure its employees conform behavior to Administrative Policies of the University; (4) an implied duty of care to protect the plaintiff arising as a result of the "special relationship" created by virtue of the plaintiff's status as a student-athlete participating in the University's intercollegiate football program; (5) an assumed duty of care protect the plaintiff arising as a result of the affirmative action taken by the University to create a "special relationship" with the plaintiff ; and (6) a duty of care owed to protect the plaintiff arising from application of Section Restatement (Second) of Torts §314A (3).

### (ii)    Defendant James Franklin's Breach

Paragraph 314 (a)-(s) (misnumbered 302 (a) –(s)) of the TAC read in conjunction with the entirety of the pleading asserts defendant James Franklin breached common law duties of owed to the plaintiff. The TAC permits the plausible determination that defendant James Franklin breached: (1) a contractual duty of care to protect the plaintiff arising from the promises he made to the plaintiff; (2) an assumed duty of care owed to protect the plaintiff arising from by assumption as a result of the affirmative action undertaken ensure that members of the Penn State football team conform their behavior to the Code of Student Conduct and Administrative Policies; (3) an assumed duty of care owed to protect the plaintiff arising by assumption as a result of the terms and conditions of his employment set forth in the Administrative Policies of the University; (4) an implied duty of care to

protect the plaintiff arising as a result of the "special relationship" created by virtue of the plaintiff's status as a student-athlete participating in the University's intercollegiate football program; and  (5)  breached an implied or assumed duty of care to protect the plaintiff arising as a result of the affirmative action he undertook to create a "special relationship" with the plaintiff.   The TAC offers facts from which the reasonable inference may certainly be drawn to support a determination that the Penn State defendants breached a duty of care owed to the plaintiff to take reasonable measures to protect him from the abuse, harassment, and foreseeable harm of his teammates.

### 7.    Negligence of The Penn State Defendants Increased the Risk of Harm Suffered by The Plaintiff

It is well accepted in Pennsylvania that to prevail upon a claim of negligence if a plaintiff is able to establish that the defendant breached some duty of care owed to the plaintiff, the plaintiff must also show there exists a causal connection between the defendant's conduct and the plaintiff's injury.[46]   The causal connection referred  to as proximate cause can be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm.[47]   Two or more causes may contribute to and thus be the legal or proximate

---

46 Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280, 1284 (Pa. 1978)
47 Id.

cause of an injury.[48]   The TAC permits the reasonable inference that Penn State defendants' breach of the duty of care owed to the plaintiff to take reasonable measures  to protect him from his abusers was a substantial factor in bring about his harm.  Notwithstanding, to survive the Penn State defendants' challenges, the plaintiff need only assert that the conduct of the Penn State defendants increased the risk of harm to the plaintiff, not that their conduct was substantial factor in bringing about the plaintiff's harm.

As one of his claims, the plaintiff asserts a theory of liability against the Penn State defendants pursuant to the framework of Restatement (Second) of Torts §323 (1965).  The Pennsylvania Supreme Court noted the effect of Section 323(a) was to relax the degree of certainty ordinarily required of a plaintiff's evidence to provide a basis upon which a jury may find causation and required.[49] Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury whether that increased risk was a substantial factor in producing the harm.[50]   In light of Hamil, although the TAC pleads facts making it plausible that the negligence of the Penn State defendants was a substantial factor in bringing producing the plaintiff's injuries, he need only plead facts to support a

---

48 Powell v. Drumheller, 539 Pa. 484, 653 A.2d 619, 623 (Pa. 1995)
49 Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280 (Pa. 1978)
50 Hamil v. Bashline, 481 Pa. 256, 272, 392 A.2d 1280, 1288 (1978)

determination that their negligence increased the risk of harm that the plaintiff would suffer injury. The TAC permits the reasonable inference that the negligence of the Penn State defendants was, at the very least, a contributing factor which increased the risk of harm suffered by the plaintiff sufficient to overcome the Penn State defendants' challenge.

