## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISAIAH HUMPHRIES, | No. 4:20-CV-00064 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| THE PENNSYLVANIA STATE UNIVERSITY; JAMES FRANKLIN; and DAMION BARBER, | |
| Defendants. | |

## MEMORANDUM OPINION

### DECEMBER 7, 2021

"In most cases, only 'final decisions' of district courts are appealable to the court of appeals."[1] Title 28 U.S.C. § 1292(b) provides a narrow exception to this final judgment rule—the interlocutory appeal. In September, I whittled the Defendants in this case from three to one. But because one party remained, it was not an appealable final decision. Isaiah Humphries now seeks to restore these discarded Defendants—The Pennsylvania State University and its football coach James Franklin—through an interlocutory appeal.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The facts of this dispute are well-known to the parties, so I won't linger on them for long. In brief, Humphries sued Penn State, Franklin, and his former

---

[1]   *Consumer Fin. Prot. Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 114 (M.D. Pa. 2021) (Mariani, J.)

teammate Damion Barber for harms that he suffered while a member of the school's football team.

His complaint alleged that four former teammates sexually abused, hazed, and harassed him while he was a freshman on the Penn State football team. On a motion to dismiss Humphries' Second Amended Complaint, I largely allowed the claims against Barber—the sole teammate named in the suit—to proceed.[2] But that was not the case for Humphries' claims against Penn State and Franklin. These claims—save a Title IX retaliation count—centered on Penn State and Franklin's failure to prevent the four players' conduct. After allowing Humphries to refashion his complaint for a fourth time, I found that, as alleged, these claims could not succeed as a matter of law.[3]

In an attempt to forge on against all three parties, Humphries timely moved for interlocutory certification after I granted Penn State and Franklin's motion to dismiss.[4] Penn State and Franklin then submitted a brief in opposition.[5] And though entitled to, Humphries did not submit a brief in reply.

The matter is now fully briefed and ripe for disposition.

---

[2]   *See Humphries v. Pennsylvania State Univ.*, 492 F. Supp. 3d 393 (M.D. Pa. 2020).
[3]   *See Humphries v. Pennsylvania State Univ.*, 2021 WL 4355352 (M.D. Pa. Sept. 24, 2021).
[4]   *See* Doc. 77; Doc. 78.
[5]   *See* Doc. 79.

## II.   THE INTERLOCUTORY CERTIFICATION STANDARD

Title 28 U.S.C. § 1292(b) dictates that appeals from non-final judgments are

discretionary, must satisfy three elements, and require the assent of both the district

and circuit court:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order
> involves a controlling question of law as to which there is substantial
> ground for difference of opinion and that an immediate appeal from the
> order may materially advance the ultimate termination of the litigation,
> he shall so state in writing in such order. The Court of Appeals which
> would have jurisdiction of an appeal of such action may thereupon, in
> its discretion, permit an appeal to be taken from such order . . . .[6]

The three elements—a controlling question of law, a question on which there is a

substantial ground for difference of opinion, and whether answering that question

would hasten the litigation's end—are taken directly from the statute.[7]

But from the outset, the United States Court of Appeals for the Third Circuit

has emphasized that interlocutory relief should be atypical. In an opinion issued

shortly after section 1292(b) became law, our Court of Appeals instructed that

because "Congress intended that section 1292(b) should be sparingly applied[,] [i]t

is to be used only in exceptional cases where an immediate appeal may avoid

protracted and expensive litigation and is not intended to open the floodgates to a

vast number of appeals from interlocutory orders in ordinary litigation."[8] District

---

[6]   28 U.S.C. § 1292(b).
[7]   *Id.*
[8]   *Milbert v. Bison Labs., Inc.,* 260 F.2d 431, 433 (3d Cir. 1958). As the Third Circuit later noted,
      the two principal harms which animated Congress are instructive. First, Congress wanted to

courts therefore retain discretion. And to ensure that the circuit court is not awash in certified interlocutory appeals, courts in the Third Circuit have further assessed— even when the three statutory elements have been met—"whether the issues in the action are of 'nationwide significance'" or are "exceptional" in nature.[9]

So, in total, there are four steps, and failure at any stop along the way warrants a denial.

