# JONES DAY

2727 NORTH HARWOOD STREET • DALLAS, TEXAS 75201-1515

TELEPHONE: +1.214.220.3939 • JONESDAY.COM

Direct Number: (214) 969-3605
makairis@jonesday.com

May 17, 2022

Chief Judge Matthew W. Brann
United States District Court for the Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 North Washington Avenue
Scranton, Pennsylvania 18503

      Re:   *Isaiah Humphries v. Damion Barber*
             Case No. 4:20-cv-00064

Chief Judge Brann:

      Plaintiff Isaiah Humphries issued to non-party The Pennsylvania State University a subpoena seeking confidential records relating to its 2019 investigation into Humphries' complaints of assault occurring in 2018. Humphries knows that these records are highly confidential and contain personal and sensitive information from and about University students; he was advised as much immediately before he chose to misappropriate some of those exact same records during the course of the University's investigation. Knowing that he cannot lawfully disclose those records, Humphries demands them from the University. The University had agreed to produce certain of those records that might be relevant to Humphries' claims, provided the parties execute a confidentiality agreement ensuring that they would not be disclosed outside this proceeding. Humphries, without explanation or willingness to confer, refused to agree to any confidentiality protections, thus precluding the University from making its intended production. The University therefore writes pursuant to the Court's Policies and Procedures to advise the Court of this discovery dispute.

      The Court is familiar with the parties and the facts asserted in Humphries' operative Complaint. Relevant to the present discovery dispute, however, is the following additional and generally undisputed background. Humphries' complaint of misconduct was first heard by the University in May 2019, when an "anonymous complaint" of harassment was received by its Office of Sexual Misconduct Prevention, or "OSMPR." *See* Third Amended Complaint ¶¶ 198-202. That complaint triggered an investigation by OSMPR, which included interviews with Humphries himself; numerous other students (some of whom were student-athletes); and University personnel, many of whom were identified by Humphries as potential witnesses. Facts gathered during those interviews were summarized in OSMPR's Final Investigative Report. Near the conclusion of the investigation, that Report was shown to Humphries and to the Respondents in the matter for review, subject to the express conditions that none would retain a copy and each would agree to maintain the confidentiality of information set forth in the Report. Unbeknownst to OSMPR at the time, and despite being *expressly prohibited* from doing so,

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Chief Judge Matthew W. Brann
May 17, 2022
Page 2

Humphries misappropriated a copy of the Final Investigative Report by apparently taking photos of each individual page of that Report.  The University knows that Humphries disclosed his surreptitiously-compiled copy of the report to his counsel, Attorney Steven Marino, because Attorney Marino attached that Report in unredacted form to a "draft complaint" that he sent to the University shortly before initiating this lawsuit.

      The University's legal department responded to Attorney Marino's "draft complaint" with a letter directing Attorney Marino not to disclose the misappropriated Report, which contained sensitive personal information and personally identifiable information protected by federal law.  Attorney Marino, appearing to understand that he is prohibited from using or disclosing that misappropriated Report, did not attach it to any pleadings filed in this case.  This Court dismissed Humphries claims as to the University and its head football coach on September 24, 2021.  The matter remains active, limited to claims asserted by Humphries against former University student-athlete Damion Barber.

      In the course of discovery in that ongoing matter, Humphries issued to the University a subpoena seeking the production of, among other things, the Final Investigative Report—the same Report that Humphries misappropriated from the University in late 2020.  *See* Attachment A (Humphries' Subpoena).  Affirmatively demonstrating that Humphries and Attorney Marino have, in fact, retained a copy of the Report, the subpoena demands confidential documents discussed in that Report, complete with citations to the specific pages of the Report on which those documents are mentioned.

      The University does not object to producing that Report and other responsive documents (subject to appropriate and necessary redactions) but cannot not do so without adequate confidentiality protections in place.  For that reason, the University requested that Humphries and Barber execute a Stipulated Confidentiality Agreement that would ensure that the Report and other records produced in response to the subpoena are held as confidential, would not be filed on the case docket, and would not be distributed or summarized outside the context of this proceeding.  Counsel for Defendant Barber agreed to execute the Order, but Attorney Marino refused to do so, providing no explanation and offering no alternative terms.

      In order to protect the privacy of the students appearing in the Report and in other responsive records, the non-party University does not intend to produce documents responsive to the subpoena without assurances of confidentiality.  As set forth above, the documents demanded in Humphries' subpoena—including, most materially, the Final Investigative Report—contain personally identifiable information ordinarily protected by the Family Educational Rights and Privacy Act ("FERPA").  Beyond that, OSMPR's interviews with various students as reflected in the Report contain those nonparty students' personal observations and accounts of the purported assault that Humphries alleges to have occurred.  Humphries has *no justifiable reason* for

JONES DAY

Chief Judge Matthew W. Brann
May 17, 2022
Page 3

insisting on the ability to disseminate this information or to use it outside this proceeding—otherwise, he presumably would have said as much in rejecting the University's common-sense confidentiality protections.

Pursuant to the Court's Policies and Procedures, the University requests that the Court schedule a telephonic conference call to address this dispute in advance of any motion practice. The University will be prepared to discuss its request for an order that, first, directs that materials produced by the University in response to Humphries' subpoena will be held as confidential and not disclosed or used outside this proceeding; and second, prohibits Humphries or his counsel from, among other things, disclosing or using the misappropriated Report, which should be subject to the same confidentiality terms as the University's forthcoming production. The University further will be prepared to address the propriety of appropriate and necessary redactions to its intended production, to the extent the Court is inclined to hear the University's position at that time.

The University thanks the Court for its attention to this ripe discovery dispute and will be available for further conference.

Very truly yours,

Matthew A. Kairis

cc:   Steven Marino (*via ECF Service*)
      Joseph Auddino (*via ECF Service*)
      James Urban (*via ECF Service*)
      Katherine McLay (*via ECF Service*)