## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ISAIAH HUMPHRIES,

Plaintiff,

v.

DAMION BARBER,

Defendant.

No. 4:20-CV-00064

(Chief Judge Brann)

### MEMORANDUM OPINION

#### AUGUST 4, 2022

This discovery dispute arose from Isaiah Humphries' demand that The Pennsylvania State University produce five documents connected to its 2019 investigation into Damian Barber's sexual misconduct. The investigation, which was conducted by the University's Office of Sexual Misconduct Prevention and Response, began after a complaint of nonconsensual touching by members of the school's football team in May 2019.[1] In the months that followed, the Office's investigative team interviewed roughly two dozen potential Penn State student-witnesses.[2] Their inquiries touched on what these students knew about interactions between Barber and Humphries, but expanded well-beyond.[3] The interviewers also

---

[1]   Doc. 58 ¶ 198 (Third Amended Complaint).

[2]   Doc. 90-1 ¶ 10 ("During the course of the investigation, my colleagues and I conducted interviews of over two dozen other potential witnesses. Nearly all of those potential witnesses are current or former University students.").

[3]   *Id.* ¶ 11.

asked the witnesses about "their own personal experience with or observations of sexual assault occurring among University student-athletes," "their perception of other student-athletes," their knowledge of reports to coaches or other University staff, and their knowledge of incidents not involving the pair.[4] Over the course of the investigation, the Office also reviewed documentary evidence submitted by witnesses, including a now-dead link to a social media video provided by Humphries.[5] The Office's efforts culminated in a 98-page report, which Penn State contends includes notes covering not only Barber's treatment of Humphries but a host of unrelated matters.[6]

Still, the process of finalizing this Report was not without controversy. Throughout the drafting process, the Office kept its contents confidential, with one exception: both the accusers (including Humphries) and the accused (including Barber) were allowed to review the Report and write a response, which the lead investigator could then include in the final draft.[7] These individuals were nevertheless prohibited from retaining the Report.[8] Penn State contends that Humphries disregarded these oral and written instructions, which it adds expressly prohibited taking photos, by doing just that.[9] This, the University says, it learned

---

[4]   *Id.*
[5]   *Id.* ¶ 12.
[6]   *Id.* ¶¶ 14, 15; *see* Doc. 91 at 3; Doc. 94-1 at 4.
[7]   Doc. 90-1 ¶¶ 16, 17.
[8]   *Id.* ¶ 17.
[9]   Doc. 91 at 4.

after receiving Humphries' Draft Complaint in January 2020 with a copy of the report that appeared to have been photographed page-by-page—a fact it says is reaffirmed by Humphries' citation to specific pages in the subpoena.[10] Setting aside this behind-the-scenes action, the investigative team ended their investigation in September 2019 and finalized its Report on October 1, 2019, forwarding it on to the University's Office of Student Conduct for its assessment of whether any student had violated University policy.[11]

The issue migrated to this Court in mid-January 2020 when Humphries sued Barber, Penn State, and its football coach, James Franklin.[12] After allowing Humphries to amend his complaint four times, including once after a motion to dismiss, I dismissed Penn State and Franklin from the suit, finding that even if Humphries' allegations were true, his legal theories offered no relief.[13] Humphries case against Barber, however, proceeded; and during discovery, he subpoenaed Penn State, requesting five items:

1. The Office of Sexual Misconduct Prevention and Response's Final Investigative Report;
2. The Twitter video provided to the Office by Humphries;
3. A document signed and dated August 15, 2019, wherein several Penn State football players state: "We have not witnessed anyone sexually assault in any way in our locker room";
4. Damion Barber's Investigative Packet; and

---

[10]   *Id.*; *see* Doc. 90-2 at 4.
[11]   Doc. 90-1 ¶¶ 19–21.
[12]   *See generally* Doc. 1.
[13]   *Humphries v. Pennsylvania State Univ.*, 2021 WL 4355352 (M.D. Pa. Sept. 24, 2021); *Humphries v. Pennsylvania State Univ.*, 492 F. Supp. 393 (M.D. Pa. 2020); *see also Humphries v. Pennsylvania State Univ.*, 2021 WL 5792832 (M.D. Pa. Dec. 7, 2021).

