IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISAIAH HUMPHRIES, | No. 4:20-CV-00064 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| DAMION BARBER, | |
| Defendant. | |

MEMORANDUM OPINION

JANUARY 25, 2024

I.  BACKGROUND

A.  Relevant Factual Background[1]

In January 2018, Isaiah Humphries matriculated to The Pennsylvania State University as a freshman, accepting a scholarship offer to play for the Penn State football team.[2] Before the year was out, Humphries left Penn State, transferring to the University of California at Berkeley in December 2018.[3] In mid-April 2019, Humphries reported to Penn State Police that, while a member of the football team,

---

[1] As discussed below, *infra* Section II, the Court views the record evidence in the light most favorable to the non-moving party, Humphries.
The Court will also largely refrain from identifying individuals other than the parties due to the nature of the allegations. Much of the evidence cited by the parties in their papers is subject to a protective order entered by the Court on August 4, 2022. Doc. 97.
[2] OSMPR Report, Def. Ex. F, Sealed Doc. 124-7 at 6; Big Ten Tender, Pl. Ex. 14, Sealed Doc. 130-14.
[3] OSMPR Report 6.

he, and at least two others, had been sexually harassed by teammates, including Damion Barber.[4] The other identified victims, who were then current members of the Penn State football team, denied that they had been harassed.[5] On May 22, 2019, a Penn State Police Detective generated an Incident Report, noting that, despite repeated requests, Humphries had failed to provide more specific details regarding the alleged harassment.[6]

The purpose of the Incident Report form, also called a "share report form," was to notify the Office of Sexual Misconduct Prevention & Response of a potential incident that may violate the student Code of Conduct.[7] Following the receipt of the Incident Report, the OSMPR undertook an investigation of Humphries' complaints.[8] That investigation was led by Yvette Wilson and involved interviewing Humphries, the other purported victims, and several potential witnesses, including other members of the Penn State football team and members of the coaching staff.[9]

When interviewed by Wilson, Humphries stated that, starting in January 2018, Barber and another teammate would attempt to grab his genitals or hump him while in the shower and threaten to rape him.[10] Humphries said that he was able to get

---

[4] OSMPR Incident Form, Pl. Ex. 1, Sealed Doc. 130-1.
[5] Id.
[6] Id.
[7] Deposition of Yvette Wilson, Def. Ex. D, Sealed Doc. 124-4 at 49:3-12.
[8] See Aug. 7, 2019 Letter from Y. Wilson to D. Barber, Pl. Ex. 5, Sealed Doc. 130-5.
[9] See generally OSMPR Report.
[10] Id. at 7-8.

away from his harassers before any of them were able to grab his genitals, but that they had made "slight contact" with his penis.[11] Humphries also said that Barber and the other harassers would overpower him, throw him to the ground, and get on top of him, occasionally while he was unclothed or wearing only a towel.[12] Humphries said that this was consistent with abuse suffered by other teammates.[13] He also claimed that players would frequently get "a penis to their butts or a grabbing of their penis" by Barber and that Barber would regularly put his penis in teammates' faces and even "slap[ed] a couple [teammates] in their faces with his penis."[14] Humphries said that he reported the harassment to several coaches to no avail.[15] Though "being at Penn State was hell," and he stopped eating at one point while at Penn State, Humphries declined assistance or resources from the Title IX office.[16]

Wilson also interviewed two other individuals who were identified as victims by Humphries.[17] One of the purported victims stated that, while players would horse around and "hit[] each other in the 'nuts' and 'butts,'" it was "not something uncomfortable."[18] He specifically identified Barber and two other teammates who would participate in this "horse play" and that, while he never witnessed any

---

[11] *Id.*
[12] *Id.* at 8.
[13] *Id.*
[14] *Id.* at 9.
[15] *Id.* at 9, 11.
[16] *Id.* at 13.
[17] *Id.* at 13-17.
[18] *Id.* at 14.

