IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| ISAIAH HUMPHRIES,<br><br>Plaintiff,<br><br>v.<br><br>DAMION BARBER,<br><br>Defendant. | Case No. 4:20-CV-0064-MWB<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE***

This Memorandum sets forth the principles behind the relief sought in Defendant's Motion *In Limine*.

**FACTUAL BACKGROUND**

This Honorable Court granted in part and denied in part (Docket entry 135) Defendant's summary judgment motion. The three (3) remainder counts: Negligence per se, Common Law Negligence and Assault/Battery (counts III, VI, VIII) in Plaintiff's fourth amended complaint, are set for trial before this Honorable Court on June 2, 2025.

Following the final pretrial conference set by Court Order on May 5, 2025 (Plaintiff counsel did not appear); the Court entered an Order dated May 6, 2025 allowing the parties to file an omnibus motion *in limine* based on the contents of the pretrial memorandum filed by Plaintiff.

**ARGUMENT**

1. Conduct of the University or University Personnel

    A. Defendant believes that Humphries is intending to put on trial the reputations of Penn State and head football coach James Franklin, even though each were long

ago dismissed from the case on the merits. At this point, what remains in the case are allegations that Damion Barber committed torts against Humphries, claims to which the evidence should be limited. In contrast, any reference to Franklin, his coaching staff, or the culture on the football team or in the locker room should be excluded from evidence. The actions of the University or its coaches (or perceived failures to act) are <u>not</u> at issue in the claims that remain for adjudication at trial. Evidence regarding their actions (or perceived failures to act) is irrelevant, and therefore inadmissible, pursuant to Fed. R. Evid. 401; and any nominal value of such evidence is substantially outweighed by risk of confusing the issues and misleading the jury such that the evidence is inadmissible pursuant to Fed. R. Evid. 403.

2. **Conduct of Student-Athletes *Other Than* Barber**

   A. Humphries contends in his Complaint that, in addition to Barber, he was targeted by Parsons, Gross-Matos, and Luketa. None of those former student-athletes are Defendants, and the Court dismissed Humphries's claim of civil conspiracy, which is the only claim to which their conduct may have been relevant. The Court should preclude evidence relating to the conduct of these former student-athletes because it is not relevant to the interactions between Humphries and Barber and therefore is inadmissible pursuant to Fed. R. Evid. 401; and any nominal value of such evidence is substantially outweighed by risk of confusing the issues and misleading the jury such that the evidence is inadmissible pursuant to Fed. R. Evid. 403.

3. **Conduct Directed to Student-Athletes *Other Than* Humphries**

   A. Humphries has contended that Barber targeted student-athletes *other than* Humphries. Those other student-athletes, however, are not parties in this matter,

have never asserted legal claims, and evidence of any interactions between those individuals and Barber is not relevant to whether Barber committed torts toward Humphries. The Court should preclude evidence of Barber's actions toward student-athletes other than Humphries because, first, it is irrelevant to whether Barber committed torts toward Humphries and therefore inadmissible pursuant to Fed. R. Evid. 401; second, any nominal value of such evidence is substantially outweighed by risk of confusing the issues and misleading the jury such that the evidence is inadmissible pursuant to Fed. R. Evid. 403; third, this evidence purports to establish other "wrongs" or "acts" and therefore is inadmissible pursuant to Fed. R. Evid. 404(b); and fourth, introduction of this evidence will trigger a series of mini-trials separate and apart from the issues between Humphries and Barber.

4. **The Unredacted OSMPR Report**

   A. The Court Ordered (docket entry 97) that University documents should be redacted to protect student non-parties. Documents were produced pursuant to this Order and obtained by Humphries during discovery. Those documents were redacted. The Court should preclude Humphries from entering as evidence his misappropriated and unredacted version of OSMPR's Draft Investigative Report.

5. **Jerry Sandusky**

   A. To the extent that Humphries intends to invoke Jerry Sandusky's name during his case-in-chief and to liken his experience to Sandusky's victims, The Court should preclude this evidence because events occurring under Sandusky, who was arrested in 2011 and worked under different University and athletics regimes, are irrelevant to Humphries's claims pursuant to Fed. R. Evid. 401.

    B.    The Court also should preclude this evidence, even to the extent Humphries contends that teammates said they would "Sandusky" him, because the use of the Sandusky name is of nominal probative value, and such value is substantially outweighed by risk of unfair prejudice, confusing the issues, and/or misleading the jury. *See* Fed. R. Evid. 403. This is particularly true because no intended witness possesses personal knowledge of the Sandusky incident(s), thus requiring the jury to rely upon its own knowledge of the incident(s) to contextualize evidence.

6. **Other Incidents Involving Barber**

    A.    Humphries intends to introduce a number of documents relating to "cases" opened by OSMPR or other bodies within Student Affairs upon receipt of allegations of misconduct by Barber.

        1.    Three cases involve allegations of sexual assault, dog in campus housing and assault; unrelated to Humphries, but University records either state that no charge resulted from the allegation (P-09, P-10) or contain no indication that any charge or discipline resulted from the allegation (P-08).

    B.    The Court should preclude Humphries from entering evidence of Barber's other, alleged acts, whether via documents or testimony of University witnesses, because:

        1.    Evidence of alleged misconduct *unrelated to Humphries* is inadmissible pursuant to Fed. R Evid. 401 and 403, especially considering that no case resulted in a finding of misconduct by Barber.

        2.    This evidence also is inadmissible pursuant to Fed. R. Evid. 404(b), which states that evidence of "any other … wrong, or act is not admissible" in a civil matter as character evidence and to show that, on a different occasion, the person acted in accordance with that character. University records do

        not show that Barber actually engaged in any "wrong" or "act," but even if they did, evidence related to those cases is inadmissible.

