# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISAIAH HUMPHRIES, | No. 4:20-CV-0064 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| DAMION BARBER, | |
| Defendant. | |

# MEMORANDUM OPINION

### MAY 22, 2025

## I.   BACKGROUND

Plaintiff Isaiah Humphries brought this suit against Defendant Damion Barber (and other parties to whom I granted summary judgment) on January 13, 2020.[1] After several years of litigation, I denied Barber's motion for summary judgment on Counts III (negligence *per se*), VI (common law negligence), and VII (assault and battery),[2] and the case was set for a jury trial beginning on Monday June 2, 2025.[3] All of the claims arise from Barber's alleged hazing and bullying of Humphries when the two men were members of The Pennsylvania State University ("Penn State") football team in the fall of 2018.

---

[1] Doc. 1 (Compl.).
[2] Doc. 135 (Summ. J. Op.).
[3] Doc. 163 (Sch. Order).

When I set the case for trial, I also set a motion in limine deadline of February 24, 2025.[4] Neither party submitted a motion at that time. Nevertheless, Barber raised several preliminary objections to anticipated evidence in his pretrial memorandum.[5] In the interest of an efficient trial, I permitted both parties to submit short omnibus motions in limine on a truncated timeline.[6] Barber filed a motion; Humphries did not.[7] Barber's motion is now ripe for review. For the following reasons, it is granted in part, denied in part, and deferred in part.

## II.   DISCUSSION

### A.   Legal Standard

"Motions in limine are made prior to trial or the presentation of evidence in order to aid the clear presentation of evidence."[8] In allowing such motions, the Court's goal is to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."[9] But because they are adjudicated in a preliminary posture, "motions in limine often present issues for which final decision is best reserved for a specific trial situation."[10] Thus, the Court may defer ruling on issues

---

[4] *Id.*
[5] Doc. 172 (Barber Pretrial Mem.).
[6] Doc. 176 (Final Sch. Order).
[7] Doc. 178 (Mot. in Limine).
[8] *Holmes v. Am. Home Patient/Lincare*, No. 21-CV-1683, 2024 WL 1118982, at *1 (M.D. Pa. Mar. 14, 2024).
[9] *Buddy's Plant Plus Corp. v. CentiMark Corp.*, 978 F. Supp. 2d 523, 528 (W.D. Pa. 2013) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)).
[10] *Pa. State Univ. v. Vintage Brand, LLC*, 755 F. Supp. 3d 563, 572-73 (M.D. Pa. 2024) (quoting *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997)).

in a motion in limine if seeing the evidence in the "context of trial would provide greater clarity."[11] Deferral is especially appropriate when the objection to evidence arises under Federal Rule of Evidence 403, which requires the Court to balance the evidence's probative value against its potential for prejudice, confusing the issue, misleading the jury, or wasting time.[12] Ultimately, "[t]he trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds."[13]

As most of Barber's objections arise under Rule 403, I will review that standard too. To be admissible, evidence must be relevant.[14] Relevant evidence is that which "has any tendency to make a fact . . . of consequence in determining the action . . . more or less probable than it would be without the evidence."[15] As noted, under Rule 403 "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[16] Balancing these factors is generally left to the trial judge's discretion.[17]

---

[11] *Id.* at 572 (quoting *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012)).
[12] *Id.* at 573 (citing *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990)); Fed. R. Evid. 403.
[13] *Mastripolito v. Jefferson Health-New Jersey*, 583 F. Supp. 3d 622, 625 (D.N.J. 2022) (quoting *United States v. Tartaglione*, 228 F. Supp. 3d 402, 405 (E.D. Pa. 2017)).
[14] Fed. R. Evid. 402.
[15] Fed. R. Evid. 401.
[16] Fed. R. Evid. 403.
[17] *United States v. Sumler*, 724 F. App'x 142, 147 (3d Cir. 2018) (quoting *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978)).

### B. Analysis

Barber managed to squeeze eleven issues into his ten-page motion in limine; I will review each in turn.