### 8.   The Misconduct of The Plaintiff's Abusive Teammates Was Not A Superseding Intervening Cause Relieving the Penn State Defendants of Liability

It is clear in Pennsylvania that two or more causes may contribute to and thus be the legal or proximate cause of an injury.[51] To determine if an intervening force is a superseding cause, the test is whether the intervening conduct was so extraordinary as not to have been reasonably foreseeable.[52] To constitute a superseding intervening event sufficient to relieve a defendant of liability, the act or force must: (1) actively operate in producing harm to the plaintiff after the defendant's negligent act has been committed; and (2) be so extraordinary as not to have been reasonably foreseeable so to break the causal chain.[53] To relieve the Penn State defendants of liability predicated upon a theory that the abusive behavior of the

---

51 Feeny v. Disston Manor Personal Care Home, Inc., 2004 PA Super 114, 849 A.2d 590, 594-595 (Pa. Super. 2004)

52 Id.
53 Straw v. Fair, 2018 PA Super 125, 187 A.3d 966, 995 (Pa. Super. 2018)

plaintiff's teammates was a superseding intervening event, the sexualized hazing misconduct behavior of the plaintiff's teammates, by logic, must follow the Penn State defendants' negligent actions.   The misconduct behavior of the plaintiff's abusive teammates occurred before the negligent behavior of the Penn State defendants and was not so extraordinary that it could not have been reasonably foreseeable to break the causal chain and relieve the Penn State defendants of liability.   The improper conduct of the abuse was foreseeable behavior and the very behavior which the Penn State defendants were placed on notice of and failed to take reasonable measures to prevent and protect the plaintiff against.   The TAC permits the reasonable inference that the Penn State defendants are not relieved from liability upon the basis that the misconduct of the plaintiff's teammates was a superseding intervening cause of the plaintiff's injuries.

**D. THE PLAINTIFF'S PLEADING GIVES RISE TO A PLAUSIBLE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS THEORY OF LIABILITY AGAINST THE PENN STATE DEFENDANTS**

### 1. Pennsylvania Law Recognizes the Existence of a "Special Relationship" Between a University and Its Intercollegiate Student-Athletes

The Penn State defendants contend that the plaintiff's negligent infliction of emotional distress claim should be dismissed against it upon the basis that Pennsylvania courts do not recognize the existence of a "special relationship" between

a student-athlete and a university or a coach.  As referenced in greater detail above, the holdings of the Third Circuit Court Appeals in <u>Kleinknecht v. Gettysburg Coll.</u>, 989 F.2d 1360 (3d Cir. 1993) and the Pennsylvania Supreme Court in <u>Feleccia v. Lackawanna College</u>, 215 A.3d 3 (Pa. 2019) suggest otherwise and have determined that the law of this Circuit recognizes the existence of a "special relationship" between a student-athlete participating in the school's intercollegiate athletic team and a university or a coach on two distinct grounds: (i) by virtue of the student-athlete's status as a member of the school's intercollegiate athletic team;[54] and (2) by virtue of affirmative conduct undertaken by the school which creates the special relationship.[55] The argument of the Penn State defendants that the negligent infliction of emotional distress liability claim should be dismissed against them upon the basis that the Pennsylvania courts have not recognized the existence of a "special relationship" between student-athletes and Universities or a coach misconstrues the state of Pennsylvania law.

### 2.     A "Special Relationship" Existed Between the Penn State Defendants and The Plaintiff

The Penn State defendants contend that the plaintiff's negligent infliction of emotional distress should be dismissed against it upon the basis that the Complaint does not sufficiently states facts demonstrating the existence of a "special

---

54 Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1367

relationship" between the Penn State defendants and the plaintiff.  The TAC offers facts from which the reasonable inference may be drawn to support a determination that plaintiff was a scholarship-recruited-student-athlete fully participating in Penn State's intercollegiate Division I football program giving rise to a "special relationship" recognized in Kleinknecht v. Gettysburg Coll., 989 F.2d 1360 (3d Cir. 1993).  Section IV(E)(1)(v) of this submission addresses in significant detail facts which support a finding that the affirmative conduct of the Penn State defendants created a "special relationship" between the plaintiff and the Penn State defendants recognized in Feleccia v. Lackawanna College, 215 A.3d 3 (Pa. 2019).  The plaintiff incorporates the argument herein.