## III. ANALYSIS

As Penn State and Franklin do not challenge that the issues raised involve controlling questions of law (and I too think there is little doubt), I will move on to the second and third elements of section 1292(b) before considering the discretionary fourth factor.

_____

allow courts to avoid "a wasted protracted trial if it could early be determined that there might be no liability." *Katz v. Carte Blanch Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). The quintessential examples: "cases in which a long trial results from a pretrial order erroneously overruling a defense going to the right to maintain the action, . . . cases involving prolonged assessment of damages after determination of liability, . . . cases where the disposition of motions for impleader might induce voluntary nonsuit or settlement, and . . . cases where venue is claimed to have been transferred without proper authority." *Id.* Second, Congress sought to further reduce "harm to litigants uncorrectable on appeal from a final judgment which sometimes resulted from strict application of the federal final judgment rule." *Id.* This correction, the court noted, was in line with earlier exceptions, which allowed for interlocutory appeals "[i]n cases of grants or denials of injunctive relief or grants or denials of applications for the appointment of receivers . . . ." *Id.*

[9]   *Navient Corp.*, 522 F. Supp. 3d at 114 (nationwide significance); *In re Chocolate Confectionary Antitrust Litigation*, 607 F. Supp. 2d 701, 708 (M.D. Pa. 2009) (Conner, J.) (exceptionality).

## A.     Substantial Ground for Difference of Opinion

As I have previewed, the second certification element requires "a substantial ground for difference of opinion [that] must arise out of doubt as to the correct legal standard, such as conflicting precedent, the absence of controlling law, or complex statutory interpretation."[10] Mere disagreement—no matter how vehement—is not enough.[11] And neither is disputing "the application of settled law to a particular set of facts."[12]

Humphries argues that on every theory he raised in his complaint there is a substantial ground for difference of opinion. I'll address each in turn.

### 1.     Title IX

Humphries' Title IX basis rests on this Court's supposed failure to apply the pleading standard established by *Bell Atlantic Corp. v. Twombly*, *Ashcroft v. Iqbal*, and *Phillips v. County of Allegheny*.[13] He argues that my review of his complaint was "hyper-technical" and "failed to apply judicial experience and common sense," as required.[14] And he further suggests that I did not "give meaningful consideration to" and "seemingly ignored the well plead facts" that he lodged in his complaint.[15]

---

[10]   *Navient Corp.*, 522 F. Supp. 3d at 113.

[11]   *Id.*; *see Karlo v. Pittsburgh Glass Works, LLC*, 2014 WL 12539666, at *1 (W.D. Pa. Jul. 3, 2014) ("A party's strong disagreement with the Court's ruling does not constitute a 'substantial ground for difference of opinion . . . .").

[12]   *Karlo*, 2014 WL 12539666, at *1 (quoting *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

[13]   Doc. 78 at 8. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224 (3d Cir. 2008).

[14]   Doc. 78 at 8.

[15]   *Id.* at 7.

"A fair reading" of the complaint, in his view, "demonstrates substantial grounds for difference of opinion" as to whether he met the motion to dismiss standard.[16]

In support of his sex stereotyping gender-based harassment theory, he claims that I gave short-shrift to paragraphs identifying Humphries "as a male."[17] Meanwhile, in support of his Title IX retaliation claim, he points to another

---

[16]   *Id.* at 8.

[17]   Doc. 78 at 7. Humphries is quite literally arguing that, in the following paragraphs, references to him being a man move the needle on this claim.