5.      Isaiah Humphries' Investigative Packet.[14]

Penn State accepted the subpoena and identified responsive records but, before making its production, asked that Humphries agree not to file the documents on the docket or allow them to be distributed or summarized outside the proceedings.[15] Humphries rejected this request without proposing modified terms.[16] Soon after, the Court convened a telephone conference call with the parties to resolve the dispute and, after no resolution was reached, directed Penn State to file a motion for a protective order.[17]

Penn State has done so, asking that this Court enter an order that limits the disclosure of confidential information outside of trial or trial preparation.[18] In response, Humphries first contends that no protection should be provided. In the alternative, however, he argues that four particular provisions should be changed. He claims one is too limited—that is, the Proposed Order's failure to allow him to disclose confidential information to family members and significant others.[19] And the three others, he says, go too far. On this front, he highlights the Proposed Order's requirement that all potential witnesses agree to be bound by the order; its requirement that he communicate with the University if the materials are requested

---

[14]    Doc. 90-2 at 4.
[15]    Doc. 90-3 at 2; Doc. 84 at 2.
[16]    Doc. 90-3 at 2.
[17]    Doc. 88.
[18]    Doc. 90-4.
[19]    Doc. 94-1 at 19–20.

in a separate legal proceeding and pay to return or destroy them at the case's conclusion; and its supposed requirement that all filings be automatically sealed.[20]

## I.   LEGAL STANDARD

The Federal Rules of Civil Procedure allow "any person from whom discovery is sought" to "move for a protective order." Rule 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[21] But the United States Court of Appeals for the Third Circuit has made plain that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."[22] The requesting party must instead show "that disclosure would work a clearly defined and serious injury."[23] And that "injury must be shown with specificity."[24]

Although they are "neither mandatory nor exhaustive" in determining whether good cause exists, district courts in this circuit typically consider these seven *Pansy* factors.[25]

1.   Whether disclosure will violate any privacy interests.
2.   Whether the information is being sought for a legitimate purpose or for an improper purpose.

---

[20]   *Id.* at 19–22.
[21]   Fed. R. Civ. P. 26(c).
[22]   *See Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).
[23]   *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (cleaned up).
[24]   *Id.*
[25]   *Id.*; *see generally Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994).

3.      Whether disclosure of the information will cause a party embarrassment.

4.      Whether confidentiality is being sought over information important to public health and safety.

5.      Whether the sharing of information among litigants will promote fairness and efficiency.

6.      Whether a party benefitting from the order of confidentiality is a public entity or official.

7.      Whether the case involves issues important to the public.

## II.     ANALYSIS

### A.    *Pansy* Factors

In setting out its arguments on these seven factors, Penn State compares its case to *McCowan v. City of Philadelphia*,[26] *Rosenblit v. City of Philadelphia*,[27] and *McKenna v. City of Philadelphia*.[28] These cases involved a city government; and aside from the sexual misconduct focused *McCowan* decision, they center on race and religious discrimination. But they are nonetheless a fit. In each, the court found that the moving party's interest in the protection of privacy outweighed its opponent and the public's interest in unfettered pretrial disclosure. While much of the analysis centered on the violation of privacy interests, which the court considered the case's "the most important factor" in *McCowan* and *Rosenblit*, this first factor's tentacles also extended to the third and seventh factors.[29] For the third, the courts emphasized that these sorts of investigations involve sensitive matters that open the individuals

---

[26]   2021 WL 1193241 (E.D. Pa. Mar. 30, 2021).
[27]   2021 WL 288887 (E.D. Pa. Jan. 28, 2021).
[28]   2000 WL 1521604 (E.D. Pa. Sept. 29, 2000).
[29]   *McCowan*, 2021 WL 1193241, at *4; *Rosenblit*, 2021 WL 288887, at *6.

involved "up to potential censure and embarrassment."[30] And for the seventh, the courts emphasized that for whatever interest the public may have in smoking out wrongful conduct in public offices, it is counterbalanced by the need to protect the confidentiality of the investigatory process; without it, they believed, witnesses and complainants would be less willing to engage in the process.[31]