humping, individuals jumping on other players, or individuals putting their genitals in others' faces, he had heard of such things occurring.[19] The other purported victim said that Barber had wrestled him and pinned him to the ground on two occasions, but that "no one took it seriously."[20] He did not recall Barber ever humping him or anybody else, or anybody putting their genitals in another's face.[21]

The witnesses interviewed during the investigation largely characterized Barber's behavior as "not out of the ordinary,"[22] "just messing around,"[23] "clown[ing] around"[24] and that, though Barber could be "overly aggressive," they "never saw anything that crossed a line."[25] During the OSMPR investigation, the Office received, signed by several players, a "Petition of Sexual Allegations" which stated: "We have not witnessed anyone sexually assaulted or sexually assaulted in anyway in our locker room [sic]."[26]

However, at least one witness confirmed that Barber did "pretty much everything" that had been included in the initial report, including dozens of instances of hazing new players by threatening them, wrestling them while he was naked, straddling, or humping players while he was naked, and putting his penis in the faces

---

[19] *Id.*
[20] *Id.* at 16.
[21] *Id.* at 16-17.
[22] *Id.* at 22.
[23] *Id.* at 41.
[24] *Id.* at 45.
[25] *E.g., id.* at 53.
[26] *Id.* at 56-58, 102-109.

of others.[27] The witness described the incidents as "just a Damion thing" and noted that the incidents occurred from Spring 2018 until the report came out during the Spring of 2019.[28]

Another witness noted that, when the report came out, some individuals on the team thought it was about Barber due to the nature of the allegations.[29] This witness also confirmed that he had seen Barber single out the two victims identified by Humphries and that Barber would wrestle and hump them.[30] He also relayed that Barber "would often dance around in the locker room naked, chase guys and give them hugs while he was naked or in tub shorts" and that he had seen Barber "rubbing himself like he was masturbating."[31]

Even those who had insisted that nothing Barber had done rose to the level of harassment would occasionally confirm that, though they did not witness any of the alleged acts such as dancing nude and inappropriately, "Damion is that way and that nature"[32] and that they assumed that Barber humping other players was "just playful" and "not out of the ordinary."[33]

---

[27] *Id.* at 19-21.
[28] *Id.* at 21.
[29] *Id.* at 32.
[30] *Id.* at 33.
[31] *Id.* at 34.
[32] *E.g., id.* at 44.
[33] *E.g., id.* at 26.

On October 1, 2019, after concluding her investigation, Wilson forwarded her report to the Office of Student Conduct "for review and processing as appropriate."[34] None of the three identified victims, including Humphries, responded to communications from the OSC asking if they wished to participate in the student conduct process.[35] Barber also declined to provide a mitigation statement and accepted a charge of Harassment.[36] Humphries was notified of the outcome and indicated that he was satisfied; the other two victims did not respond.[37]

B.   Procedural Background

On January 13, 2020, Humphries initiated this litigation against Barber, The Pennsylvania State University, and Penn State Football Head Coach James Franklin.[38] Following three attempts to amend his Complaint, the Court granted Penn State and Franklin's Motion to Dismiss the counts against them with prejudice.[39] In the operative Complaint, Humphries brings six claims for relief against Barber: Negligence *Per Se* (Count III), Negligence (Count VI); Assault and Battery (Count VII); Negligent Infliction of Emotional Distress (Count VIII); Intentional Infliction

---

[34]   *Id.* at 77.
[35]   OSC Case File, Sealed Doc. 130-10, at 4.
[36]   *Id.*
[37]   *Id.*
[38]   Compl., Doc. 1.
[39]   Sept. 24, 2021 Ord., Doc. 76.