        3.    Introduction of this evidence will trigger a series of mini-trials separate and apart from the issues between Humphries and Barber.

7. **Other Cases Involving the University**

   A. The University has been involved in three other football-related lawsuits since 2019 in which Humphries' attorney (Mr. Marino) served as plaintiff's counsel—one filed by former Director of Athletic Medicine Scott Lynch (removed from that role effective March 1, 2019) and two others filed by former Associate Athletic Director and Football Trainer Tim Bream (who resigned effective February 28, 2018). Humphries has claimed no connection to either Lynch or Bream.

   B. The University also has been involved in a fourth football-related lawsuit since 2019 – a *pro se* case filed by former Penn State football player Ellison Jordan for alleged medical malpractice relating to a purported knee injury. That case was dismissed, after which the Jordan Family filed another Writ of Summons against the University back in 2023 (November 13, 2023), but has taken no action whatsoever to file a Complaint or prosecute the matter. Humphries has claimed no connection to Jordan.

   C. The Court should preclude this evidence or argument related to these matters because (a) they are not relevant to Humphries's claims, *see* Fed. R. Evid. 401; and (b) any probative value of this evidence is substantially outweighed by risk of unfair prejudice, confusing the issues, and/or misleading the jury, *see* Fed. R. Evid. 403.

8. **Hazing and Hazing Law References**

   A. Humphries and his counsel should be precluded from entering evidence or making argument related to other examples of hazing activity that may have occurred at the University or within other organizations (oftentimes relating to fraternities).

   B. The Court also should preclude Humphries and his counsel from specifically referencing or relying on the "Timothy J. Piazza Antihazing Law," or the circumstances on Penn State's campus that contributed to the passing of that law, as that version of the state's statutory prohibition against hazing only was in effect on or after November 19, 2018 (e.g., at most the final 10 days of Humphries' tenure at Penn State). All references to the state's statutory prohibition against hazing should refer to the version of the statute ("Pennsylvania Antihazing Statute") that predated the Piazza law, and Humphries' counsel should make no reference to Piazza.

   C. The Court should preclude evidence or argument related to the above because (a) this evidence or argument is not relevant to Humphries's claims, *see* Fed. R. Evid. 401; and (b) any probative value of this evidence is substantially outweighed by risk of unfair prejudice, confusing the issues, and/or misleading the jury, *see* Fed. R. Evid. 403.

9. **Damages Evidence**

   A. Humphries suggested in his Pre-Trial Memorandum that he: (a) underwent "outpatient healthcare and medical evaluations"; (b) incurred medical expenses for diagnosis, treatment and care"; and (c) suffered "potential loss of [NIL] income" he may have earned had he stayed at the University. However, Humphries states in the Pre-trial memorandum: "present disability - none applicable",

        "hospitalization, convalescence- none applicable", "summary of testimony of expert witnesses - none applicable."

    B.    The Court should preclude evidence supporting Humphries's demand for damages related to medical treatments because: (a) Humphries stated for the *first time* in his Pre-Trial Memorandum that these injuries or damages resulted from Barber's (as opposed to the University's, *see* Third Am. Compl. ¶ 228-230) conduct; and (b) Humphries produced no evidence in discovery to support his claims, such as receipts or statements of expenses or diagnoses.

    C.    The Court should preclude evidence supporting Humphries's demand for NIL-related damages because (a) Humphries asserted this demand for the *first time* in his Pre-Trial Memorandum; (b) though listed as "special monetary damages," Humphries lists no expert witness or documentation to support his demand; (c) with no such evidence, this demand is purely speculative, particularly considering that Humphries continued his career at other institutions (including the University of California) and otherwise was ineligible for NIL compensation prior to July 2021.

10.    **Witness Leonard Humphries**

    A.    Leonard Humphries has no direct knowledge of the allegations against Barber. He has never spoken to Barber, nor has he witnessed any of the allegations his son claims. Humphries intends to testify about conversations he claims he had with assistant coaches and head coach Franklin. Those are not only hearsay but irrelevant because the only party to this suit is Barber. The vague, unidentified dates, times, or parties allegedly involved may or may not have been allegations against Barber. All of his testimony should be inadmissible under Fed. R. Evid. 401 and 403 as not being relevant to the claims against Barber and prejudicial, confusing/misleading

the jury. In addition, Leonard Humphries is not a medical professional any testimony offered as to his son's health should be inadmissible for the same reasons as noted above in this section.

## XI.     Depositions

A.     Humphries proposed jury instructions include an instruction that addresses depositions that were read into the record without testimony from that witness at trial. Pursuant to Federal Local Civil rules; Counsel for Humphries is required to file a notice with the Court on or before the final pretrial conference. That was not done by Humphries' counsel. Therefore, any and all depositions Humphries may wish to read into the record should be inadmissible for failure to follow the Federal Local Rule, LR 30.10 Depositions, Certificate of Conference to Remove Objections. If an oral or videotape deposition is to be used at trial, counsel for the party who intends to introduce such deposition shall file a certificate with the court at the final pretrial conference stipulating that the attorney has conferred with counsel for the opposing party in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact. It shall be the duty of counsel to make good faith efforts to remove such portions of such depositions prior to trial. If a videotape transcript is not available, counsel shall preview the videotape in order to comply with this rule. If the court finds that any counsel failed in good faith to seek to remove such portions, the court may make such order as is just, including an order that the entire deposition be read against a party, or that the entire deposition be excluded.

## **CONCLUSION**

Defendant Damian Barber respectfully submits this Motion and its Memorandum in support and asks this Court to enter an order consistent with the Federal Rules of Evidence as discussed *supra*.

Respectfully submitted,


*/s/ Anthony G. De Boef*
Anthony G. De Boef, Esquire