#### 1. Penn State Culture

Barber argues that evidence about "the reputations of Penn State and [H]ead [F]ootball [C]oach James Franklin," including "any reference to Franklin, his coaching staff, or the culture on the football team or in the locker room should be excluded."[18] He contends that such evidence is not relevant to claims about interactions between Barber and Humphries alone, and that, if relevant, its probative value is outweighed by the risk of prejudice.[19] Humphries responds that evidence of a "culture of abuse and bullying which permeated the Penn State Football team locker room" is relevant and has significant probative value.[20] I agree with Humphries.

Evidence showing that bullying and hazing were prevalent on the Penn State football team tends to make more probable Humphries's contentions that Barber was bullying him in the locker room. Just the same, if the evidence suggested that there was a strict no-tolerance culture for bullying, it would tend to help Barber, and he would presumably want to introduce it. Barber's motion is denied on this issue.

---

[18] Doc. 179 at 1-2.
[19] Id.
[20] Doc. 181 at 1-2.

Just because this evidence is admissible, however, does not mean that Humphries has carte blanche to attack Penn State at will. If he has evidence, he can make the point that the Penn State football team had a culture of bullying and, if supportable, can argue that coaches were oblivious or complicit. But he may only do so to prove that his allegations about Barber's conduct are true. He may not impugn Penn State or Coach Franklin simply to make a point. I agree with Barber that neither the University nor Coach Franklin is on trial, and cumulative or unduly colorful invective against them is not relevant and creates a risk of undue prejudice. Humphries is already taking liberties on this point,[21] so I warn him that I will have little patience for attempts to push the limits of my ruling in his favor.

### 2. Other Athletes' Conduct

Barber moves to exclude evidence that other members of the Penn State football team engaged in bullying or hazing, contending again that only Barber's conduct is relevant.[22] Humphries responds that evidence of other bullying lends credence to his claims about Barber's bullying.[23] I agree with Humphries for the same reasons as I did in the prior section. He is again advised to make the point without belaboring it. Barber's motion is denied on this issue.

---

[21] *See id.* at 2 (describing a "thug-like-bullying culture").
[22] Doc. 179 at 2.
[23] Doc. 181 at 2.

### 3. Barber's Other Conduct

Barber argues that evidence that he bullied other members of the football team should be excluded because, again, it is not relevant because the evidence should be limited only to interactions between him and Humphries, and because it is evidence of prior bad acts being used to show conduct in conformity with character, which is prohibited by Federal Rule of Evidence 404(b)(1).[24] Humphries responds that Barber's conduct is relevant and admissible under Rule 404(b)(2), but simply lists every Rule 404(b)(2) non-propensity exception to Rule 404(b)(1)'s prohibition on prior-acts evidence.[25] I defer this issue because I can imagine avenues of admissibility.

Although Humphries does not do the work of explaining how the evidence could come in, at this point it is Barber's burden to show that there is no circumstance in which it could be admissible.[26] Under Rule 404(b)(2), evidence of a defendant's prior crimes, wrongs, or acts, "may be admissible for [a noncharacter] purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

---

[24] Doc. 179 at 2-3.
[25] Doc. 181 at 2-3.
[26] *Holmes*, 2024 WL 1118982, at *1.

absence of mistake, or lack of accident."[27] This list is "not exhaustive,"[28] and other-acts evidence can be admitted "for any purpose other than to show propensity."[29]

One potential use of such evidence is to corroborate other, non-propensity evidence.[30] Applied here, the evidence of Barber's other conduct may be used to lend credence to Humphries's testimony to the extent that Barber's unique conduct toward others matches what Humphries says Barber did to him.[31] Of course, using evidence of other acts to corroborate testimony about similar acts creates a very high risk of a character-based inference.[32] The Court will need to closely "inspect the relevance of the proposed use to make certain the chain of inferences does not include the forbidden inference to propensity"[33] and balance the probative value of such evidence against that risk[34] after considering the justifications that Humphries