In Toney v. Chester Cty. Hospital, 614 Pa. 98, 36 A.3d 83 (Pa. 2011), the Pennsylvania Supreme Court extended liability for the tort of negligent infliction of emotional distress to cases where a special relationship existed and where it was foreseeable that a potential for deep emotional harm to result in the event of a breach of the relevant duty.[56]   Drawing on its judicial experience and common sense it is reasonable for this Court to determine that the "special relationship" and the expectations associated with it created by the affirmative conduct of the Penn State defendants gives rise to a potential for deep emotional harm in the event of a breach

---

55 Feleccia v. Lackawanna Coll., 215 A.3d 3, 15 (Pa. 2019)

sufficient to establish negligent infliction of emotional distress liability.  Here, the plaintiff was being physically and emotionally abused with humiliating and sexually demeaning abusive behavior by teammates, occurring repeatedly, in a captive setting, where the Penn State defendants required that the plaintiff be.  There is no question it was foreseeable that the Penn State defendants' failure to protect the plaintiff, who was unable to protect himself, from the continued and prolonged abuse, would result in severe emotional disturbance.  Here, even worse, the pleading asserts not only did the Penn State defendants fail to take reasonable measures to protect the plaintiff, but retaliated against him when he turned to them for help and reported the behavior. The TAC permits the reasonable inference that Penn State defendants owed the plaintiff an implied duty to care for his emotional well-being arising from a special relationship and it was foreseeable that a breach of that duty could result in severe emotional disturbance causing compensable injuries to plaintiff.

### 3.      Plaintiff Suffered Legitimate Severe Emotional Distress

Discussing the elements of a Negligent Infliction of Emotional Distress cause of action the Supreme Court of Pennsylvania expressed:[57]

> "A plaintiff asserting a special relationship NIED cause of action absent physical injury, however, must still demonstrate the

---

56 Toney v. Chester Cty. Hosp., 614 Pa. 98, 117-18, 36 A.3d 83, 95-96 (Pa. 2011) [Holding that a doctor obstetrician-patient relationship was a qualifying relationship giving rise to negligent infliction of emotional distress liability]
57 Toney v. Chester Cty. Hosp., 614 Pa. 98, 123, 36 A.3d 83, 99 (2011)

> *genuineness of the alleged emotional distress, in part, by proving the element of causation."*

In Toney, the Pennsylvania Supreme Court relieved a plaintiff asserting a special relationship Negligent Infliction of Emotional Distress cause of action of the requirement to plead and prove physical impact or physical injury as an element of the tort.[58] The Pennsylvania Supreme Court provided however, to prevail on a Negligent Infliction of Emotional Distress claim the plaintiff must demonstrate a legitimate severe emotional distress and a causal nexus between the negligent action at issue and alleged distress.[59]

Paragraphs 239 and 243 (misnumbered 227 and 231) of the TAC state that as a direct result of the Penn State defendant's failure to take reasonable corrective measure to protect the plaintiff from the abusive misconduct of teammates he suffered physical pain, hair loss, discomfort, trauma, humiliation, embarrassment, emotional distress, sleeplessness, anxiety, inability to perform simple activities of daily living, depression characterized by feelings of despair, hopelessness, despondency and loss of life's pleasures. Paragraphs 339 – 342 (misnumbered 327 - 330) of the TAC state that as a direct result of the Penn State defendants' failure to protect the plaintiff he suffered fear, anxiety, panic emotional trauma, emotional distress, grief, and fright to a degree that no reasonable person should be expected to

---

58 Id. at 614 Pa. 98, 123, 36 A.3d 83, 99
59 Id.

endure, illness and bodily harm.  Paragraph 240 (misnumbered 228) of the TAC states describe as a direct of the Penn State defendants' breach of duty and retaliation the plaintiff underwent outpatient healthcare, and medical evaluations and may require other medical attention into the future.  Any suggestion that the TAC does not contain well plead facts to establish a facially plausible claim that the plaintiff suffered a legitimate severe emotional distress which was causally related to the Penn State defendants' breach of duty of care owed to the plaintiff is simply without foundation and disregards well plead facts.

## V.   <u>CONCLUSION</u>

For the foregoing reasons and any others which may arise pending a hearing on this matter, plaintiff respectfully requests that this Honorable Court enter its order denying defendants The Pennsylvania State University and James Franklin's Motion to Dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

By:    */s/ Steven F. Marino*
      Steven F. Marino, Esquire
      PA Attorney I.D. No.   53034
      Joseph Auddino, Esquire
      PA Attorney I.D. No.   316752
      MARINO ASSOCIATES
      301 Wharton Street
      Philadelphia, PA 19147
      Telephone:   (215) 462-3200
      Telecopier:   (215) 462-4763
      smarino@marinoassociates.net
      jauddino@marinoassociates.net

Dated: December 4, 2020      *Attorneys for Plaintiff*