- "[D]efendant James Franklin represented to the plaintiff that . . . he would use his best efforts to ensure that the plaintiff leaves Penn State a better man . . . ." Doc. 58 at ¶ 107.
- "[D]efendant James Franklin represented to the plaintiff's father Leonard Humphries that he can entrust the plaintiff to him because if the plaintiff agrees to enroll in Penn State and participate in its football program the plaintiff will be treated like family." *Id.* ¶ 108.
- "[R]easonably relying to his detriment upon the promises made to him by defendant James Franklin and members of the Penn State football program staff on behalf of defendant The Pennsylvania State University the plaintiff signed a Letter of Intent [signaling] his intent to attend The Pennsylvania State University and participate in its football program." *Id.* ¶ 109.
- "[D]uring the course of the orientation attended by incoming freshman Penn State football players and their parents at the Penn Stater Hotel located in University Park, PA, defendant James Franklin represented to the plaintiff and his parents, among other things that: 'we are a family'; 'attending Penn State is more than football'; 'I will develop you into not just players but as men'; 'I will protect you like sons'." *Id.* ¶ 116.
- "The plaintiff has record evidence documenting that he was victimized with the aforementioned hazing and harassment perpetrated against him by Micah Parsons . . . ." *Id.* ¶ 163.
- "The plaintiff has record evidence documenting that Penn State football player Sterling Jenkins was victimized with the aforementioned hazing and harassment perpetrated against him by the defendant Damion Barber . . . ." *Id.* ¶ 164.
- "The plaintiff has record evidence documenting that he was victimized with the aforementioned hazing and harassment perpetrated against him by defendant Damion Barber and Jesse Luketa . . . ." *Id.* ¶ 165.
- "[D]uring the course of being targeted and subjected to hazing and harassment by defendant Damon Barber and Jesse Luketa the plaintiff called his father Leonard Humphries from his cell phone." *Id.* ¶ 166.
- "Penn State football coach Terry Smith responded to the reporting of Leonard Humphries that the plaintiff was being targeted and subjected to hazing and harassment by football players defendant Damion Barber, Micah Parsons, Yetur Gross-Matos, and Jesse Luketa by expressing that the plaintiff needed to stop acting as if he is affluent, refined, and sophisticated." *Id.* ¶ 174.

paragraph in his complaint, which I addressed when I dismissed this theory.[18] As I summarized then, this paragraph alleges that his coaches:

> (1) "overly and unfairly scrutinized" his athletic performance; (2) "scorned" him; (3) required him to participate in drills designed to ensure his failure; (4) subjected him to "irrational and inappropriate censure"; (5) denied him necessary medical accommodations; (6) tried to push him into medical retirement; and (7) spoke poorly of him to other football coaches after he decided to transfer.[19]

I am dubious of these claims. To start, I fail to see how merely having referred to himself using male gender pronouns in his complaint would transform Humphries' allegations about his teammates' abuse into gender-motivated abuse. This approach would erase any distinction between conduct and gender-motivated conduct. What's more, as I emphasized when I disposed of his retaliation claim, the allegations about the coaches' conduct failed, not because he didn't allege actions that could be considered retaliatory, but because he "fail[ed] to engage, even on a surface level, with causation."[20] But the flimsiness of these arguments is beside the point.

As has been a persistent theme throughout this suit, Humphries' framing of the issue misses the mark. Whether I gave inadequate weight to these paragraphs could rightfully be the topic of an appeal. But it's the wrong track here. The second element in a section 1292(b) analysis requires that Humphries identify "difficult and

---

[18]   *See* Doc. 78 at 7; *see also* Doc. 58 at ¶ 187.
[19]   *Humphries*, 2021 WL 4355352, at *25.
[20]   *Id.* at *26.

pivotal questions of law not settled by controlling authority. . . ."[21] Yet Humphries has not identified conflicting case law. He has not argued that it is an issue of first impression. And he has not claimed that it involves complex statutory interpretation.[22] Instead, he simply nitpicks this Court's assessment of his pleading. Perhaps whether the proper pleading standard was applied would have satisfied this element amid the civil procedure revival of the early aughts.[23] But that's not the case today.

In sum, Humphries' claims are no more than "a dispute over the application of settled law to a particular set of facts."[24] And on a request for interlocutory relief, that won't do.

### 2.    Negligence Per Se

Humphries' negligence per se argument strikes a similar chord. He reiterates his claim that I applied the incorrect pleading standard—the insufficiencies of which I've just dealt with above. At the same time, he also claims that in dismissing this count, which is premised on the Timothy J. Piazza Antihazing Law,[25] I "ignore the

---

[21]    *Snider v. Pa. Dept. of Corr.*, 2019 WL 6499570, at *2 (M.D. Pa. Dec. 2, 2019).

[22]    *See* Doc. 78 at 6–8.