A similar approach to the investigatory documents is warranted here. As in *McCowan* and *Rosenblit*, the Court believes that the first factor is of particular importance. The University's investigative materials include sensitive observations unrelated to Barber's mistreatment of Humphries. But perhaps more to the point, each of the documents includes statements that were made by students, about other students. This brings them within the ambit of the Family Educational Rights and Privacy Act of 1974—notwithstanding Humphries' attempt, through bare assertions, to transform the University's Office of Sexual Misconduct Prevention and Response into a law enforcement agency, which would render them unprotected by the Act.[32] Now, this status does not mean that documents cannot be produced or won't be admissible at trial. The Act is not a complete bar. But that the documents qualify as protected education records underscores the privacy interests at stake. The first factor therefore weighs heavily in Penn State's favor.

---

[30]   *McCowan*, 2021 WL 1193241, at *4.
[31]   *Id.* at *5.
[32]   *See* 34 C.F.R. §§ 99.8(a)(1), 99.8(b).

The same can be said of the third factor. The report includes potentially embarrassing personal information about parties and non-parties alike. And the seventh factor is, for Penn State, at worst neutral. Although the need to protect the investigatory process bumps up against a competing public interest in the running of a public entity, here that interest is less pressing than it was in *McCowan*, *Rosenblit*, and *McKenna*. This dispute now involves just two private litigants; and the public arguably has a lesser interest in a partially publicly funded University than it does in its city government or police department. In *McCowan*, *Rosenblit*, and *McKenna*, these privacy and privacy-adjacent interests outweighed the remaining factors, which the courts found either irrelevant or in favor of disclosure.[33] And that is the case here too.

## B.    The Proposed Order's Scope

Humphries' four arguments about the Proposed Order's scope similarly fail. I'll take them one by one.

First, there is Humphries' contention that, by requiring witnesses he shares the report with to agree to be bound, the Proposed Order "unreasonably and severely limits [his] ability to present Confidential Information to material witnesses."[34] But the problem for Humphries is that the Proposed Order does no such thing. It simply

---

[33]   *See McCowan*, 2021 WL 1193241, at *4–5; *Rosenblit*, 2021 WL 288887, at *6–7; *McKenna*, 2000 WL 1521604, at *2–3.

[34]   Doc. 94-1 at 19.

requires that these witnesses agree not to disclose the information that they are given outside of these proceedings. This limits further—not initial—disclosure.

Second, there is Humphries' claim that the Proposed Order's failure to expressly allow him to disclose confidential information to his family and any significant other "is not consistent with the reasonable expectations of human nature and imposes a condition which is not practicably achievable."[35] But this reasoning hardly warrants a special carve-out. Under the Proposed Order's terms, confidential information can be disclosed to family members and significant others when they are material witnesses or if there is an otherwise legitimate need.[36] That suffices. But to the extent that these individuals need and have access, they too should have to maintain confidentiality.

Third, there is Humphries' argument that the Proposed Order is too broad because it requires him to notify the University if the confidential materials are requested in a separate legal proceeding and to return or destroy these materials at his expense when the case ends.[37] But the Court fails to see—and Humphries fails to explain—how this notice and return-or-destroy requirement asks too much. Notice requires only an email. And returning or incinerating this small batch of documents seems unlikely to be onerous.[38]

---

[35]   *Id.* at 19–20.
[36]   *See* Doc. 90-4 ¶¶ 6(c), 6(h). To dispel any confusion, if Humphries' father does not fall into the first category, he falls into the second.
[37]   Doc. 94-1 at 20.
[38]   Penn State has still expressed a willingness to confer on the costs—the parties should do so.

Fourth, and finally, there is Humphries' position that the Proposed Order is too broad because it requires that any filing containing confidential information be filed under seal.[39] Now, if that were the case, Humphries would be correct.[40] But Humphries misreads the term. The Proposed Order does not require automatic sealing. It simply requires that Humphries or Barber "move to file" the documents under seal.[41] Once that occurs, the Court will decide whether there is good cause to do so.

## III.   CONCLUSION

In sum, Penn State's motion for a protective order is granted and its Proposed Order is adopted in full. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[39]   Doc. 94-1 at 20–22.
[40]   *See McCowan*, 2021 WL 1193241, at *6.
[41]   Doc. 90-4 ¶ 12.