6

of Emotional Distress (Count IX); and Civil Conspiracy (Count X).[40] Barber has filed a motion for summary judgment on each claim, which Humphries has opposed.[41] The motion is ripe for disposition.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  As expressed by the Supreme Court of the United States in *Celotex Corp. v. Catrett*, summary judgment is required where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" on an issue that the "party will bear the burden of proof at trial."[42] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[43]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[44] When the movant properly supports its

---

[40] Third Am. Compl. ("TAC"), Doc. 58. The Court has jurisdiction over these claims under 28 U.S.C. § 1332, as Humphries is a citizen of the State of Maryland and Damion Barber is a citizen of the Commonwealth of Pennsylvania. *Id.* ¶ 3.
[41] Mot. Summ. J. ("MSJ"), Doc. 123; Br. Supp. MSJ ("MSJ Br."), Sealed Doc. 124; MSJ Opp., Sealed Doc. 130. Barber did not file a Reply brief.
[42] 477 U.S. 317, 322 (1986).
[43] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[44] *Celotex*, 477 U.S. at 323.

motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved by only a finder of fact because they may reasonably be resolved in favor of either party."[45] The United States Court of Appeals for the Third Circuit explains that the nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[46] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[47]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[48] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[49] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[50] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[51]

---

[45] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[46] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[47] *Port Auth. Of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).
[48] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 422, 448 (1871)).
[49] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[50] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).
[51] Fed. R. Civ. P. 56(c)(3).

Local Rule 56.1 requires all motions for summary judgment to be "accompanied by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." The party opposing summary judgment must then include with its papers an answer to the movant's statement of facts in which it identifies, in corresponding numbered paragraphs, those material facts which the nonmovant contends there is a genuine issue to be tried.[52] "Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements."[53] Material facts in the movant's statement "will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."[54]

### III. DISCUSSION

#### A. Local Rule 56.1

Before reaching the merits, Humphries argues that Barber's Motion should be denied for failure to comply with Local Rule 56.1. Section III of Barber's Motion is titled "Material Contents of Discovery (L.R. 56.1)" which is neither a separate statement as required by Rule 56.1 nor consistent with the Rule's requirement that the statement list material facts "as to which the moving party contends there is no

---

[52] LR 56.1.
[53] *Id.*
[54] *Id.*

genuine issue to be tried." Quite often, material contents of discovery will be those that demonstrate that there are genuine issues to be tried.

Nevertheless, Section III of Barber's Motion is in numbered paragraphs and does contain citations to the record. Though not procedurally correct, it is in a format that Humphries could have responded to without much effort. To the extent that it includes facts as to which Humphries believes there is a genuine issue to be tried, Humphries could have simply denied them with citations to the record.[55]

Rule 56.1's purpose is to "structure a party's summary judgment legal and factual theory into a format that permits and facilitates the court's direct and accurate consideration to the motion."[56] Had Humphries responded to Barber's statement of facts, imperfect as it may be, it would have likely sufficed to "enable 'the court to identify contested facts expeditiously.'"[57] As such, it seems that there is at least an equally strong argument that each of the statements in Section III of Barber's Motion should be deemed admitted.[58]

Accordingly, the Court finds that Barber's failure to comply with Local Rule 56.1 is not so egregious as to warrant denial of his motion.

---

[55] *Williams v. Pennsylvania State University*, --- F. Supp. 3d ----, 2023 WL 6626789, at *3 (M.D. Pa. 2023).
[56] *Id.* at *4 (quoting *Park v. Veasie*, 2011 WL 1831708, at *3 (M.D. Pa. May 11, 2011); *Hartshorn v. Throop Borough*, 2009 WL 761270, at *3 (M.D. Pa. Mar. 19, 2009)).
[57] *Id.* (quoting *Park*, 2011 WL 1831708, at *3; *Pinegar v. Shinseki*, 2009 WL 1324125, at *1 (M.D. Pa. May 12, 2009)).
[58] *See id.* at *3 (observing that a court may deem admitted facts to which a non-movant fails to properly respond) (citing *Conn v. Bull*, 307 F. App'x 631, 633 (3d Cir. 2009)).