---

[27] Fed. R. Evid. 404(b)(2).
[28] *United States v. Green*, 617 F.3d 233, 250 n.16 (3d Cir. 2010) (citing *United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir. 1994)).
[29] *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017) (citing *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014))
[30] *See United States v. Figueroa*, 976 F.2d 1446, 1454 (1st Cir. 1992) (citing, *e.g.*, *United States v. Porter*, 881 F.2d 878, 886 n.8 (10th Cir. 1989)); *United States v. Cabrera*, 660 F. App'x 126, 129 (3d Cir. 2016); 22B Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5256 n.1 (2d ed. 2017). *But see United States v. Linares*, 367 F.3d 941, 949 (D.C. Cir. 2004) (reasoning that admission is not justified by corroboration of *any* non-propensity evidence, but must instead corroborate one of the other non-propensity purposes established under the rule).
[31] This purpose may also approach the generally accepted exception to Rule 404(b)(2) for *modus operandi* evidence, but *modus operandi* is usually only permitted to prove identity, and not whether the event at issue actually occurred. *See generally Becker v. ARCO Chem. Co.*, 207 F.3d 176, 195-201 (3d Cir. 2000).
[32] Wright & Graham, *supra* § 5256 at 340-41.
[33] *Id.* at 340.
[34] Fed. R. Evid. 403.


offers to support admission.[35] This inquiry does not lend itself to easy resolution in advance of trial without a view of the exact form of the evidence and the arguments that will be offered about it, so I defer resolution of this issue.[36]

### 4. Unredacted Report

Barber asks that Humphries be precluded from admitting a misappropriated unredacted copy of a draft version of a Penn State Office of Sexual Misconduct Prevention and Response ("OSMPR") Investigative Report because it would violate the protective order in this case, which permits redaction of documents produced in discovery to protect the personal information of current or former Penn State students.[37] Humphries responds that the unredacted draft copy is necessary to provide reliable information about this case, and that "[r]edacting of the report would shield the truth of the matter, have a tendency to diminish the reliability of the information documented, and create a danger of misleading the jury within the meaning of Fed. R. Evid. 403."[38] I defer ruling on this issue.

Having reviewed both the redacted final and unredacted draft versions of the OSMPR Report, I struggle to see what relevant information the unredacted draft

---

[35] *Repak*, 852 F.3d at 241.
[36] To be clear, I take no position on whether this evidence will be admissible under the theory I have described. I merely identify a theoretically possible means of admission because a motion in limine should only be granted "when the evidence is clearly inadmissible on all potential grounds." *Mastripolito*, 583 F. Supp. 3d at 625.
[37] Doc. 179 at 3; *see* Doc. 97 (Protective Order).
[38] Doc. 181 at 3.

8

adds to the redacted final version (they in fact appear to be more or less identical). The redacted version identifies both Humphries and Barber and includes extensive detail of bullying conduct committed by Barber and others. That the names of other individuals and certain aspects of Penn State's response to the complaint are redacted has no impact on the Report's relevance or reliability. That being said, however, the protective order covers "the contents of any draft Investigative Report (together with attachments) generated by the University's Office of Sexual Misconduct Prevention and Response in Humphries' possession as of the date of this Order regardless of whether that draft Investigative Report was produced by the University in the course of this Action," or, in other words, the unredacted draft report.[39] The protective order allows disclosure of "Confidential Information" like the unredacted draft report to, among others, "the jury at trial,"[40] so I similarly do not see how its admission would violate the protective order.

In the protective order, the parties "agree[d] to meet and confer with the University regarding the disclosure of Confidential Information at trial or hearing and further agree[d] that the University is free to propose, and that they will meaningfully consider, additional measures intended to protect Confidential Information from unnecessary disclosure at such hearing or trial."[41] Neither party

---

[39] Doc. 97 ¶ 1.
[40] *Id.* ¶ 6(e).
[41] *Id.* ¶ 15.

suggests that such discussions have occurred with regard to this dispute. As the unredacted draft report is Confidential Information in its entirety,[42] the parties and the University should confer and attempt to reach an agreement to manage its disclosure at trial. Appropriate resolutions of the issue may include admitting the document under seal and limiting references to its contents during unsealed portions of the proceedings, applying redactions to the unredacted draft report and unsealing it, or, given the two versions' apparent similarity, it may be easiest for Humphries to propose specific redactions to be removed from the final report. If no agreement can be reached, the Court will reconsider this issue at trial.

### 5. Use of the Term "Sandusky"

Barber argues that Humphries should not be permitted to refer to the actions of Jerry Sandusky at trial because that information is not relevant to the matters at hand, and additionally contends that Humphries should be barred from describing allegations about Barber's conduct to the extent that Barber allegedly threatened to "Sandusky" Humphries because such a reference carries an undue risk of prejudice given Jerry Sandusky's actions and the connotations that surround invocation of his name.[43] Humphries does not respond to this issue. I grant in part and deny in part Barber's motion on this point.