[23]    *See generally* Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012). In fact, the Third Circuit didn't take up an interlocutory appeal after the District Court certified a question about the appropriate pleading standard in the wake of *Iqbal* and *Twombly*, in *In re Chocolate Confectionary Antitrust Litigation*, 607 F. Supp. 2d 701.

[24]    *Karlo*, 2014 WL 12539666, at *1.

[25]    *See generally* 18 Pa. C.S. §§ 2801-2811.

language of the statute which proscribes . . . abuse . . . suffered for the purpose of affiliation . . . .[26] That's not the case.

Put bluntly, I did not address the continue, enhance, or affiliate elements of the statute because Humphries' complaint failed to assert them. His pleadings alleged only initiating conduct—and I noted as much in my dismissal:

> In each of his four complaints, Humphries has alleged that the harassment he endured was a part of his "initiation." Complaint Doc. 1 at ¶ 77 (Complaint); Doc. 22 at ¶ 77 (First Amended Complaint); Doc. 40 at ¶ 83 (Second Amended Complaint); Doc. 58 at ¶ 58 (Third Amended Complaint). While he correctly notes that the Piazza Law is not limited solely to initiation and argues that he can show that the hazing was part of continuing or enhancing Humphries' status on the team, he cannot modify his pleading and assert a new theory in his reply brief.[27]

There are substantial grounds for difference of opinion about many aspects of the Piazza Law. Indeed, this Court remains the only court to have interpreted it.[28] But the issues raised by Humphries here do not qualify. Just as Humphries could not modify his pleadings in his reply brief, he cannot modify them in a motion to certify an interlocutory appeal.[29]

At bottom, this isn't an issue of first impression, nor is it an issue of complex statutory interpretation; it's an issue with the pleading standard that this Court has applied. And—like the arguments on this front that Humphries has made before—it

---

[26]    Doc. 78 at 10.
[27]    *Humphries*, 2021 WL 4355352, at *19 n.228.
[28]    *See also Jean v. Bucknell*, 2021 WL 4145055 (M.D. Pa. Sept. 9, 2021).
[29]    *Humphries*, 2021 WL 4355352, at *19 n.228.

too is simply "a dispute over the application of settled law to a particular set of facts."[30] This argument therefore fails.

### 3.    Negligence

Humphries also challenges this Court's rejection of his negligence counts against Penn State and Franklin. In my dismissal, I boiled down his smorgasbord of theories to four distinct claims:

> First, that Penn State and Franklin have created a duty through their contractual relationship. Second, that the University assumed a duty through their administrative policies and disciplinary decisions. Third, that Pennsylvania law recognizes a duty-creating special relationship between athletes and their schools. Fourth, that [the] University owed a duty as a possessor of land.[31]

Three of these—Humphries' contractual, assumption, and premise-based theories—resort to the same pleadings challenge that I addressed above. To reiterate, quibbles over the pleading standard do not involve "difficult and pivotal questions of law not settled by controlling authority . . . ."[32] Again—that's settled law, so these grounds fail.

But Humphries' argument on his special relationship theory extends beyond mere assertions that this Court applied too strict of a standard to his pleadings. His contention comes in three parts: First, he claims that the Pennsylvania Supreme Court has not specifically spoken as to whether there is a special relationship

---

[30]   *Karlo*, 2014 WL 12539666, at *1.
[31]   *Humphries*, 2021 WL 4355352, at *6.
[32]   *Snider*, 2019 WL 6499570, at 2.

between athletes and their coaches and universities that would impose a duty to protect against the abuses at issue here.[33] Second, he argues that in *Kleinknecht v. Gettysburg College*, the Third Circuit predicted that the Pennsylvania Supreme Court would find a duty-creating special relationship between an athlete and their school and coaches.[34] Third, he contends that in *Feleccia v. Lackawanna College*, the Pennsylvania Supreme Court did not address the rightness (or wrongness) of this circuit prediction, while finding that a college had assumed a duty of care to two its athletes—thus leaving the prediction intact, and binding.[35]

But this argument too merely reiterates the same claims that Humphries made about *Kleinknecht* and *Feleccia* on the motions to dismiss his Second and Third Amended Complaints.[36] The third time is not the charm.