### B. Negligence

Pennsylvania courts have defined negligence *per se* as "conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances."[59] Where a plaintiff bases a claim of negligence *per se* on a violation of a statute, "the following four requirements must be met:"

> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;
> (2) The statute or regulation must clearly apply to the conduct of the defendant;
> (3) The defendant must violate the statute or regulation;
> (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.[60]

Barber argues that the Humphries' negligence *per se* claim fails because the statute it is predicated on, the Timothy J. Piazza Antihazing Law,[61] was not in effect until November 18, 2018, ten days before Humphries left Penn State on November 28, 2018.[62] Therefore, Barber suggests that he is entitled to summary judgment because there is no evidence to support a violation of the Antihazing Law in that ten day period.[63]

---

[59] *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. 2014).
[60] *Id.* (citing *Mahan v. Am–Gard, Inc.,* 841 A.2d 1052, 1058–1059 (Pa. Super. 2003)).
[61] 18 Pa. C.S. § 2801, *et seq.*
[62] MSJ Br. 12-13.
[63] *Id.*

In its Opinion denying Barber's Motion to Dismiss, the Court observed that "any alleged hazing that took place before November 18, 2018 is evaluated under the old antihazing statute," 24 P.S. § 5351-54.[64] Nothing in Barber's discussion of Humphries' negligence *per se* claim, which is devoid of any references to the record or cited authority, gives the Court cause to deviate from its prior holding regarding the applicability of the prior statute. Further, Barber makes no argument regarding his potential liability under the prior statute, nor did he file a reply brief after Humphries pointed this out.[65]

Humphries is the party with the burden of proof on the underlying claim; therefore, Barber could "simply 'point to the lack of any evidence supporting [Humphries'] claim.'"[66] However, by improperly framing Humphries' claim as restricted to events between November 18, 2018 and November 28, 2018, Barber fails to clear even this low bar.

C. **Common Law Negligence**

A plaintiff claiming negligence must show "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3) the breach resulted in injury to the plaintiff, and (4) the plaintiff suffered an actual loss or damage."[67]

---

[64] *Humphries v. Pennsylvania State University*, 492 F. Supp. 3d 393, 403, 406 (M.D. Pa. 2020).
[65] MSJ Opp. 24-25.
[66] *Smith v. Carroll*, 602 F. Supp. 2d 521, 524-25 (D. Del. 2009) (quoting *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1581 (3d Cir.1992)).
[67] *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 221 (Pa. 2018) (quoting *Martin v. Evans*, 711 A.2d 458, 462 (Pa. 1998), numbering added).

Barber argues that Humphries has failed to "plead . . . how he was hazed or harassed" by Barber and another member of the football team on June 14, 2018, the only alleged instances of such hazing or harassment.[68]

Humphries refers to the Penn State Office of Sexual Misconduct Prevention & Response's investigation into allegations made by him and others into incidents of hazing and harassment by Barber and other members of the football team.[69] Following OSMPR's investigation, Yvette Wilson referred the matter to the Office of Student Conduct, which sanctioned Barber for Harassment.[70] A reasonable jury could conclude from the records of Penn State's investigation and punishment of Barber that he hazed and harassed Humphries.

Accordingly, the Court also rejects Barber's claims that Humphries did not suffer any injury, actual loss, or damage.[71] To the extent that Barber personally hazed and harassed, or encouraged others to haze and harass Humphries by, among other things, committing or threatening sexual assault, that is sufficient to establish an injury. Further, the Court is unpersuaded that Humphries rejecting Wilson's offers for counseling or other resources after he had transferred from Penn State to UC Berkeley is particularly compelling evidence that Humphries did not suffer an injury; especially considering, according to Humphries, it was the harassment by

---

[68] MSJ Br. 13.
[69] *See generally* MSJ Opp. 2-11.
[70] Pl. Ex. 10, Sealed Doc. 130-10.
[71] MSJ Br. 14.