---

[42] *Id.* ¶ 1.
[43] Doc. 179 at 3-4.

I agree that general, unmoored references to Jerry Sandusky, his conduct, or his victims is not relevant to this case. Sandusky was convicted in 2012 of offenses that occurred between 1995 and 2008.[44] Neither Humphries nor Barber was one of his victims, and I can see no reason why the facts of that decade-old case might bear on the allegations at issue in this trial. Moreover, the Sandusky case—and name—continues to have a strongly negative connotation in this region, and gratuitously invoking it is sure to create significant prejudice which outweighs any marginal probative value such comments might have.[45] So I grant Barber's motion on this part of the Sandusky issue.

I disagree with Barber to the extent he seeks to purify his own alleged statements. Humphries alleges that Barber threateningly invoked Sandusky's name as part of his bullying campaign against Humphries. Such comments, if they occurred, constitute an independent instance of bullying which contributes to the overall severity of Barber's conduct and exacerbates the physical acts he is alleged to have committed. In this context, the Sandusky name is undoubtedly relevant—because it is part of the very conduct at issue—and not unduly prejudicial—because the negative connotations of the name are the reason why its use constitutes bullying. Accordingly, I deny Barber's motion as to this version of the Sandusky issue.

---

[44] *See Commonwealth v. Sandusky*, 203 A.3d 1033, 1042 (Pa. Super. Ct. 2019).
[45] *See* Fed. R. Evid. 403.

11

### 6. Barber's Other Non-Football Conduct

Barber argues that evidence of other, non-football-related allegations of misconduct against him, including Penn State investigations and/or disciplinary reports, should be excluded as irrelevant and unduly prejudicial, as well as inadmissible character evidence under Rule 404(b)(1).[46] Humphries does not respond to this point. With regard to this evidence, I agree with Barber. I can conceive of no reason why evidence that Barber had an unauthorized motorcycle on campus, an unauthorized dog in his apartment, or was violent in personal relationships outside of the football team[47] has any relevance to this case other than to invite an impermissible propensity inference based on Barber's general character. That kind of argument is not allowed,[48] and I therefore grant Barber's motion to exclude evidence of Barber's conduct that did not relate to Humphries or other members of the Penn State football team.[49]

### 7. Other Cases Involving Penn State

Barber asks that I exclude evidence of several other football-related suits against Penn State as irrelevant and unfairly prejudicial.[50] Humphries does not contest this issue. None of the cases Barber identifies appears to be related to

---

[46] Doc. 179 at 4-5.
[47] See Doc. 170 at ECF p. 9-10 (proposed exhibits P-05, P-06, P-08, P-09, & P-10).
[48] Fed. R. Evid. 404(b)(1).
[49] Again, I defer ruling on the admissibility of Barber's other football-related conduct. See Section II.B.3
[50] Doc. 179 at 5.

Humphries or the conduct in this suit, and I cannot see the relevance of any of them. Barber's motion on this issue is granted.

### 8. Other Hazing Incidents at Penn State

Barber argues that references to (1) other non-football hazing at Penn State, (2) the Timothy J. Piazza Antihazing Law, and (3) the circumstances at Penn State that contributed to the passage of the Piazza Law, should be prohibited because they are not relevant and prejudicial. Humphries responds only that reference to the Piazza Law should be permitted because his negligence *per se* claim relies on that statute. I grant in part and deny in part the motion on this issue.

Evidence of general hazing at Penn State, an enormous land-grant institution with more than 40,000 undergraduates at the University Park Campus,[51] is not relevant to the specific issues in this case. What happened at a fraternity on one side of campus is not relevant evidence of what different individuals did at different times in the football locker room more than a mile away. This reasoning also applies to the facts of the Timothy Piazza tragedy.[52] Barber was not a member of the fraternity in the Piazza case, and Humphries does not explain why those facts would be relevant here. Barber's motion is granted to the extent that general references to hazing on campus, or the Timothy Piazza tragedy specifically, are barred.