As I noted on both occasions, *Kleinknecht* dealt with a "much narrower question: whether colleges owed their athletes a duty to have qualified medical personnel on hand for athletic events."[37] And in my most recent decision, I explained why—even if you could fit Humphries' elephant-sized theory into *Kleinknecht*'s medical-personnel-at-sporting-events-sized mousehole—*Kleinknecht* was no longer

---

[33]   Doc. 78 at 14–15.
[34]   *Id.*; *see also Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360 (3d Cir. 1993).
[35]   Doc. 78 at 14–15; *see also Feleccia v. Lackawanna Coll.*, 215 A.3d 3 (Pa. 2019).
[36]   *See Humphries*, 412 F. Supp. 3d at 407–08; Doc. 72-1 at 25–27.
[37]   *Humphries*, 2021 WL 4355352, at *12.

a prediction to follow blindly in the wake of *Althaus ex rel. Althaus v. Cohen* and *Feleccia*.[38]

In response, Humphries now baldly claims that my interpretation of *Kleinknecht*'s scope and our federal courts doctrines tosses aside a Third Circuit precedent as "non-binding authority."[39] But he leaves this swipe unsupported, pointing to no courts that have ruled differently on either of these issues. This stance is unfortunately in keeping with his apparent allergy to citing caselaw throughout these proceedings—though it's a particularly stunning deficiency on a motion for interlocutory certification, which requires that he show that "different courts have issued conflicting and contradictory opinions when interpreting a particular question of law."[40]

I also see at least two glaring problems with an argument that the Pennsylvania Supreme Court's supposed indefiniteness in *Feleccia* means that Humphries' claim is not controlled by existing authority. For one, that the Pennsylvania Supreme Court has not decided whether a specific duty exists does not catapult a claim into unsettled law territory; indeed, by that standard, any claim that exceeded the bounds of existing case law would qualify. That's unworkable. On a second, related note, controlling law shows that the Pennsylvania Supreme Court balked at extending a

---

[38]   *Id.*; *see also Althaus ex rel. Althaus v. Cohen* and *Feleccia*, 756 A.2d 1166 (Pa. 2000).
[39]   Doc. 78 at 14.
[40]   *Miron v. Seidman*, 2006 WL 3742772, at *3 (E.D. Pa. Dec. 13, 2006). Aside from a cursory reference to the pleading standard cases on page 8, Humphries essentially manages to make it 16 pages without even a citation. *See* Doc. 78 at 6–22.

lesser duty in *Feleccia*.[41] Plowing forward to recognize an even broader duty when the Pennsylvania Supreme Court refused to recognize a narrower one would be unfaithful to this Court's role when applying state law.[42]

In total, Humphries has failed to show—or in reality, failed to even attempt to show—that there is a substantial ground for difference of opinion about any of his four negligence theories.

### 4.    Negligent Infliction of Emotional Distress

Finally, Humphries argues that there is a substantial ground for difference of opinion on his Negligent Infliction of Emotional Distress (NIED) claim. He sounds a familiar tune—first, he again takes issue with the pleading standard; second, he reiterates his claim that this Court is openly flouting Third Circuit precedent by failing to recognize a *Kleinknecht*-created special relationship.[43]

At this point, I've addressed both arguments at length. The pleading standard is not a "difficult and pivotal question of law not settled by controlling authority";[44] nor has Humphries cited caselaw that casts doubt on my interpretation of *Kleinknecht*'s scope or its applicability under our federal courts doctrines.

But here it's also worth emphasizing that besides these faults, Humphries' special relationship theory has a more fundamental flaw—which I detailed at length

---

[41]   *Humphries*, 2021 WL 4355352, at *13.
[42]   *See id.*
[43]   Doc. 78 at 19–20.
[44]   *Snider*, 2019 WL 6499570, at *2.

in my opinion on the matter (apparently to no avail): "There's a distinction between duty-creating special relationships under negligence law and special relationships in an NIED claim."[45] Humphries remains in the wrong area code on this issue.

Far from highlighting caselaw that cuts against my opinion, Humphries reiterates the same arguments that I rejected in dismissing his claim—rendering certification unwarranted.