Barber that compelled him to transfer. A reasonable jury could conclude that, by being forced to prematurely end his football career at Penn State, Humphries had suffered damages caused by Barber's actions. Though UC Berkeley may "arguably" be "a more prestigious university,"[72] that it is arguable necessarily means it is not undisputed, and thus an issue for a jury.[73]

### D. Assault and Battery

"In Pennsylvania, an '[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.'"[74] "An assault requires both the actor's intent to place the individual in imminent apprehension of harmful or offensive contact and the individual's actual imminent apprehension."[75] "[B]attery is defined as an intentional harmful or offensive contact with the person of another."[76] "The fact that contact occurs without

---

[72] *Cf. id.* 17.
[73] This also does not address damages that may have flowed from Humphries being ineligible to play football for a year following his transfer. *E.g.*, TAC ¶ 226. Further, the Court notes that Penn State's football program was, by at least one measure, more prestigious than UC Berkeley's. *See* College Football Playoff, *Week-by-Week CFP Selection Committee Rankings: 2017* (Dec. 3, 2017), https://collegefootballplayoff.com/sports/2021/9/7/wk-x-wk-rankings-2017.aspx; College Football Playoff, *Week-by-Week CFP Selection Committee Rankings: 2018* (Dec. 2, 2018), https://collegefootballplayoff.com/sports/2021/9/7/wk-x-wk-rankings-2018.aspx. The College Football Playoff Rankings would be "generally known" within the Middle District of Pennsylvania and certainly to the parties. *See* Fed. R. Evid. 201(b).
[74] *Betz v. Satteson*, 715 Fed.Appx. 213, 217 (3d Cir. 2017) (quoting *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994)).
[75] *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 365–66 (E.D. Pa. 2006).
[76] *Martin-McFarlane v. City of Philadelphia*, 299 F. Supp. 3d 658, 670 (E.D. Pa. 2017) (quotations and citations omitted).

14

consent is sufficient to establish that it is offensive, and no intent to harm the plaintiff need be established."[77] "In other words, battery is an offensive touching without consent, and assault is an action that makes a victim believe that a battery is about to occur."[78]

Barber argues that he is entitled to summary judgment on Humphries' assault and battery claims because numerous witnesses stated that Barber never assaulted Humphries and that Wilson testified that no one corroborated Humphries' claims.[79] Further, Barber says argues that Humphries' claims are due less "weight" because "there are several witnesses and one coach that gave statements indicating that [Humphries] is a serial liar."[80]

As an initial matter, Barber's arguments that Humphries is not credible, and therefore his claims are due less weight, are inappropriate on a motion for summary judgment. It is axiomatic that a court cannot weight the evidence or "make credibility-related findings when ruling on a motion for summary judgment."[81] Further, Barber misstates Wilson's testimony, which was that she could not recall at the time of her deposition, which was four years after her investigation, whether

---

[77] *Id.* (quoting *Nace v. Pennridge Sch. Dist.*, 185 F.Supp.3d 564, 584 (E.D. Pa. 2016)).
[78] *Id.*
[79] MSJ Br. 14.
[80] *Id.*
[81] *Howard v. Blalock Elec. Svc. Inc.*, 742 F. Supp. 2d 681, 707 (W.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1024 (3d Cir. 2008)).

Humphries' allegations were corroborated by other witnesses,[82] and the record, which does offer some support for Humphries' claims.[83]

### E.   Emotional Distress

Under Pennsylvania law, a plaintiff may recover damages for the negligent infliction of emotional distress "[w]here . . . a plaintiff sustains bodily injuries, even though trivial or minor in character, which are accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff."[84] A plaintiff alleging intentional infliction of emotional distress must show the following: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe.[85] To recover under either theory, a plaintiff must demonstrate manifestation of physical injury.[86]

---

[82] MSJ Br. 14 (noting that Wilson testified at her deposition that no one corroborated Humphries' claims of unwanted touching by Barber) (citing Wilson Dep, Def. Ex. D, Sealed Doc. 124-4, 262:4-263:4).

[83] *E.g.*, OSMPR Report at 21 (noting that Barber hit "all freshman" "in the penis area or buttocks").