---

[51] *See Student Enrollment*, Penn State Planning, Assessment, and Institutional Research (last visited May 21, 2025), https://datadigest.psu.edu/student-enrollment/ (choose "University Park" from "Campus Grouping/College" dropdown).

[52] *See Piazza v. Young*, 403 F. Supp. 3d 421, 426-31 (M.D. Pa. 2019).

However, I agree with Humphries that it would be improper to bar references to Timothy Piazza's name in the context of the antihazing law. One of the claims for trial is a negligence *per se* claim based on Barber's alleged violation of that law.[53] Obviously, the name of the law is relevant to that claim, and any prejudice from merely reciting Timothy Piazza's name will be minimal.[54] So as to that point, Barber's motion is denied.

### 9. Damages Evidence

Barber requests that I bar admission of evidence regarding Humphries's medical damages because he did not previously allege that this harm was traceable to Barber's conduct and did not produce evidence of these damages in discovery. Additionally, Barber asks that I preclude evidence supporting Humphries's request for NIL (name, image, and likeness) damages because those damages were not asserted until the pretrial memoranda and are not supported by any expert witness or documentation.[55] Humphries responds that no expert is necessary and that he is the

---

[53] *See* Doc. 56 (First Mot. to Dismiss Op.) at 15-16 (holding that "Humphries has stated a claim for negligence *per se* against Barber under both [antihazing] statutes"); Doc. 135 (Barber Summ. J. Op.) at 11-12 (denying Barber's motion for summary judgment on the negligence *per se* claim).

[54] In reply, Barber suggests that reference to the Piazza Law should be prohibited because Humphries cannot prove any prohibited conduct by Barber that occurred during the ten-day period in which the Piazza Law was effective and Humphries was a student at Penn State. Doc. 182 (Reply) at 5 (citing Doc. 75 (Penn State Dismissal Op.) at 50). Barber was not part of Penn State's motion to dismiss that issue, and I denied him summary judgment on the negligence *per se* claim, so the Piazza Law issue remains live as to Barber. However, if Humphries indeed lacks evidence of Barber's bullying during the period when the Piazza Law was in effect, he may not invoke the law, as it would not be relevant.

[55] Doc. 179 at 6-7.

source of the evidence of damages.[56] I defer the medical damages issue and grant the motion as to the NIL damages.

With regard to the medical damages, I believe a fair reading of Humphries's complaint suggests that he raised such claims at the outset. True, his only allegations about medical costs are in Count I, which is solely against Penn State,[57] but the claims against Barber "incorporate[] by reference the paragraphs above as if set forth herein in full"[58] and the alleged harm is similarly "that damage and loss aforementioned."[59] While not the most artful drafting, it is clear that the harm allegedly caused by Penn State flowed from "the prohibited misconduct," which can be traced back to Barber.[60]

However, I am significantly more concerned about the unrebutted contention that Humphries has not produced any documentation of his medical expenses in discovery. A party is required to disclose "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered" even before receiving discovery requests.[61] Failure to provide such

---

[56] Doc. 181 at 4.
[57] *See* Doc. 58 (Third Am. Compl.) ¶¶ 227-30.
[58] *See id.* ¶ 247.
[59] *Id.* ¶ 255.
[60] *See id.* ¶¶ 229-30.
[61] Fed. R. Civ. P. 26(a)(1)(A)(iii).

information results in a prohibition on the non-disclosing party's "use [of] that information . . . to supply evidence on a motion, at a hearing, or at a trial."[62] I have not been privy to all of the discovery in this case, and the record on this alleged violation is sparse, so I will not rule on it today. I defer this decision pending discussion at trial so that I can determine whether Humphries complied with his disclosure obligations.[63]

As for the NIL issue, Barber is correct that Humphries makes no mention of NIL damages, or anything similar, in his complaint or any of the briefing before this point. Additionally, contrary to Humphries's suggestion that the damages he seeks are "not beyond the normal and common understanding of a reasonable juror,"[64] determining that Humphries would have received a hypothetical NIL deal (which were in a state of extreme flux at the time of the events of this case)[65] based on speculation about his performance in a counterfactual world where he remained at Penn State and then valuing it—all with no expert assistance—is far beyond a

---

[62] Fed. R. Civ. P. 37(c)(1).
[63] This does not mean that Humphries may be prohibited from presenting *any* evidence on damages. Generally, damages can be premised on a witness's testimony about his expenses, even without supporting documentary evidence. *See Commonwealth v. Stallworth*, No. 76-EDA-2024, 2025 WL 1242426, at *5 (Pa. Super. Ct. Apr. 29, 2025) (unpublished table decision) (citing *Ragnar Benson, Inc. v. Bethel Mart Assoc.*, 454 A.2d 599, 603-04 (Pa. Super. Ct. 1982)). And, to the extent his damages are based on pain and suffering, his testimony is the best evidence available. *See Fischer v. Troiano*, 768 A.2d 1126, 1129-30 (Pa. Super. Ct. 2001); *Mader v. Duquesne Light Co.*, 241 A.3d 600, 616 (Pa. 2020) ("[D]amages for past medical expenses are discrete and independent from damages for pain and suffering. The former largely constitute objective costs related to medical treatment, while the latter are largely subjective.").
[64] Doc. 181 at 4.
[65] *See generally Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141 (2021).

reasonable juror's capacity and could only be the result of speculation.[66] Accordingly, I grant Barber's motion in limine on this point.

### 10.    Testimony of Leonard Humphries

Barber next requests that I bar Leonard Humphries, Plaintiff Humphries's father, from testifying because he expects Leonard to offer hearsay testimony that may or may not be relevant to this case, and because he may testify about his son's health but lacks medical expertise.[67] Humphries responds that his father will give fact-based testimony that is relevant to the case.[68] Having not heard his testimony, I cannot agree with Barber that Leonard should be completely prohibited from testifying. As the Plaintiff's father, Leonard may have first-hand knowledge of many facts that are relevant to this case. Concerns about hearsay are much better addressed by individualized rulings based on the actual testimony. And Leonard does not need a medical degree to testify about his son's health and demeanor generally. I deny the broad request to preclude Leonard from testifying and defer decision on objections to specific aspects of his testimony such as hearsay or overly technical medical opinions.

---

[66] *See In re Lincoln Nat'l 2017 COI Rate Litig.*, 620 F. Supp. 3d 268, 288-89 (E.D. Pa. 2022) (damages are unduly speculative if there is "uncertainty concern[ing] the fact of damages" (quoting *Rizzo v. Haines*, 555 A.2d 58, 68 (Pa. 1989))); *Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'ns Sols. Inc.*, 684 F. Supp. 3d 316, 345 (E.D. Pa. 2023) (damages must be "reasonably certain," meaning a "rough calculation . . . is not too speculative, vague or contingent upon some unknown factor" (quoting *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669-70 (3d Cir. 1998))).
[67] Doc. 179 at 7-8.
[68] Doc. 181 at 4-5.

**11.    Deposition**

Finally, Barber requests that Humphries be barred from reading depositions into the record in lieu of witness testimony because he did not provide the certification required by Local Rule 30.10 before use of a deposition at trial.[69] Humphries responds that use of depositions at trial is permitted under certain circumstances by Federal Rule of Civil Procedure 32(a)(4), but makes no mention of Local Rule 30.10.[70] Local Rule 30.10 requires the proponent of a deposition to confirm that he has conferred with opposing counsel to "eliminate [from the deposition] irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact."[71] The purpose of this Rule is primarily to streamline trial proceedings by resolving in advance disputes about the extent to which the deposition should be shown to the jury. There is time before trial to remedy this defect, and I will not bar the deposition from admission for this technical failure.[72] The parties should confer before trial to satisfy the rule, and Humphries's counsel must submit the Rule 30.10 certification by Friday May 30, 2025, at 12:00 p.m. I defer making a final ruling until that point. Humphries will, of

---

[69] Doc. 179 at 8.
[70] Doc. 181 at 5.
[71] LR 30.10.
[72] *See id.* (empowering the Court to "make such order as is just" in cases of noncompliance).

course, bear the burden of demonstrating the unavailability of the witness whose deposition he wishes to read into the record at trial.[73]

## III.  CONCLUSION

For the foregoing reasons, Barber's motion in limine is granted in part, denied in part, and deferred in part.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[73] Fed. R. Civ. P. 32(a)(4).