### B. Likelihood of Advancing the Ultimate Termination of the Litigation

Given that Humphries has failed to show that there is a substantial ground for difference of opinion on these claims, I need not proceed to the third stage of the analysis. For the sake of completeness, however, I'll note that certifying an interlocutory appeal here would not "advance the ultimate termination of the litigation."[46]

To assess whether an immediate appeal would hasten the end of the litigation, courts have traditionally looked to whether it "would (1) obviate the need for trial; (2) eliminate complex issues, thereby simplifying the trial; or (3) eliminate issues thus making discovery much easier and less costly."[47] On this standard, Humphries' efforts to add Penn State and Franklin back into the mix fare poorly. An immediate

---

[45]   *Humphries*, 2021 WL 4355352, at *21.
[46]   28 U.S.C. § 1292(b).
[47]   *Snider*, 2019 WL 6499570, at *2.

appeal would not avoid the need for a trial. It would not subtract complex issues—but rather add them. And it would not reduce the burden of discovery.

Still, these factors are not a straitjacket. Despite this general approach, which shies away from the certification of appeals that would unravel a streamlined case, some Pennsylvania courts have considered whether "certification would help avoid duplicate trials with overlapping facts."[48] Humphries argues that is the case here, as his claims against Barber "involve a nucleus of fact identical to those" involved in his claims against the University and Franklin.[49]

But even if this Court imported this duplicate trial standard, I don't think that Humphries would meet it. In those cases, the courts looked to whether the trials would be "substantially similar."[50] If Humphries' claim against Barber proceeded to trial, the jury would be tasked with judging whether Barber sexually abused, hazed, and harassed him. In contrast, a trial on the claims against Penn State and Franklin would expand well beyond whether those events occurred—touching on the conduct of three other players, reports made to various coaches and administrators, and their subsequent actions (or inaction). So while a later trial may include some overlap, Barber's conduct would not be at the center.

---

[48] *Wheeler v. Baird*, 2005 WL 2108702, at *3 (E.D. Pa. Aug. 31, 2005) (citing *Gustavson v. Vito*, 1989 WL 89217, at *6 (E.D. Pa. Aug. 2, 1989)).
[49] Doc. 78 at 21.
[50] *Wheeler*, 2005 WL 2108702, at *3.

In sum, had Humphries carried his burden at the second stage, certification would still be unwarranted because an immediate appeal would not "materially advance the ultimate termination of the litigation."[51]

## C.   Exceptionality and Nationwide Significance

Humphries' claims would meet a similar fate at the fourth, discretionary step. As I have noted, certification is to be used "only sparingly and in exceptional circumstances."[52] "The court possesses discretion to deny certification of an appeal even if parties satisfy the statutory criteria of § 1292(b)."[53] So in assessing certification questions, courts have looked to whether the case is "exceptional" or involves a matter of "nationwide significance."[54]

Humphries hasn't satisfied the statutory criteria. But had he, his argument that an appeal to the Third Circuit "could potentially have widespread impact upon the management of scholarship-student-athletes in Universities, not only in the Commonwealth of Pennsylvania, but across the United States" wouldn't do.[55] Only Humphries' Title IX claims reach beyond this Commonwealth's border. And even then, whether Title IX extends as far as he claims is not, to my knowledge, an issue

---

[51]   28 U.S.C. § 1292(b).
[52]   *Sabree v. Williams*, 2008 WL 4534073, at *1.
[53]   *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d at 708.
[54]   *Id.*; *Navient Corp.*, 522 F. Supp. 3d at 118–19.
[55]   Doc. 78 at 17.

that's before other circuits; nor is it a pressing issue that raises concerns about "international comity" or involves billions of dollars.[56]

## IV.   CONCLUSION

Humphries has failed to show that his claims against Penn State and Franklin warrant certification under Title 28 U.S.C. § 1292(b). He can have his appeal. But he must wait until this Court has issued a final judgment. And that remains very much in his own hands: if it's Penn State and Franklin that he's after, he can wrap up his case against Barber, and proceed to the Third Circuit. Until then, this case will move on without those two parties.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[56]   *Griggs Rd. v. Selective Way Ins. Co. of Am.*, 2019 WL 3230916, at *3 (M.D. Pa. May 22, 2019).