[84] *Shumosky v. Lutheran Welfare Services of N.E. PA, Inc.*, 784 A.2d 196, 201 (Pa. Super. 2001) (quoting *Brown v. Philadelphia College of Osteopathic Medicine,* 674 A.2d 1130, 1135–36 (Pa. Super. 1996); *Potere v. City of Philadelphia,* 112 A.2d 100, 104 (Pa. 1955)).

[85] *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997).

[86] *Robinson v. May Dept. Stores Co.*, 246 F. Supp. 2d 440, 445 (E.D. Pa. 2003) (citing *Redland Soccer Club, Inc. v. Department of the Army of the United States,* 55 F.3d 827, 848 (3d Cir.1995); *Smith v. Sch. Dist. of Phila.*, 112 F.Supp.2d 417, 428-29 (E.D.Pa.2000); *Sonlin v. Abington Memorial Hospital,* 748 A.2d 213, 217 (Pa.Super.2000); *Armstrong v. Paoli Memorial Hospital,* 633 A.2d 605, 609 (Pa .Super. 1993) (NIED); *Silver v. Mendel*, 894 F.2d 598, 607 n. 19 (3d Cir. 1990); *McCracken v. R.J. Reynolds Tobacco*, 821 Fed. Appx. 122 (3d Cir. 2020) (IIED).

Indeed, the Court previously noted that, to survive summary judgment, Humphries would need to present competent medical evidence of causation and severity of his emotional distress."[87] Humphries has not done so, instead suggesting that the Court should not require "expert testimony as to causation, nor injury, where there is an obvious causal relationship between the injury complained of and the act of the defendant; and the mental and emotional injury is such that laypersons can comprehend it without the assistance of an expert."[88]

However, Humphries has not presented any evidence of "the injury complained of." There is no evidence that any emotional distress Humphries suffered manifested in a physical injury. In *Montgomery v. Bazaz-Sehgal*, which Humphries cites in support, the Pennsylvania Supreme Court held that the plaintiff did not need to present medical evidence because "[t]he alleged emotional injuries [were] obvious and clearly connected to [the unwanted implantation of a] prosthesis."[89] That is not the case here. Even if the Court were to assume that any emotional injuries Humphries suffered must be due to the acts of Barber, Humphries still must produce evidence of a physical manifestation of those emotional injuries.

---

[87] Oct. 2, 2020 Mem. Op., Doc. 56 at 26 (quoting *Silver v. Mendel*, 894 F.2d 598, 607 n. 19 (3d Cir. 1990)).
[88] Opp. 29 (citing *Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 752 (Pa. 2002)).
[89] 798 A.2d at 751.

### F. Civil Conspiracy

In order to state a claim for civil conspiracy, Humphries must show: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage."[90] He must also show "that the alleged conspirators acted with malice."[91]

Even if the Court assumes that Humphries was harassed by multiple people, that alone does not show that the harassers agreed to do so.[92] The fact that two individuals each did the same thing, even at the same time, is insufficient to establish a conspiracy, and Humphries has failed to adduce any facts which show that Barber and any other individual possessed the requisite common purpose.[93]

---

[90] *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000) (citing *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super. 1998)).

[91] *Goodwin v. Moyer*, 549 F. Supp. 2d 621, 628 (M.D. Pa. 2006) (citing *Corrigan v. Methodist Hosp.*, 853 F.Supp. 832, 837 (E.D. Pa. 1994)).

[92] *See Corrigan v. Methodist Hosp.*, 853 F. Supp. 832, 836-37 (E.D. Pa. 1994) (observing that the tort of civil conspiracy requires "to or more person combined or agreed with intent to do an unlawful act").

[93] *Cf. Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 473 (Pa. 1979) ("The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy.") (citations omitted).

## IV. CONCLUSION

Defendant Damion Barber's Motion for Summary Judgment is granted in part and denied in part; the Motion is granted as to Counts III, VI, and VII and denied as to Counts VIII, IX, and X.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge